UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANN KHANNA,

                                Plaintiff,

v.                                                                                  1:20-CV-1428
                                                                              (LEK/TWD)

DERIK ROY, LUCILLE LESPERANCE,
CITY OF SARATOGA SPRINGS, COUNTY OF
SARATOGA, JOAN A. MARSHMAN, THOMAS J.
PRAY,

                                Defendants.
_____

APPEARANCES:

ANN KHANNA
Plaintiff, *pro se*
162 Ballston Avenue
Saratoga Springs, New York 12866

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

       Ann Khanna ("Plaintiff") filed an action against Derik Roy, Lucille Lesperance, the City of Saratoga Springs, the County of Saratoga, Joan A. Marshman, and Thomas J. Pray (collectively, "Defendants"). (Dkt. No. 1.) Currently before the Court is Plaintiff's application to proceed *in forma pauperis* ("IFP Application"). (Dkt. No. 2.)

**I.**    ***IN FORMA PAUPERIS* APPLICATION**

       A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). After reviewing Plaintiff's IFP Application

(Dkt. No. 2), the Court finds Plaintiff meets this standard. Therefore, her IFP Application is granted.[1]

## II.     SUFFICIENCY OF THE COMPLAINT

### A.     Legal Standards

28 U.S.C. § 1915(e) directs that when a person proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted . . . ." 28 U.S.C. § 1915(e)(2)(B)(ii).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

---

[1] Plaintiff should note that, although her application to proceed *in forma pauperis* has been granted, she will still be required to pay fees that she may incur in this action, including copying and/or witness fees.

A *pro se* litigant's pleadings are held to a less strict standard than attorney drafted pleadings. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, *pro se* litigants are held to a lesser pleading standard than other parties."). Because plaintiff is proceeding *pro se*, the Court construes her pleadings "to raise the strongest arguments that they suggest." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). However, this "does not exempt a [*pro se* litigant] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). Moreover, a court should not dismiss a *pro se* complaint "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### B.   Summary of Plaintiff's Complaint

On July 29, 2010, Plaintiff alleges she ingested a teaspoon of Robitussin and thereafter felt unwell. (Dkt. No. 1 at 6.) According to Plaintiff, she observed Defendant Lucille Lesperance ("Lesperance") speaking to a man who told her to go into Plaintiff's house after she died to make it look like a suicide. *Id*. Plaintiff also observed Lesperance speaking to several Saratoga Springs police officers[2] a few minutes before she drank the Robitussin. *Id*. Those officers allegedly appeared at Plaintiff's front door after she ingested the "poison" and said they

---

[2] Plaintiff asserts the City of Saratoga Springs Police Department was directly involved in orchestrating this "assault." (Dkt. No. 1 at 10.)

thought she would need an ambulance. *Id*. at 7. Though Plaintiff declined an ambulance, she was arrested by the same officers and "coerced into an ambulance, which took [her] to Saratoga Hospital ER." *Id*. At the hospital, Plaintiff was given a beaker of charcoal and was admitted to the mental health unit because she was deemed "suicidal." *Id*.

Plaintiff asserts Defendant Derik Roy ("Roy") "played a prominent role in these events." *Id*. at 8. Roy is Plaintiff's pastoral counselor and has told her several times that Saratoga County is an "all white County" and Plaintiff should move somewhere more "diverse." *Id*. Plaintiff asserts Roy asked her to give him the Robitussin bottle after she was poisoned to get it tested but instead destroyed this evidence with the help of his brother—who works for the Albany County Sherriff. *Id*. Roy also allegedly referred Plaintiff to an attorney who handled her foreclosure action and provided substandard legal service. *Id*. Furthermore, Plaintiff asserts Roy has been in touch with Plaintiff's mother—who lives in Toronto, Ontario. *Id*.

Plaintiff contends Defendant Joan A. Marshman ("Marshman") colluded with Plaintiff's mother and other Defendants to coerce her out of her house. *Id*. at 9. Plaintiff also asserts she suffered from severe dizziness and headaches when she stayed at Marshman's house in Toronto, Ontario, in 2011 and 2012. *Id*. According to Plaintiff, these symptoms may have been a result of "microwave attacks." *Id*.

According to Plaintiff, Defendant Saratoga County orchestrated and participated in the cover-up on the attempt of her life on July 29, 2010. *Id*. Plaintiff asserts a psychiatrist admitted that "they 'had all got together and decided to get rid of [her].'" *Id*.

Defendant Thomas J. Pray ("Pray") allegedly colluded with the other Defendants to coerce Plaintiff out of her house. *Id*. at 10. Pray is Plaintiff's dentist and removed a back molar from Plaintiff's mouth in the Spring of 2018. *Id*. According to Plaintiff, he did this "without

4

medical indication" so that eating became painful and she had to go on a soft food diet. *Id*. Pray also would not release Plaintiff's medical records. *Id*. Plaintiff asserts Pray's actions were negligent. *Id*.

Plaintiff alleges that, since she was poisoned, the named Defendants have harassed her to abandon her property and are involved in attempting to have her house foreclosed. *Id*. at 7, 11. Moreover, she asserts her house has been burgled multiple times, she has been blacklisted from employment, has been assaulted, and suffered extreme emotional distress. *Id*. at 7.

**C.    Analysis**

Plaintiff largely complains of events alleged to have occurred on or around July 29, 2010.[3]  (Dkt. No. 1 at 11.)  To that end, her complaint generally describes an alleged attempted poisoning at the hands of several of Plaintiff's acquaintances at the behest of Saratoga County and with the help of the City of Saratoga Springs Police.  The alleged motivation, to the extent one can be inferred from the complaint, was to dispossess Plaintiff from her property.  Given the age of the relevant events, Plaintiff acknowledges that her action may be untimely. *Id* at 12 (stating that she "intend[s] to research the law surrounding statute of limitations and estoppel once I have access to Westlaw to determine whether or not the actions on July 29, 2010 can remain part of this claim.").  However, she provides absolutely no basis for the tolling the statute of limitations.  Under New York law, intentional torts are subject to a one-year statute of limitations and Section 1983 claims are governed by a three-year statute of limitations. *See* N.Y.

---

[3]  The Court notes Plaintiff may have intended to assert a claim for dental malpractice against Pray.  However, as discussed below, the Court lacks any basis to exercise its jurisdiction over that state law claim.  Moreover, a claim for dental malpractice must be commenced within two years and six months of the last treatment. *See* N.Y. C.P.L.R. § 214-a.  Thus, though Plaintiff is not clear on the exact timeline of her treatment, if her treatment took place in the spring of 2018, it is also likely time barred.

C.P.L.R. §§ 214(5), 215(3); *Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (noting the applicable statute of limitations for § 1983 claims)); *Ashjari v. NYNEX Corp.*, 182 F.3d 898 (2d Cir. 1999) ("Under N.Y. C.P.L.R. § 215(3), claims of assault and battery . . . must be brought within one year from the date the claim accrued."). In addition, under New York law, "intentional tort causes of action asserted against municipal defendants must be commenced within the one–year–and–90–day statute of limitations contained in General Municipal Law § 50–i." *Williams v. City of N.Y.*, 153 A.D.3d 1301, 1305 (2d Dep't 2017). Thus, Plaintiff's putative state and federal law claims asserted in the complaint for assault, battery, or any other intentional tort alleged to have occurred around July 29, 2010, are well outside the applicable statute of limitations given that Plaintiff's Complaint was not filed until November 20, 2020.

Moreover, this Court is seriously doubtful that it has jurisdiction over this action in any event. To that end, though she styles her complaint as being brought pursuant to 42 U.S.C. § 1983, she does not articulate any federal law that Defendants violated. Section 1983 "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)). "Section 1983 'is not itself a source of substantive rights[,]' . . . but merely provides 'a method for vindicating federal rights elsewhere conferred[.]'" *Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 (1979)). To state a claim pursuant to Section 1983, a plaintiff must allege "(1) 'that some person has deprived [her] of a federal right,' and (2) 'that the person who has deprived [her] of that right acted under color of state . . . law.'" *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

Here, Plaintiff has not adequately explained how any of the named defendants deprived her of a federal right under color of state law.  Importantly, most of the defendants are private citizens and are thus not typically amenable to suit under Section 1983.  Additionally, though the City of Saratoga Springs and the County of Saratoga may be subject to suit under Section 1983, they may not be held liable under that section for the acts of its employees based on a theory of *respondeat superior*.  *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978).  Rather, to sustain a Section 1983 claim against a municipality, such as the County or City, a plaintiff must show that she suffered a constitutional violation, and the violation resulted from an "official policy or custom."  *Monell*, 436 U.S. at 694-695.[4]  Plaintiff provides only conclusory allegations related to the municipal defendants that do not adequately allege a municipal policy or custom caused her alleged injuries.[5]

Therefore, regardless of whether her claims are timely, the Court finds Plaintiff has failed to establish why this Court has jurisdiction over this case.  *See* 28 U.S.C. § 1331.

Nevertheless, given Plaintiff's *pro se* status, the Court recommends that Plaintiff's complaint be dismissed with leave to replead.  In any amended complaint, Plaintiff should specifically consider the timeliness of her action and the basis for this Court's jurisdiction.

---

[4] An "official policy or custom" can be shown in several ways including the following: (1) a formal policy the municipality officially endorses; (2) actions government officials who are responsible for establishing municipal policies take related to the particular deprivation in question; (3) a practice so consistent and widespread it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a policymaker's failure to train or supervise subordinates to such an extent it amounts to deliberate indifference to the rights of those who come in contact with the municipal employees.  *Dorsett–Felicelli, Inc. v. Cty. of Clinton*, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (citing *Monell*, 436 U.S. at 690-91).

[5] Moreover, Plaintiff is a New York citizen, and, except for one Canadian citizen, all the other Defendants are also citizens of New York.  (Dkt. No. 1.)  Therefore, the court lacks a basis to exercise its diversity jurisdiction over this case.  *See* 28 U.S.C. § 1332.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED** solely for purposes of initial review; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**, and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[6]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: February 1, 2021
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[6]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).