UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANN KHANNA,

                                    Plaintiff,

                                                              1:20-CV-1428
v.                                                            (LEK/TWD)

DERIK ROY, et al.,

                                    Defendants.
_____

APPEARANCES:

ANN KHANNA
Plaintiff, *pro se*
Post Office Box 3186
Saratoga Springs, New York
12866

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

Ann Khanna ("Plaintiff"), proceeding *in forma pauperis*, filed an amended complaint

against Derik Roy and numerous other individuals, entities, and government actors (collectively

"Defendants").  (Dkt. No. 31.)  For the following reasons, the undersigned recommends

dismissing the amended complaint for failure to state a claim.  28 U.S.C. § 1915(e)(2)(B)(ii).

## I.       BACKGROUND

Ann Khanna ("Plaintiff") initiated this action and moved to proceed *in forma pauperis* on

November 20, 2020.  (Dkts. No. 1, 2.)  On February 1, 2021, the undersigned granted Plaintiff's

motion to proceed *in forma pauperis* and recommended that the complaint be dismissed without

prejudice but with leave to amend.  (Dkt. No. 4.)  On February 11, 2021, the undersigned

extended Plaintiff's time to file any objections to the Report-Recommendation to February 26, 2021.  (Dkt. No. 7.)

On April 8, 2021, Plaintiff notified the Court that she had received a copy of the Report-Recommendation, which she believed to be a forgery.  (Dkt. No. 10.)  The undersigned confirmed the authenticity of the Report-Recommendation, and again extended Plaintiff's time to file any objections to April 26, 2021.  (Dkt. No. 11.)  Plaintiff did not object.

On May 19, 2021, Senior United States District Judge Lawrence E. Kahn approved and adopted the undersigned's Report-Recommendation in its entirety.  (Dkt. No. 12.)  Plaintiff's complaint was accordingly dismissed without prejudice, but with leave to amend.  *Id.*

In the following months, Plaintiff moved the Court for various forms of relief, including, among other things, a writ of prohibition and an order of protection involving various private and state actors.  (Dkt. Nos. 22-23, 26, 29-30.)  The undersigned denied these requests.  (Dkt. Nos. 24, 27, 32.)  Plaintiff updated her address three times, (Dkt. Nos. 13, 18),[1] and asked for an extension to file an amended complaint four times.  (Dkt. Nos. 13, 16, 19, 26.)  The undersigned granted Plaintiff's extension requests, and Plaintiff filed an amended compliant on November 24, 2021.  (Dkt. Nos. 14, 21, 27, 31.)  The undersigned now conducts an initial review of Plaintiff's amended complaint under 28 U.S.C. § 1915(e)(2).

---

[1] The most recent address Plaintiff provided the Court no longer appears to be current.  (*See* Dkts. No. 28, 33.)

## II.    SUMMARY OF THE AMENDED COMPLAINT

Plaintiff asserts three causes of action through her amended complaint.  (Dkt. No. 31 at 35, 48, 65.[2])  Under the first cause of action, Plaintiff claims Defendants deprived her "of one or more rights secured by the Constitution and laws of the United States, in violation of 42 U.S.C. § 1983 et seq."  *Id.* at 35.  Plaintiff claims these "deprivations occur[ed] under at least the 1st, 3rd, 4th, 5th, 6th, 7th, 8th, 13th, and 14th Amendments."  *Id.*  Plaintiff claims Defendants engaged in an extensive international conspiracy with objectives that ranged from attempts to kill Plaintiff to "fabricating the existence of a virus called covid-19."  *Id.* at 35-47.

Under the second cause of action, Plaintiff claims "Defendants are co-conspirators, acting in furtherance of . . . a cross-border (U.S.-Canada) civil conspiracy over which this Court has supplemental jurisdiction."  *Id.* at 48.  Recycling many of the claims offered in support of her first cause of action, Plaintiff claims Defendants engaged in an extensive international conspiracy to injure her state and federal rights.  *Id.* at 48-64.

Under the third cause of action, Plaintiff claims Defendants conspired to act through a corrupt enterprise "in furtherance of and during the pendency of a cross-border (U.S.-Canada) civil conspiracy, in violation of 18 U.S.C. § 1962 et seq."  *Id.* at 65.  Plaintiff claims Defendants engaged in a pattern of activity that damaged her "business and/or property . . . in a manner that has affected, and is affecting interstate commerce."  *Id.*  According to Plaintiff, that pattern of activity includes Defendants' extensive international conspiracy to deprive her of her state and federal rights.  *Id.* at 65-70.

---

[2] Citations to filings on the docket refer to the pagination CM/ECF automatically generates.

III.   **SUFFICIENCY OF THE AMENDED COMPLAINT**

A.   **Legal Standards**

Under 28 U.S.C. § 1915(e)(2)(B), this Court will dismiss a complaint filed *in forma pauperis* if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." *See Allen v. Stringer*, No. 20-3953, 2021 WL 4472667, at *1 (2d Cir. Sept. 30, 2021).[3]

To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation."  *Iqbal*, 556 U.S. 662, 678.  It must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. 544, 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  "[T]he tenet that a court must accept as true all of the allegations contained in

---

[3] Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted.  *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

   **B.     The Amended Complaint Fails to State a Claim**

   Through her amended complaint, Plaintiff fails to state a claim for relief under 42 U.S.C. § 1983 and 18 U.S.C. § 1962.  The undersigned accordingly recommends dismissing Plaintiff's first and third causes of action for failure to state a claim.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The undersigned further recommends dismissing Plaintiff's second cause of action for lack of subject matter jurisdiction.  *See* 28 U.S.C. § 1367(c)(3).

   First, Plaintiff failed to plausibly allege that Defendants violated her federal rights while acting under color of state law.  *See* 42 U.S.C. § 1983.  "To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005).  Plaintiff has not provided "a short and plain statement of the claim showing that [she] is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Instead, Plaintiff has provided a long and unclear list of allegations.  (*See* Dkt. No. 31 at 35-47.)  Plaintiff does not clearly allege which of her federal rights were violated.  *See id.*  Nor does she allege who specifically violated her federal rights.  *See id.*  Plaintiff has accordingly failed to plausibly allege that one of the Defendants violated one of her federal rights.  *See Perez v. Colon*, No. 9:19-CV-0722 (BKS), 2019 WL 5102612, at *6 (N.D.N.Y. Oct. 11, 2019) ("In the absence of factual allegations sufficient to plausibly suggest that the defendant was personally involved in conduct that violate Plaintiff's constitutional rights, the complaint fails to state a cognizable claim against him/her."); *Hamilton v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:18-CV-1312 (MAD), 2019 WL 2352981, at *7 (N.D.N.Y. June 4, 2019) (same).  Plaintiff has also failed to plausibly

allege that one, much less all, of the Defendants acted under color of state law while violating

her rights.  *See McGill v. Buzzelli*, 828 F. App'x 76, 77 (2d Cir. 2020) ("McGill failed to state

a § 1983 claim because he did not allege that any of the defendants acted under color of state

law.").

      Second, Plaintiff failed to plausibly allege a cause of action under 18 U.S.C. § 1962.

Among other deficiencies,[4] Plaintiff has failed to plausibly allege that Defendants participated in

a pattern of racketeering activity through a corrupt enterprise.  *See* 18 U.S.C. § 1962; *see also*

*Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983).  To state a claim for relief under 18

U.S.C. § 1962, Plaintiff "has two pleading burdens."  *Moss*, 719 F.2d at 17.  "First, [s]he must

allege . . . the existence of seven constituent elements: (1) that the defendant (2) through the

commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly

or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the

activities of which affect interstate or foreign commerce."  *Id.*  Second, Plaintiff must allege that

she was "injured in [her] business or property by reason of a violation of section 1962."  *Id.*

(citing 18 U.S.C. § 1964(c)).

      Plaintiff's threadbare recitals of the statutory language followed by conclusory

allegations concerning Defendants' wide-ranging conspiracy do not give rise to a reasonable

inference that Defendants are liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678.  For

example, Plaintiff has failed to plausibly allege that Defendants engaged in a "pattern of

racketeering activity."  *See* 18 U.S.C. §§ 1961(1), (5); *see also Moss*, 719 F.2d at 17.  This

---

[4] *See, e.g.*, N.D.N.Y. L.R. 9.2 ("In any action in which a party asserts a claim under the
Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., the
party asserting such a claim shall file a RICO statement within thirty (30) days of the filing of the
pleading containing such claim.").

pleading deficiency warrants dismissal for failure to state a claim.  *See Sonnick v. Budlong*, No.
5:20-CV-0410 (TJM/ML), 2020 WL 2999109, at *9 (N.D.N.Y. June 4, 2020), *report and
recommendation adopted*, 2020 WL 4345004 (N.D.N.Y. July 29, 2020); *Brewer v. Brewer*, No.
3:18-CV-0399 (GLS/DEP), 2018 WL 4938694, at *3 (N.D.N.Y. Sept. 20, 2018), *report and
recommendation adopted*, 2018 WL 4935757 (N.D.N.Y. Oct. 11, 2018).  Plaintiff has also failed
to plausibly allege that some or all of Defendants participated in an "enterprise."  *See* 18 U.S.C.
§ 1961(4); *see also Moss*, 719 F.2d at 21-22.  This too warrants dismissal for failure to state a
claim.  *See Israel v. City of Syracuse*, No. 5:21-CV-0915 (DNH/ML), 2021 WL 4777256, at *6
(N.D.N.Y. Sept. 16, 2021), *report and recommendation adopted*, 2021 WL 4773232 (N.D.N.Y.
Oct. 13, 2021).

IV.   **CONCLUSION**

For the foregoing reasons, the undersigned recommends dismissing Plaintiff's amended
complaint in its entirety.  Typically, a court should not dismiss a *pro se* litigant's complaint
without granting leave to amend "when a liberal reading of the complaint gives any indication
that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991).  In
this case, however, because Plaintiff has already had an opportunity to amend, and because
additional amendment is unlikely to cure the substantive hurdles in Plaintiff's causes of action,
the undersigned recommends dismissing this action without further leave to amend.  *See Cuoco
v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 31) be **DISMISSED
WITHOUT LEAVE TO AMEND**, and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that the Plaintiff must immediately notify the Court of any change of address.  N.D.N.Y. L.R. 10(c)(2).  Failure to follow this directive may result in dismissal of the action.  Fed. R. Civ. P. 41(b); N.D.N.Y. L.R. 41.2(b).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[5]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: December 16, 2021
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[5]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

2021 WL 4472667
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Doran ALLEN, Plaintiff-Appellant,

v.

Scott M. STRINGER, New York City Comptroller,
Warden AMKC-C-95, Defendants-Appellees.

20-3953
|
September 30, 2021

Appeal from a judgment of the United States District Court for the Southern District of New York (Stanton, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Doran Allen, pro se, Ossining NY.

FOR DEFENDANTS-APPELLEES: No appearance.

PRESENT: RICHARD C. WESLEY, RICHARD J. SULLIVAN, Circuit Judges, JOHN G. KOELTL, District Judge. [*]

[*]     Judge John G. Koeltl of the United States District Court for the Southern District of New York, sitting by designation.

**SUMMARY ORDER**

Appellant Doran Allen, proceeding pro se, sued Scott M. Stringer, in his capacity as New York City Comptroller, and the unnamed warden of the Rikers Island Anna M. Kross Center ("AMKC") under 42 U.S.C. § 1983 for violations of the Due Process Clause of the Fourteenth Amendment. Allen alleges that, while he was detained at AMKC, a corrections officer refused to help him carry breakfast trays, causing him to slip and fall on broken stairs, injuring himself. The district court dismissed the complaint sua sponte for failure to state a claim. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review de novo a district court's sua sponte dismissal of a complaint under 28 U.S.C. § 1915(e)(2). *Zaleski v. Burns*, 606 F.3d 51, 52 (2d Cir. 2010). Under that statute, the district court must dismiss a complaint filed in forma pauperis if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). To avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (recognizing that "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a viable claim). Pro se submissions are reviewed with "special solicitude," and "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (internal quotation marks and emphasis omitted).

Conditions-of-confinement claims brought by pretrial detainees are analyzed under the Fourteenth Amendment's Due Process clause. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). To state such a claim, a plaintiff must satisfy both an objective prong and a subjective prong. *See id.* The objective prong requires "showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process," while the subjective prong requires "showing that [an] officer acted with at least deliberate indifference to the challenged conditions." *Id.* (internal quotation marks omitted). If a conditions-of-confinement claim is predicated on an unsafe condition, a court will analyze "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Allen alleges that he slipped or tripped on broken stairs, causing him to fall. But while the existence of broken stairs could be deemed to constitute negligence on the part of the prison, broken stairs alone cannot satisfy the objective prong of a conditions-of-confinement claim. *See McCray v. Lee*, 963 F.3d 110, 120 (2d Cir. 2020) (explaining that the defendant's complaint alleging unconstitutional conditions of

Allen v. Stringer, Not Reported in Fed. Rptr. (2021)

Case 1:20-cv-01428-LEK-TWD   Document 34   Filed 12/17/21   Page 10 of 70

2021 WL 4472667

confinement after a slip and fall in an icy prison yard did not show "exceptional circumstances" that would "elevate" the conditions "beyond the typical level of danger presented by a slippery sidewalk or a wet floor"). Because broken stairs cannot be considered a risk that is "so grave that it violates contemporary standards of decency," Allen's conditions-of-confinement claim was properly dismissed. *Helling*, 509 U.S. at 36.

**\*2** But even if it could be argued that Allen alleged an objectively serious condition, the district court properly dismissed Allen's claims against Stringer and the AMKC warden due to the obvious deficiencies in Allen's complaint. As the district court concluded, the suit against the warden in his official capacity was more properly a suit against the City of New York because Allen did not allege that the warden personally had done or failed to do anything that violated his rights. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity... should be treated as suits against the State."). Similarly, Stringer, as the New York City Comptroller, is sued in his official capacity. Allen was therefore obligated to allege sufficient facts showing that the Fourteenth Amendment violation occurred "pursuant to a municipal policy or custom," *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (citing, inter alia, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692–94 (1978)), or was caused by a "failure to train," *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (citing *Monell*, 436 U.S. at 694). Allen did not allege any facts showing that the corrections officer acted pursuant to an unconstitutional policy or custom, or that the City of New York failed to train its corrections officers, as required for such a claim.

The district court also did not abuse its discretion by declining to exercise supplemental jurisdiction over any state-law claims because the district court properly dismissed Allen's § 1983 claim, the only claim over which it had original jurisdiction. *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." (internal quotation marks omitted)).

Finally, the district court did not err by denying Allen leave to amend his complaint. A district court should not dismiss a pro se plaintiff's complaint without granting leave to amend "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted). As discussed above, the incident involving the corrections officer and the broken steps did not amount to a due process violation, and that deficiency in the complaint cannot not be cured. Accordingly, amendment would have been futile.

We have considered all of Allen's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

### All Citations

Not Reported in Fed. Rptr., 2021 WL 4472667

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Perez v. Colon, Not Reported in Fed. Supp. (2019)
2019 WL 5102612

Case 1:20-cv-01428-LEK-TWD   Document 34   Filed 12/17/21   Page 11 of 70

## 2019 WL 5102612
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Felipe PEREZ, Plaintiff,
v.

Mr. COLON, Mr. Russo, Mr. Wiggins, Waters, Mr.
Tilden, Mr. Banks, Officer John Doe #1, Officer
John Doe #2, Officer John Doe #3, Officer John
Doe #4, Officer John Doe #5, Officer John Doe #6,
Officer John Doe #7, Officer John Doe #8, Officer
John Doe #9, Officer John Doe #10, Officer John
Doe #11, Nurse Practitioner Jane Doe Registered
Nurse Jane Doe, and Dr. John Doe, Defendants.

Felipe Perez, Plaintiff,
v.

Mr. Carter, Sgt. John Doe, Mr. Waters, Officer John
Doe #1, Officer John Doe #2, Officer John Doe
#3, Chaplain, and Sergeant Colon, Defendants.

9:19-CV-0722 (TJM/DJS),
9:19-CV-0824 (BKS/TWD)
|
Signed 10/11/2019

**Attorneys and Law Firms**

FELIPE PEREZ, Plaintiff, pro se, 17-A-5251, Sing Sing
Correctional Facility, 354 Hunter Street, Ossining, NY 10562.

**DECISION and ORDER**

BRENDA K. SANNES, United States District Judge

## I. INTRODUCTION

 *1  On June 19, 2019, pro se plaintiff Felipe Perez
("Plaintiff") commenced a civil rights action in this Court
asserting claims arising out of his confinement in the custody
of the New York State Department of Corrections and
Community Supervision ("DOCCS") at Marcy Correctional
Facility ("Marcy C.F."). *Perez v. Donahue, et al.*, No. 9:19-
CV-0722 (TJM/DJS), Dkt. No. 1 ("*Perez I*"). In a Decision
and Order filed on August 20, 2019 (the "August Order"),
Plaintiff was granted leave to proceed in forma pauperis and
the defendants were directed to respond to the following
claims: (1) Eighth Amendment conditions-of-confinement
claims against defendant Banks; (2) Eighth Amendment

excessive force claims against defendants Colon, Russo,
Wigins, Waters, Tilden, Banks, Officer Does #1 through #11
related to incidents that occurred on June 9, 2019; and (3)
Fourteenth Amendment claims related to unwanted medical
treatment against defendants Dr. Doe and Russo. [1] *Perez I*,
Dkt. No. 7.

[1]    On August 26, 2019, summons were issued to
defendants. Dkt. No. 8.

Presently before the Court for consideration is a second pro
se Complaint filed by Plaintiff asserting claims arising out of
his confinement at Marcy C.F. in June 2019. *Perez v. Carter,
et al.*, No. 9:19-CV-0824 (BKS/TWD), Dkt. No. 1 ("*Perez
II*"). Plaintiff has not paid the statutory filing fee and seeks
leave to proceed in forma pauperis. *Perez II*, Dkt. No. 3 ("IFP
Application").

## II. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence
an action in a federal court without prepayment of the filing
fee that would ordinarily be charged." *Cash v. Bernstein*,
No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct.
26, 2010). [2] "Although an indigent, incarcerated individual
need not prepay the filing fee at the time of filing, he must
subsequently pay the fee, to the extent he is able to do so,
through periodic withdrawals from his inmate accounts." *Id.*
(citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*,
607 F.3d 18, 21 (2d Cir. 2010)).

[2]    Section 1915(g) prohibits a prisoner from
proceeding in forma pauperis where, absent a
showing of "imminent danger of serious physical
injury," a prisoner has filed three or more actions
that were subsequently dismissed as frivolous,
malicious, or failing to state a claim upon which
relief may be granted. *See* 28 U.S.C. § 1915(g).
The Court has reviewed plaintiff's litigation history
on the Federal Judiciary's Public Access to Court
Electronic Records ("PACER") Service. *See* http://
pacer.uspci.uscourts.gov. It does not appear from
that review that Plaintiff had accumulated three
strikes for purposes of 28 U.S.C. § 1915(g) as of
the date this action was commenced.

Upon review of Plaintiff's IFP Application, the Court finds
that he has demonstrated sufficient economic need. *See*
28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate

Perez v. Colon, Not Reported in Fed. Supp. (2019)

Case 1:20-cv-01428-LEK-TWD    Document 34    Filed 12/17/21    Page 12 of 70

2019 WL 5102612

authorization form required in this District. Dkt. No. 4. Accordingly, the Court grants Plaintiff's IFP Application.

## III. SUFFICIENCY OF THE COMPLAINT

### A. Standard of Review

**\*2** Having found that Plaintiff meets the financial criteria for commencing this action in forma pauperis, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

[3]      To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95 Civ. 4768, 1998 WL 832708, at \*1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

### B. Summary of the Complaint

The following facts are set forth as alleged by Plaintiff in his Complaint.

**\*3** In June 2019, Plaintiff was confined in Housing Unit A2, Cell 39, in the Residential Mental Health Unit ("RMHU") at Marcy C.F. Compl. at 3. On June 9, 2019, on an Islamic holiday, between 3:00 p.m. and 11:00 p.m., Plaintiff was performing Islamic prayers in his cell when he was "pepper sprayed without warning" by defendant Sergeant Colon ("Colon"). *Id.* at 6.

On June 17, 2019, between 7:00 a.m. and 3:00 p.m., Plaintiff attempted to speak with defendant Captain Carter ("Carter"), the Director of the RMHU. Compl. at 3. Carter told Plaintiff, "if you don't like what Sergeant Colon did to you and beat your ass with my officers suck it up cause [sic] the next time you'll die Perez!" *Id.* At or around the same time, Plaintiff told defendant Sergeant Doe ("Sgt. Doe") that he had "injuries" and requested permission to "see medical." *Id.* at 4. Sgt. Doe refused to allow Plaintiff to seek treatment. *Id.* During the same shift, defendant Waters approached Plaintiff's cell and questioned Plaintiff about his "blacked eye." [4] *Id.* at 5. Waters

Perez v. Colon, Not Reported in Fed. Supp. (2019)

2019 WL 5102612

Case 1:20-cv-01428-LEK-TWD  Document 34  Filed 12/17/21  Page 13 of 70

told Plaintiff, "I'd do a better job at that" and stated "if I hit you, I would of [sic] broken your eye socket." Compl. at 5.

[4]  Plaintiff has not plead facts related to how or when he sustained an injury to his eye. However, in *Perez I*, Plaintiff claimed that Officers Russo, Wigins, Waters, Tilden, John Does #1 through #3, Colon, and Banks "assaulted" him on June 9, 2019. *See Perez I*, Compl. at 9.

On June 17, 2019, between 3:00 p.m. and 11:00 p.m, Colon approached Plaintiff's cell and threatened Plaintiff with violence if he continued to ask for medical treatment. Compl. at 4. Colon also threatened to "spray 2 tanks of OC tear gas" in Plaintiff's cell if he refused to take his "medication." *Id.* at 5. Plaintiff was so "afraid" of Colon that he defecated himself. *Id.*

Plaintiff also claims that while he was confined to the RMHU, defendants Officer John Doe #1, Officer John Doe #2, and Officer John Doe #3 mocked Plaintiff and pointed to his black eye. Compl. at 6. Officer John Doe #2 told Plaintiff, "we might have to do the other eye so we can go out on workers compensation." *Id.*

Construed liberally, [5] Plaintiff asserts the following: (1) First Amendment claim related to religious rights against Colon; (2) Eighth Amendment excessive force claim against Colon; (3) Eighth Amendment claims related to threats against Colon, Carter, Waters, and John Does #1 through #3; and (4) Eighth Amendment deliberate medical indifference claim against Sgt. Doe. *See generally*, Compl. Plaintiff seeks monetary damages. *Id.* at 8-12. For a complete statement of Plaintiff's claims and the facts he relies on in support of those claims, reference is made to the Complaint.

[5]  The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations,

not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

**C. Nature of Action**

**\*4**  Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at \*2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

The Court will construe the allegations in the Complaint with the utmost leniency. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**IV. CONSOLIDATION OF *PEREZ I* AND *PEREZ II***

Actions involving common questions of law or fact pending before a court may be consolidated to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a). While courts have broad discretion to consolidate in the interests of judicial economy, efficiency concerns must be balanced against the potential for confusion or prejudice. *Kelly v. Kelly*, 911 F.Supp. 66, 69 (N.D.N.Y. 1996). As part of its general power to administer its docket, "a court faced with a duplicative suit will commonly stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions." *Curtis v. Citibank*, N.A., 226 F.3d 133, 138 (2d Cir. 2000). A suit is duplicative where the "claims, parties, and available relief do not significantly differ between the two actions." *Morency v. Vill. of Lynbrook*, 1 F.Supp.3d 58, 62 (E.D.N.Y. 2014).

The Complaints in *Perez I* and *Perez II* assert claims related to the incidents that occurred at the RMHU in June 2019. Waters, Colon, and Officers John Does 1 through 3 (on duty from 3:00 p.m. to 11:00 p.m. on June 9, 2019) are named as

Perez v. Colon, Not Reported in Fed. Supp. (2019)

Case 1:20-cv-01428-LEK-TWD    Document 34    Filed 12/17/21    Page 14 of 70

2019 WL 5102612

defendants in both actions. While the remaining defendants in the two actions are different, due to the common questions of law and facts in *Perez I* and *Perez II*, the two lawsuits will be consolidated in order to avoid the risks associated with duplicative actions and prevent the defendants from having to defend against two actions involving overlapping factual allegations. *See Jones v. Nassau Cty. Corr. Inst.*, No. 14-CV-1217, 2014 WL 1277908, at *3 (E.D.N.Y. Mar. 26, 2014) (consolidating cases despite the fact that the named defendants were different). The lead case is designated as *Perez I*, and the member case will be transferred from the undersigned to Senior District Judge Thomas J. McAvoy. All further Orders of the Court and papers submitted by the parties that pertain to either of the foregoing actions shall be filed in *Perez I*.

## V. ANALYSIS

### A. First Amendment - Freedom of Religion

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (citing *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). "To assess a free exercise claim, a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective." *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988) (citations omitted). A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591).[6] A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature. *Ford*, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir. 1996). Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened, "[t]he defendants then bear

the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 595) (punctuation omitted).

[6]    The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.' " *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887); *see also Williams v. Does*, 639 Fed. Appx. 55, 56 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim). In the absence of any controlling precedent to the contrary, I have applied the substantial-burden test in this matter.

**\*5** Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that Plaintiff's First Amendment Free Exercise claim against Colon survives sua sponte review and require a response. *See Shakur v. Selsky*, 391 F.3d 106, 120 (2d Cir. 2004) (finding that the District Court erred when it *sua sponte* dismissed prisoner's First Amendment claim asserting that the defendants had refused to allow prisoner to attend the feast of Eid ul Fitr). In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### B. Eighth Amendment - Excessive Force

In *Perez I,* the Court directed Colon to respond to Plaintiff's Eighth Amendment claims related to the use of pepper spray on June 9, 2019. *Perez I*, Dkt. No. 7 at 9. To the extent that Plaintiff attempts to assert an Eighth Amendment excessive force claim against Colon based upon the June 9, 2019 incident, that claim is dismissed as duplicative.

Perez v. Colon, Not Reported in Fed. Supp. (2019)

Case 1:20-cv-01428-LEK-TWD   Document 34   Filed 12/17/21   Page 15 of 70

2019 WL 5102612

### C. Eighth Amendment - Threats

Allegations of verbal harassment or abuse, without an allegation of an actual injury, are insufficient to support a § 1983 claim. *Johnson v. Eggersdorf*, 8 Fed. Appx. 140, 143 (2d Cir. 2001) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986)). The intentional infliction of psychological pain may constitute an Eighth Amendment violation only if the pain is not de minimis. *See Jermosen v. Coughlin*, No. 87-CV-6267, 1993 WL 267357 at *6 (S.D.N.Y. July 9, 1993), aff'd, 41 F.3d 1501 (2d Cir. 1994) (finding that officers' approach "with their nightsticks raised in a threatening position was not enough to cause the degree of psychological pain which rises to the level of a constitutional violation"); *Greene v. Mazzuca*, 485 F.Supp.2d 447, 451 (S.D.N.Y. 2007) (being yelled at, spit at, and threatened with time in the SHU, without an allegation of serious injury or damage, did not rise to the level of a § 1983 claim).

In this case, given the severity of the alleged conduct, i.e., the alleged assault(s) on June 9, the presence of the same officers on June 17, and the conduct on June 17, as well as Plaintiff's alleged harm, the Court finds that, at this point, Plaintiff's injurious threats cause of action survives initial review and requires a response from Colon, Carter, Waters, Officer John Doe #1, Officer John Doe #2, and Officer John Doe #3. This is not a ruling on the merits and the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion. [7]

[7]      Because some of the Eighth Amendment claims are asserted against corrections officers whose names are not known to Plaintiff, service of process cannot be effected on them unless and until these individuals have been identified by name. If Plaintiff wishes to pursue his claims against defendants Officer John Does 1, 2, and 3, he must take reasonable steps to ascertain through discovery the identity of those individuals. Upon learning the identities of the unnamed defendants, Plaintiff must amend the operative complaint to properly name those individuals as parties. If Plaintiff fails to ascertain the identity of the John Doe defendants so as to permit timely service of process, all claims against those individuals will be dismissed.

### D. Eighth Amendment - Medical Indifference

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.' " *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104). "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted). Addressing the objective element, to prevail a plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). "Second, the defendant must act with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Blyden*, 186 F.3d at 262 (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.' ").

**\*6** "Non-medical prison personnel engage in deliberate indifference where they 'intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel.' " *Baumann v. Walsh*, 36 F.Supp.2d 508, 512 (N.D.N.Y. 1999).

Construing the Complaint liberally, Plaintiff alleges that Sgt. Doe refused to allow him to receive medical treatment for injuries that he sustained during a physical altercation. *See* Compl. at 4. The Complaint however, lacks facts related to the nature of the treatment sought or the injuries he allegedly suffered. Plaintiff has not pleaded that he told Sgt. Doe that he was in extreme pain and has failed allege that Sgt. Doe was present during the alleged altercation(s) or that he was otherwise aware that Plaintiff's condition was severe. As presently constituted, the pleading does not plausibly allege that Plaintiff had serious medical needs or that Sgt. Doe knew of and disregarded an excessive risk to Plaintiff's health or safety.

Consequently, Plaintiff's Eighth Amendment deliberate medical indifference claims against Sgt. Doe are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

### E. Claims Against Chaplain

Perez v. Colon, Not Reported in Fed. Supp. (2019)

Case 1:20-cv-01428-LEK-TWD   Document 34   Filed 12/17/21   Page 16 of 70

2019 WL 5102612

Plaintiff names the Chaplain as a defendant in the caption and list of parties. Compl. at 1, 7. However, Plaintiff did not attribute any of the alleged constitutional violations to the Chaplain. Indeed, this defendant is not referenced anywhere in the body of the Complaint. In the absence of factual allegations sufficient to plausibly suggest that the defendant was personally involved in conduct that violated Plaintiff's constitutional rights, the complaint fails to state a cognizable claim against him/her. *See Cipriani v. Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb. 20, 2007)* ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted); *see also Casino v. Rohl*, No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014)* (dismissing complaint since the plaintiff had not adequately pled the defendant's personal involvement in any of the constitutional deprivations alleged in the amended complaint). Accordingly, Plaintiff's claims against the Chaplain are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief can be granted.

**VI. CONCLUSION**
**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's in forma pauperis application (Dkt. No. 3) is **GRANTED**;[8] and it is further

[8]     Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/ or witness fees.

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by Plaintiff as his current location, with a copy of Plaintiff's inmate authorization form, and notify the official that this action has been filed and that Plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

***7** **ORDERED** that the Clerk of the Court provide a copy of Plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the Clerk shall consolidate Civil Actions Nos. 9:19-CV-0722 (TJM/DJS) and 9:19-CV-0824 (BKS/TWD), with the first of those two actions being designated as the lead case;

**ORDERED** that all future filings in these cases are to be filed in the docket for case No. 19-CV-0722; and it is further

**ORDERED** that the Clerk shall reassign *Perez II* to the Senior Judge Thomas J. McAvoy and Daniel J. Stewart as the assigned Magistrate Judge, add to this action the defendants in *Perez II* who are not already defendants in this action, re-docket Complaint in *Perez I*, and attach to it the Complaint in *Perez II*, which together shall represent the master consolidated Complaint; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b): (1) Eighth Amendment excessive force claim against Colon; (2) Eighth Amendment deliberate medical indifference claim against Sgt. Doe; and (3) claims against the Chaplain;[9] and it is further

[9]     Should Plaintiff seek to pursue a claim dismissed without prejudice by the Court herein, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which Plaintiff has a legal right to pursue, and over which this Court may properly exercise jurisdiction. Any amended complaint filed by Plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

**ORDERED** that the following claims survive sua sponte review and require a response: (1) First Amendment Free Exercise claim against Colon; and (2) Eighth Amendment claims related to threats against Colon, Carter, Waters, and John Does #1, #2, and #3; and it is further

**ORDERED** that the Chaplain is **DISMISSED** as a defendant herein; and it is further

**ORDERED** the Clerk shall issue a summonses and forward them, along with copies of the Complaint, to the United States Marshal for service upon the defendants. The Clerk shall forward a copy of the summonses and Complaint to the Office of the Attorney General, together with a copy of this Decision and Order; and it is further

2019 WL 5102612

**ORDERED** that a response to the Complaint be filed by the defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

**ORDERED** that Plaintiff shall take reasonable steps through discovery to ascertain the identity of defendants Officer Does #1 through #3. **Plaintiff's failure to timely serve those defendants will result in dismissal** of the claims asserted against them and termination of those defendants from the action; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**\*8 ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 5102612

---

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:20-cv-01428-LEK-TWD   Document 34   Filed 12/17/21   Page 18 of 70

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

2019 WL 2352981
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Derrick M. HAMILTON, Plaintiff,

v.

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION, et al., Defendants.

9:18-CV-1312 (MAD/CFH)
|
Signed 06/04/2019

**Attorneys and Law Firms**

DERRICK M. HAMILTON, 89-A-5202, Plaintiff, pro se,
Auburn Correctional Facility, P.O. Box 618, Auburn, NY
13021.

**DECISION AND ORDER**

MAE A. D'AGOSTINO, United States District Judge

**I. INTRODUCTION**

**\*1** Pro se plaintiff Derrick M. Hamilton ("Plaintiff")
commenced this action by filing a Complaint asserting
claims arising out of his confinement in the custody of the
New York State Department of Corrections and Community
Supervision ("DOCCS") at Auburn Correctional Facility
("Auburn C.F."). Dkt. No. 1 ("Compl."). In the original
Complaint, Plaintiff identified the following individuals as
defendants: Commissioner Anthony J. Annucci ("Annucci"),
Superintendent Harold Graham ("Graham"), Prison Guard
A. Venditti ("Venditti"), and Prison Guard Delfavero
("Delfavero"). *Id.* at 1-3. Plaintiff also named DOCCS as a
defendant. *Id.*

By Decision and Order filed December 17, 2018 (the
"December Order"), this Court reviewed the sufficiency of
the Complaint in accordance with 28 U.S.C. § 1915(e) and
28 U.S.C. § 1915A and dismissed the following claims,
with prejudice: (1) claims pursuant to 42 U.S.C. § 1983
("Section 1983") for monetary damages against DOCCS and
defendants in their official capacity; (2) claims pursuant to the
Religious Land Use and Institutionalized Persons Act of 2000
("RLUIPA") against defendants in their individual capacity
and RLUIPA claims for monetary damages and declaratory

judgment against defendants in their official capacities; and
(3) claims asserted pursuant to various United States Treaties.
Dkt. No. 4. The Court also dismissed the following claims,
without prejudice: (1) First Amendment religious claims; (2)
equal protection claims; (3) retaliation claims; (4) claims
for injunctive relief; and (5) New York State Constitutional
claims. *Id.* In light of his pro se status, Plaintiff was afforded
an opportunity to submit an amended pleading with respect to
the claims that were dismissed without prejudice. *Id.* at 24.

Currently before the Court is Plaintiff's Amended Complaint.
Dkt. No. 15 ("Am. Compl.").

**II. LEGAL STANDARD**

The legal standard governing the dismissal of a pleading for
failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)
(B) and 28 U.S.C. § 1915A(b) was discussed at length in the
December Order and will not be restated here. *See* Dkt. No. 4
at 2-4. Taking into account Plaintiff's pro se status, the Court
construes the allegations in the Amended Complaint with the
utmost leniency. *See, e.g., Haines v. Kerner,* 404 U.S. 519,
521 (1972) (holding that a pro se litigant's complaint is to be
held "to less stringent standards than formal pleadings drafted
by lawyers.").

**III. SUMMARY OF AMENDED COMPLAINT** [1]

[1]   The Amended Complaint includes exhibits. *See*
Am. Compl. at 90-96. To the extent that the
exhibits are relevant to the incidents described in
the Amended Complaint, the Court will consider
the Amended Complaint as well as any documents
attached as exhibits. *See Cortec Indus., Inc. v.
Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.
1991) (the complaint is deemed to include any
written instrument attached to it as an exhibit
or any statements or documents incorporated in
it by reference). Additionally, Plaintiff's original
Complaint included exhibits. *See* Compl. at 15-28.
In the Amended Complaint, Plaintiff incorporated,
by reference, the same exhibits attached to the
original Complaint, but failed to actually attach the
exhibits to the Amended Complaint. "Although it is
well settled that an amended complaint supersedes
a prior complaint in its entirety, it is clear to
the court that plaintiff intended to attach the
exhibits to his amended complaint." *Wellington
v. Langendorf,* No. 12-CV-1019 (FJS/DEP), 2013

WL 3753978, at *3 (N.D.N.Y. July 15, 2013). To
require Plaintiff to file an Amended Complaint that
includes the original exhibits is, "an unnecessary
procedural hoop that would waste resources and
delay resolution of this action." *Alexander v. U.S.*,
No. 13-CV-678, 2013 WL 4014539, at *4 (N.D.
Cal. Aug. 5, 2013). Because Plaintiff is proceeding
pro se, the Court will consider the exhibits and
documentation attached to the original Complaint
as incorporated by reference in the Amended
Complaint.

**\*2** In the Amended Complaint, Plaintiff asserts new
claims and realleges previously dismissed claims against
Annucci, Graham, Venditti, and Delfavero. Plaintiff also
asserts claims against the following new defendants:
Deputy Commissioner of Program Services Jeff McKoy
("McKoy"), Director of Division of Ministerial, Family, and
Volunteer Services ("DMFVS") Cheryl Morris ("Morris"),
Assistant Director of DMFVS Paul Guenette ("Guenette"),
Chaplain Marcia Stewart ("Stewart"), Chaplain Wayne
Rose ("Rose"), Director of Inmate Grievance Program
("IGP") Karen Bellamy ("Bellamy"), Director of IGP Shelly
Mallozzi ("Mallozzi"), Superintendent Timothy McCarthy
("McCarthy"), Deputy Superintendent of Program Services
G. Schenk ("Schenk"), Steward D. Vanni ("Vanni"), Assistant
Food Service Administrator, A. Bertonica ("Bertonica"),
Lieutenant Kelsey ("Kelsey"), Watch Commander John Doe
#1 ("WC John Doe #1"), Watch Commander John Doe #2
("WC John Doe #2"), Watch Commander John Doe #3
("WC John Doe #3"), Senior Chaplain Deacon John Tomandl
("Tomandl"), Prison Guard S. Pino ("Pino"), Prison Guard
John Doe #1 ("PG John Doe #1"), Sergeant Porten ("Porten"),
Sergeant Doe ("Sgt. Doe"), North Yard Supervisor Jay
Doe ("Yard Supervisor Jay Doe"), Prison Guard James
Doe ("PG James Doe"), Inmate Organization Coordinator
("IOC") Dave Porter ("Porter"), Recreation Program Leader
("RPL") Ron Pitoniak ("Pitoniak"), and RPL Travis Silcox
("Silcox").[2] *See* Am. Compl. at 1, 6-10. The Amended
Complaint does not include any claims against DOCCS.[3]
The facts are set forth as alleged by Plaintiff in his Amended
Complaint.

[2]    The Clerk of the Court is directed to add these
       defendants to the docket report for this action.

[3]    The Clerk of the Court is directed to terminate
       DOCCS as a defendant.

**A. Background**

Pursuant to DOCCS' Directive #4202, the DMFVS is
responsible for ensuring that all religious programs are carried
out in accordance with the established tenets and practices of
the faith. Am. Compl. at 26.

In 1991 or 1992, DOCCS hired Ascento Fox ("Fox") as
the Senior Rastafari Chaplain. Am. Compl. at 11. While
Fox was employed as the Chaplain, DOCCS aligned its
policies with the "Lived Tenets Rastafari Ecclesiastical
Order." *Id.* at 51-52. Specifically, with respect to the blessing,
handling, preparation, and distribution of food, DOCCS'
policy provided that "food is to be prepared by a faith
group member and people who are not initiates of the faith
should not be allowed to handle, prepare, or distribute the
food." *Id.* at 52. After Fox departed, Annucci "rewrote" the
policy to "exclude the sanctity of [Rastafari] food preparation,
handling, and distribution."[4] *Id.*

[4]    Plaintiff has not plead when Fox departed.

In 2012 and 2013, Annucci, McKoy, Morris, and Guenette
began rewriting the tenets of Rastafari order. Am. Compl.
at 13-14. Defendants implemented a policy that prevented
inmates with "significant knowledge" of the Rastafari tenets
and beliefs from acting as "clerks." *Id.* at 12. By eliminating
clerks, Annucci, McKoy, Morris, and Guenette assumed
"authority" over the community and assigned chaplains of
other denominations to advise the Rastafari community.
*Id.* at 12-14. Defendants allowed "cultural vultures" or
"undesirables" such as gang members, homosexuals, and
mentally challenged individuals into the "sacred order." *Id.* at
14. These "cultural vultures" were only interested in receiving
special meals and avoiding DOCCS' rules related to the length
of their hair. Am. Compl. at 11-12. Annucci also hired Stewart
and Rose as Rastafari chaplains in an effort to introduce the
"state's pro-homosexual" views into the Rastafari order. *Id.*
at 15. Additionally, Annucci, McKoy, Morris, and Guenette
removed "Negust Day" from the Rastafari practice.[5] *Id.* at
14.

[5]    Negust Day is a principle that is a "sincerely held
       Rastafari belief" and annually commemorated on
       October 7th. Am. Compl. at 14-15.

Plaintiff, a practicing Rastafari since birth, filed grievances
claiming that Annucci, McKoy, Morris, and Guenette violated
the Establishment Clause and unconstitutionally rewrote and

Case 1:20-cv-01428-LEK-TWD   Document 34   Filed 12/17/21   Page 20 of 70

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

created tenets for Rastrafarians. [6] Am. Compl. at 14-15, 16. Plaintiff also filed grievances challenging the decision to remove Negust Day as a High Holy Day. [7] *Id.* at 15. In 2013, Plaintiff filed an Article 78 petition in New York State Supreme Court, Albany County, challenging the removal of Negust Day from the Rastafari practice. *Id.* at 14. The matter was declared "moot" and Annucci was compelled to reintegrate Negust Day into the practice. *Id.*

[6]    The Amended Complaint does not include facts related to where or when these grievances were filed.

[7]    *See* Footnote 5, *supra.*

**B. Facts Related to Plaintiff's Confinement at Auburn C.F. from November 2015 through March 2016**

**\*3** On October 21, 2015, Plaintiff was transferred from the Special Housing Unit ("SHU") at Great Meadow Correctional Facility to the SHU at Auburn C.F. Am. Compl. at 15. Upon arriving at Auburn C.F., Plaintiff wrote to Graham advising that his disciplinary sanctions ended on October 30, 2015. *Id.* Plaintiff also wrote to Tomandl, the Rastafari staff advisor, and asked to be placed on all Rastafari call-outs, classes, and services [8] (including Transfiguration Day). *Id.* at 16. Plaintiff expected other members of his community to commemorate Transfiguration Day on November 2, 2015. *Id.* at 11-16. Plaintiff did not receive any response to his correspondence. Am. Compl. at 16-17.

[8]    Plaintiff describes services as "Nyahbinghi". Am. Compl. at 16.

On October 30, 2015, Plaintiff informed SHU staff that his SHU time was complete and presented his disposition sheet as evidence. Am. Compl. at 17. The supervisor informed Plaintiff, "you've pissed somebody off" and, pursuant to Graham's orders, Plaintiff would not be released until the next day. *Id.* On October 31, 2015, Plaintiff was released from the SHU and transferred to cell D-3-11. *Id.*

On November 2, 2015, Plaintiff asked Delfavero for permission to attend Transfiguration Day. Am. Compl. at 17. Delfavero and Venditti refused to allow Plaintiff to attend because he was listed "as a Jew" on the D-Block census. *Id.* at 18. Plaintiff objected to being "branded Jewish," claiming that it endangered Plaintiff's life, health, and well-being. [9] *Id.* at 21. Plaintiff also attempted to explain to Defendants

the importance of Transfiguration Day to the practice of his sincerely held Rastafari beliefs. *Id.* at 19. Plaintiff asked Defendants to contact the Chaplain's Office, but Defendants threatened Plaintiff with a misbehavior report. Am. Compl. at 19. As a result of Defendants' actions, Plaintiff was deprived of the opportunity to practice the highest form of Rastafari worship. *Id.* at 19-20. Additionally, Defendants' interceded and prevented other inmates from delivering the Transfiguration Day sacramental meal to Plaintiff. *Id.* at 20; Compl. at 21.

[9]    According to DOCCS' block census, the inmate who previously occupied cell D-3-11 was Jewish. Am. Compl. at 28-29.

On November 20, 2015, Plaintiff filed a grievance (AUB-68310-15) complaining that Graham retaliated against him and violated his First Amendment religious rights. Am. Compl. at 22; Compl. at 16-19. Specifically, Plaintiff complained that Graham's decision to retain Plaintiff in the SHU for an extra day resulted in Plaintiff being falsely identified as a "Jew" and prevented Plaintiff from observing Transfiguration Day. *Id.* Graham denied the grievance and Plaintiff appealed to the Central Office Review Committee ("CORC"). Compl. at 24, 27. On March 2, 2016, CORC issued a decision "unanimously" accepting the grievance, in part. *Id.* at 28. CORC noted that Plaintiff completed his disciplinary sanctions on October 30, 2015 and was moved to another cell on October 31, 2015, "when it became available." *Id.* CORC also noted that Plaintiff's religion of record was Rastafarian. *Id.*

On December 27, 2015, at 10:00 a.m., Graham ordered WC John Doe #1 to escort Plaintiff to the "penalty box" in the North Yard to await Rastafari services. Am. Compl. at 22. At 10:20 a.m., Plaintiff was released and permitted to enter the chapel for services but was advised that his "time was up at 10:25 a.m." *Id.* On the same day, prisoners belonging to the Nation of Gods and Earths ("NOGE") and Protestant inmates were allowed to study from 1:00 p.m. until 2:45 p.m. and to attend services from 7:00 p.m. until 9:30 a.m. *Id.* at 22-23. Plaintiff filed a grievance (AUB 68521-15) related to the incident. *Id.* at 23.

**\*4** On February 14, 2016, Graham ordered WC John Doe #2 and Yard Supervisor Jay Doe to detain Plaintiff in the "penalty box" to await Rastafari services. Am. Compl. at 23, 31-32. Plaintiff, who suffers from asthma, was forced to endure sub-zero temperatures, for approximately one hour. *Id.* Plaintiff began to experience difficulty breathing and tried to use his

Case 1:20-cv-01428-LEK-TWD   Document 34   Filed 12/17/21   Page 21 of 70

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

inhaler but, the aerosol was frozen. *Id.* Eventually, guards allowed only five Rastafari inmates to enter the chapel at one time while Protestants inmates were sent to the chapel "en masse." *Id.* When Plaintiff finally entered the chapel, Pino questioned Plaintiff's religious beliefs. Am. Compl. at 23.

On February 21, 2016, PG John Doe questioned Plaintiff's religious beliefs regarding gay marriage and homosexuality. Am. Compl. at 24. PG John Doe told Plaintiff that Graham intended to charge Plaintiff with "hate speech and unauthorized religious speech" because Plaintiff was not the "chosen facilitator." *Id.* Plaintiff was compelled to explain his religious beliefs to PG John Doe. *Id.* at 25. PG John Doe responded, "[s]ince this is not going to stop on its own, I'm going to report it." Am. Compl. at 25.

On February 25, 2016, Tomandl, PG John Doe, and Porten, acting upon Graham's order, attempted to remove Plaintiff from all Rastafari call outs by threatening the assigned Inmate Facilitator. Am. Compl. at 25. Plaintiff filed a grievance (AUB 68944-16) claiming that Defendants were attempting to "silence" him. *Id.* While investigating the grievance, Porten prepared a false report claiming that the Inmate Facilitator was unaware of any problems and that services were "running smoothly." *Id.* at 26-27. Porten also threatened Plaintiff, on Graham's behalf, with SHU confinement if he attempted to participate in Rastafari services. *Id.* at 27. As a result of Porten's threat, Plaintiff's "once close Brethren," abandoned him. Am. Compl. at 27.

### C. Christmas Day - December 2016

On December 25, 2016, at 8:45 a.m., Plaintiff asked PG James Doe if Rastafari services would be held at the usual time. Am. Compl. at 39. PG James Doe laughed and responded that only Christian services were being held that day. *Id.* At 10:45 a.m., Plaintiff was released from his cell for a meal and made an attempt to discuss the issue with WC John Doe #3 and Sgt. Doe. *Id.* Sgt. Doe responded, "You're about the fourth one to ask. It's a holiday, where's your Christmas spirit? It's a white Christmas! Have a happy jolly one enjoy your lunch." *Id.* From 7:00 p.m. until 9:30 p.m, Plaintiff witnessed Protestant inmates released from the same cell block to attend services in the chapel. Am. Compl. at 41.

On December 30, 2016, Plaintiff filed a grievance (AUB 70769-17) related to the incident. Am. Compl. at 41. Graham issued a decision conceding that Rastafari services were on the "callout" and should have been held as scheduled. *Id.* Plaintiff appealed Graham's decision to CORC. *Id.* One year

and nineteen days after receipt of the appeal, Mallozzi issued a fraudulent decision and noted that, "Rastafari services were not held on 12/25/16 due to a staff shortage on the holiday." *Id.* at 41-42.

### D. Caribbean African Unity

During the relevant time, Plaintiff was the president of the Caribbean African Unity ("CAU"), a cultural organization that addressed the needs of Auburn C.F. inmates of African, Carribean, Central, and South American ancestry. Am. Compl. at 66. Pursuant to DOCCS' Directive #4760, all cultural organizations must contribute a minimum of fifty percent of any profit to the Inmate Occupational Therapy Fund ("IOTF"). *Id.* Pursuant to the Directive, the formula for profit is the income generated from any fund raising event less the expense of the event. *Id.* Membership dues were not included in the profit analysis. *Id.* Schenk, who was responsible for supervising all cultural organizations at Auburn C.F., implemented new guidelines that contradicted Directive #4760. Am. Compl. at 66-67. For example, Schenk demanded that membership dues be included in the profit calculation and that organizations make quarterly contributions rather than one fiscal year contribution. *Id.*

**\*5** In August 2017, Plaintiff began to notice accounting errors in the CAU account and "question[ed] the illegal siphoning of funds[.]" Am. Compl. at 67. Shortly thereafter, Plaintiff received a memorandum from Pitoniak stating that the CAU was not in compliance with DOCCS' directives related to membership quotas. *Id.* at 67-68. As a result, Pitoniak placed the CAU on a 60-day probationary period. *Id.*

In September 2017 and October 2017, Plaintiff discovered discrepancies in the CAU's trust account and addressed the matter with Pitoniak and Porter. Am. Compl. at 68. Plaintiff was advised "not to make a big stink." *Id.*

In October 2017, Pitoniak approached members of the CAU and attempted to enlist them in a plan to remove Plaintiff as President of the CAU. Am. Compl. at 69-70. Pitoniak told the members that Plaintiff "wrote up a bunch of [expletive] on us" and that Porter and Schenk "want him out" because he questioned how much money the CAU paid to the Inmate Liaison Committee. *Id.* at 70. When the members refused, Pitoniak responded, "That doesn't matter, I already have Morris ready to do it for me." *Id.* Plaintiff filed a grievance (AUB 74417-18) related to the incident. *Id.*

Case 1:20-cv-01428-LEK-TWD  Document 34  Filed 12/17/21  Page 22 of 70
Hamilton v. New York State Department of Corrections..., Not Reported in Fed....
2019 WL 2352981

On December 4, 2017, Plaintiff wrote to Schenk and explained that the CAU had not received monthly financial statements and was unable to account for transactions. Am. Compl. at 69.

On January 4, 2018, at approximately 2:10 p.m., Plaintiff and Pitoniak met in the staff office in the gymnasium to discuss the goals of the cultural organizations. Am. Compl. at 69. Pitoniak began screaming racial slurs at Plaintiff. *Id.* Plaintiff filed a grievance (AUB 73415-18) against Pitoniak. *Id.* Porter was assigned to investigate the grievance and filed a perjured statement in favor of Pitoniak. *Id.* As a result, Plaintiff filed a grievance against Porter (AUB 73649-18). Am. Compl. at 69.

In February 2018, Plaintiff wrote to Vanni requesting an audit of the CAU account. Am. Compl. at 69. In a "face to face conversation," Vanni promised to conduct the audit, "as soon as possible." *Id.* The audit was never conducted. *Id.*

On June 5, 2018, Plaintiff sent a memorandum to Vanni after discovering that $ 91.00 in membership dues was counted as sales and subjected to Defendants' "illegal profit tanking." Am. Compl. at 70. Vanni did not respond. *Id.*

In June 2018, Plaintiff made repeated verbal and written complaints to Vanni, Porter, Silcox, and Pitoniak claiming that money was illegally withdrawn from the CAU account and reported that food purchased for membership meetings was stolen. Am. Compl. at 71-72. Throughout June 2018, Plaintiff's regularly scheduled weekly meetings with Pitoniak were canceled, orders for fund raisers were not processed or fulfilled, and membership dues were not collected. *Id.* at 72. Effectively, the CAU was administratively "stifled." *Id.* at 73.

On September 6, 2018, Silcox issued a memorandum announcing that the CAU was suspended. Am. Compl. at 73. On October 3, 2018, Plaintiff filed a grievance (AUB 75138-18) claiming that the staff retaliated against the CAU and misappropriated funds. *Id.* Silcox fabricated a report related to his investigation of AUB 75138-18. Am. Compl. at 74-75.

On October 4, 2018, Silcox threatened Plaintiff with SHU confinement if he continued to correspond on behalf of the CAU. Am. Compl. at 74. On October 7, 2018, Plaintiff wrote to Annucci and recounted the recent events surrounding the CAU. *Id.* On October 28, 2018, Shenk responded to the "packet of letters" sent to "Acting Commissioner Annucci" and advised that the organization would be reimbursed for

items that were not received. *Id.* Because the CAU was suspended however, the money was transferred to Schenk's IOTF purse and available for use by employees. *Id.*

**E. Food Preparation and Service**

**\*6** On October 2, 2017, when Plaintiff entered the messhall to receive his "medical diet,"[10] he noticed an "openly homosexual inmate" serving the diet meals. Am. Compl. at 47. The tenets of Rastafari law prohibit the consumption of food prepared, distributed, or served by homosexuals. *Id.* Following his religious beliefs, Plaintiff opted not to eat or receive any meal prepared by a known homosexual. *Id.* On October 4, 2017, Plaintiff wrote to Bertonica and explained that Rastafaris are prohibited from eating food prepared and served by a homosexual. *Id.* at 48. Plaintiff advised that he would not "sign for" or eat the medical diet meal. Am. Comp. at 48. Bertonica responded in a written memorandum and stated that all servers are "properly trained in the safe and hygiene [sic] handling of foods and serving areas." *Id.*

[10]   Plaintiff's diet was "drug-free medical therapy" as treatment for high cholesterol. Am. Compl. at 47.

On October 16, 2017, Plaintiff wrote to Bertonica and reiterated his sincerely held beliefs and right not to "buy into the state-mandated perception of homosexuality as normal generative human behavior." Am. Compl. at 48. On October 19, 2017, Bertonica issued a misbehavior report charging Plaintiff with missing meals. *Id.* at 48. In total, Plaintiff was deprived of twenty "medically significant meals." *Id.* at 49.

On October 25, 2017, Plaintiff filed a grievance (AUB 73025-17) against Annucci and Bertonica accusing them of "nefarious use of despicable means ... to coerce me into accepting and participating in the state's homosexual agenda." Am. Compl. at 49. After the grievance was denied, Plaintiff appealed to CORC. *Id.* at 53. Mallozzi falsified the record and denied the appeal. *Id.*

On November 2, 2017, Plaintiff attended a disciplinary hearing related to the misbehavior report. Am. Compl. at 49. Kelsey presided over the hearing however, Plaintiff's guilt was "predetermined." *Id.* Plaintiff asserted that the misbehavior report was issued in retaliation for Plaintiff exercising his sincerely held Rastafari beliefs. *Id.* at 50. Plaintiff asked Kelsey to call Stewart as a witness, but Kelsey denied the request as "immaterial." *Id.* As Plaintiff began to testify in his defense, Kelsey stopped the hearing and directed Plaintiff to leave the room so that he could place a telephone

Case 1:20-cv-01428-LEK-TWD Document 34 Filed 12/17/21 Page 23 of 70

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

call to McCarthy. Am. Compl. at 50. When Plaintiff was recalled, the hearing resumed and he was found guilty of all charges. *Id.* at 51. Plaintiff appealed the determination to Graham and Graham's designee, McCarthy, affirmed. *Id.* Plaintiff was directed to pay at "$ 5.00 surcharge and $ 10.35 for missed meals." *Id.*

### F. Causes of Action

Construing the Amended Complaint liberally,[11] Plaintiff asserts the following: (1) First Amendment retaliation claims; (2) First Amendment claims related to the free speech and the right to petition; (3) First Amendment free exercise claims; (4) First Amendment claims related to violations of the Establishment Clause; (5) Fourth Amendment claims; (6) Eighth Amendment claims; (7) Ninth Amendment claims; (8) Fourteenth Amendment equal protection and due process claims[12]; (9) constitutional claims based upon violations of DOCCS' directives; and (10) New York State Law and Constitutional claims. *See generally*, Am. Compl. Plaintiff seeks declaratory relief and monetary damages. *See id.* at 33-38. Plaintiff also seeks prospective and preliminary injunctive relief. *See id.* at 37-38; 61-64; 87-88.

[11] The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

[12] The Fifth Amendment is applicable to federal actors, not state actors. *Snow v. Vill. of Chatham*, 84 F. Supp. 2d 322, 326 (N.D.N.Y. 2000) (citing *Brock v. North Carolina*, 344 U.S. 424, 426 (1953)). To the extent that Plaintiff is attempting to raise the Fifth Amendment as against the state

defendants, that claim must be dismissed with prejudice. *Horton v. Schneiderman*, No. 9:13–CV–742 (GLS/ATB), 2014 WL 2154538, at *7 (N.D.N.Y. 2014). Because Plaintiff is imprisoned in a state institution, the Fourteenth Amendment, and not the Fifth Amendment, applies to his due process violation claims. *See Pugliese v. Nelson*, 617 F.2d 916, 918 n.2 (2d Cir. 1980).

## IV. ANALYSIS

### A. Eleventh Amendment

**\*7** The law related to Eleventh Amendment was discussed in the December Order and will not be restated herein. *See* Dkt. No. 4 at 9-10. To the extent that Plaintiff attempts to reassert section 1983 claims for monetary damages against Defendants in their official capacity in the Amended Complaint, those claims are dismissed for the reasons set forth in the December Order.

### B. Defendants Stewart, Rose, and Pino

Plaintiff names Stewart, Rose, and Pino as defendants in the caption and list of parties. *See* Am. Compl. at 1, 6, 8-9. Plaintiff claims that Stewart and Rose were hired by Annucci as Rastafari Chaplains as "duplicitious conduits" to introduce the "state's pro-homosexual" policy into the Rastafari order. *See id.* at 15. Plaintiff claims that Pino "questioned why [he] was playing so active a role in [ ] '[r]easoning' amount the Brethren[.]" *See id.* at 23. Plaintiff however, did not attribute any of the alleged constitutional violations to Stewart, Rose, or Pino. In the absence of factual allegations sufficient to plausibly suggest that Defendants were personally involved in conduct that violated Plaintiff's constitutional rights, the Amended Complaint fails to state a cognizable claim against them. *See Cipriani v. Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted); *see also Casino v. Rohl*, No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (dismissing complaint since the plaintiff had not adequately pled the defendant's personal involvement in any of the constitutional deprivations alleged in the amended complaint). Accordingly, Plaintiff's claims against Stewart, Rose, and Pino are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief can be granted.

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

Case 1:20-cv-01428-LEK-TWD   Document 34   Filed 12/17/21   Page 24 of 70

## C. First Amendment

### 1. Retaliation

The law related to First Amendment retaliation claims was discussed in the December Order and will not be restated herein. *See* Dkt. No. 4 at 16-17. In the Amended Complaint, Plaintiff asserts retaliation claims against Graham, Bertonica, Pitoniak, Schenk, Vanni, Porter, and Silcox, and Annucci. [13] *See generally*, Am. Compl.

[13]    Plaintiff claims he was transferred to Auburn C.F. in retaliation for grievances against Annucci, McKoy, Guenette, and Morris related to their violations of the Establishment Clause. *See* Am. Compl. at 15. Plaintiff has not identified the person(s) responsible or personally involved in the decision to transfer him to Auburn C.F. Accordingly, this claim is not sufficiently plead.

#### a. Graham

In the Complaint, Plaintiff alleged that Graham retaliated against him "on behalf of his colleagues at Great Meadow" when he detained Plaintiff for an additional day in the SHU without a valid "detention hold." Compl. at 4, 17, 25. In the December Order, the Court dismissed Plaintiff's retaliation claims against Graham holding:

To the extent that Plaintiff claims that the retaliatory conduct was in response to grievances previously filed at Great Meadow C.F., the claims are nonetheless subject to dismissal. Plaintiff has failed to identify the grievances he filed which allegedly motivated Graham to retaliate against him. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone."); *Edwards v. Bezio*, No. 9:08-CV-256(LEK/RFT), 2010 WL 681369, at *3 (N.D.N.Y. Feb. 24, 2010) (dismissing retaliation claim based on allegation that plaintiff suffered adverse action for "past and present" grievances and lawsuits, noting that plaintiff's "general references to grievances and lawsuits he allegedly filed are not sufficient to establish that he was engaged in protected conduct"). "As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant." *Hare v. Hayden*, No. 09 Civ. 3135,

2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011); *see also Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (collecting cases).

**\*8** Here, Plaintiff did not file any grievances or complaints against Graham or any staff member at Auburn C.F. prior to the alleged retaliatory conduct. As Plaintiff has not sufficiently alleged any causal connection between any protected activity and retaliatory conduct, Plaintiff has not stated a plausible claim for retaliation against Graham in violation of the First Amendment and this claim is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

Dkt. No. 4 at 18-19.

In the Amended Complaint, Plaintiff alleges that Graham ordered Plaintiff held in the SHU for an extra day in retaliation for grievances Plaintiff filed against Morris, Guenette, McKoy, and Annucci and in response to his "exercise of [his] constitutional protected right" to speak against Annucci's violation of the Establishment Clause. *See* Am. Compl. at 15, 29. Despite the fact that Plaintiff was afforded the opportunity to amend his Complaint, the amended pleading does not cure the deficiencies in the original pleading related to this claim. For the reasons set forth in the December Order, Plaintiff's retaliation claim against Graham is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

#### b. Bertonica

Plaintiff claims that Bertonica issued a false misbehavior report in retaliation for Plaintiff's free exercise of his Rastafari beliefs. *See* Am. Compl. at 50. At this juncture, Plaintiff has sufficiently plead a First Amendment retaliation claim against Bertonica to warrant a response. *See Parks v. Smith*, No. 908-CV-0586 (TJM/GHL), 2009 WL 3055278, at *1 (N.D.N.Y. Sept. 23, 2009) (finding that the exercise of religion could constitute protected conduct). In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

#### c. Pitoniak, Schenk, Vanni, Porter, Silcox, and Annucci

Plaintiff claims that Pitoniak suspended the CAU because Plaintiff "questioned the illegal taking of 50% of [CAU] sales." *See* Am. Compl. at 75. Plaintiff also alleges that Vanni, Porter, and Silcox, refused to process purchase orders, membership dues, and callouts and that Schenk authorized the suspension of the CAU because Plaintiff filed grievances related to the "illegal seizure of [his] property" and grievances "necessary to safeguard CAU's funds." *See id.* at 75-79. Plaintiff also claims that Annucci retaliated against him because Annucci failed to remedy the constitutional violations after being informed of Defendants' "embezzlement scam." *See id.* at 80.

At this juncture, Plaintiff has sufficiently plead a retaliation claim against Pitoniak, Schenk, Vanni, Porter, and Silcox to require a response. *See Barnes v. Cty. of Monroe*, 85 F. Supp. 3d 696, 731 (W.D.N.Y. 2015) (theft of the plaintiff's commissary may be construed as an adverse action). In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

A different conclusion is reached however, with respect to the retaliation claim against Annucci. Courts in this District have held that letters to supervisors and his responses (via his subordinates) do not satisfy the personal involvement requirement. *DeMeo v. Koenigsmann*, No. 11 Civ. 7099, 2015 WL 1283660, at *16 (S.D.N.Y. Mar. 20, 2015) (holding that prisoner letters sent to Dr. Koenigsmann, which were referred to and responded to by subordinates, did not establish Koenigsmann's personal involvement); *see also Yearney v. Sidorowicz*, No. 13 Civ. 3604, 2014 WL 2616801, at *9 (S.D.N.Y. June 10, 2014) (reasoning that Dr. Koenigsmann's subordinate, writing on his behalf, was insufficient to establish Dr. Koenigsmann's personal involvement); *see also Brantley v. Fischer*, No. 12-CV-1051, 2013 WL 5466790, at *9 (N.D.N.Y. Sept. 30, 2013) (holding that the receipt of a letter by Koenigsmann's subordinate which stated that, "Dr. Koenigsmann, Chief Medical Officer, has asked me to respond to your recent letter concerning your health care issue," was insufficient to establish supervisory liability).

**\*9** Accordingly, Plaintiff's retaliation claim against Annucci is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

Plaintiff claims that Porten and Kelsey violated his right to freely speak against "DOCCS' pro-homosexual agenda." *See* Am. Compl. at 25, 56. Plaintiff also contends that Vanni violated his right to speak on behalf of the CAU and that Silcox "undermind[ed] his right to speak out against the unlawful and unreasonable seizure of [his] property." *See id.* at 78-79.

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "Because of security concerns inherent in correctional facilities, the First Amendment's protection of communication is not without restriction." *Pitsley v. Ricks*, No. 9:96–CV–0372 (NAM/DRH), 2000 WL 362023, at *4 (N.D.N.Y. March 31, 2000) (citing *Morgan v. LaVallee*, 526 F.2d 221, 225 (2d Cir. 1975)). A prisoner's right to free speech is more limited than the right of a non-prisoner, but still any restrictions on the prisoner's First Amendment rights must be "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

"In order to state a claim for deprivation of a constitutional right to communication, an inmate must make some showing of prejudice or actual injury as a result of the prison officials' conduct." *Pitsley*, 2000 WL 362023, at *3 (citation omitted). "[P]laintiffs who allege a violation of their right to free speech must prove that (1) defendants silenced him or (2) 'defendant[s'] actions had some actual, non-speculative chilling effect' on his speech." *Williams v. Town of Greenburgh*, 535 F.3d 71, 78 (2d Cir. 2008) (citing *inter alia, Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002)).

Here, Plaintiff has not plead that he suffered "prejudice or actual injury." Indeed, throughout the Amended Complaint, Plaintiff claims that he repeatedly and continually voiced his objections to DOCCS' policies and filed several complaints regarding staff behavior with numerous grievances and written correspondence. Thus, as presently plead, the Amended Complaint does not suggest that Defendants "chilled his speech or otherwise prevented him from speaking." *See Williams*, 535 F.3d at 78; *see also Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) ("[w]here a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech.") (citation omitted).

**2. Free Speech**

Case 1:20-cv-01428-LEK-TWD  Document 34  Filed 12/17/21  Page 26 of 70

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

Accordingly, Plaintiff's First Amendment free speech claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Freedom to Petition

Plaintiff alleges that Annucci, Bellamy, and Mallozzi violated his First Amendment right to petition the government because the grievance process is "corrupt," "irreparably biased," and "operated as a dead end." *See* Am. Compl. at 27-28, 33, 45-46, 53, 60-61.

**\*10** It is well-established that a prison inmate has no constitutional right of access to an internal grievance process. *Rhodes v. Hoy*, No. 9:05-CV-0836 (FJS/DEP), 2007 WL 1343649, at \*6 (N.D.N.Y. May 5, 2007); *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at \*3 (N.D.N.Y. May 4, 2005) ("[P]articipation in an inmate grievance process is not a constitutionally protected right."); *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at \*3 (S.D.N.Y. Mar. 29, 2001) (holding that "inmate grievance procedures are not required by the Constitution" and therefore failure to see it that grievances are properly processed does not create a claim under Section 1983). Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access to the internal grievance procedure, or to investigate and properly determine any such grievance.

Accordingly, Plaintiff's First Amendment freedom to petition claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. Free Exercise of Religion

The law related to First Amendment Free Exercise Clause was discussed in the December Order and will not be restated herein. *See* Dkt. No. 4 at 11-12. In the December Order, the Court dismissed Plaintiff's First Amendment claims holding:

Plaintiff [ ] alleges that Venditti and Delfavero refused to allow Plaintiff to attend a religious service and denied Plaintiff a religious meal on November 2, 2015 violating Plaintiff's First Amendment rights. Compl. at 4-6. As presently plead, the Complaint lacks facts suggesting that Plaintiff's religious beliefs were "sincerely held."

Moreover, Plaintiff has not plead facts establishing that defendants created a substantial burden on his religion or prevented him, in other ways, from practicing his religion. The Complaint was filed in November 2018, nearly three years after the alleged incidents, and is conspicuously devoid of references to any other violations to Plaintiff's religious freedoms before or after the incidents in November 2015. The isolated incidents on November 2, 2015 "are not representative of larger, systematic deprivations [and] are constitutionally de minimis and do not rise to a level sufficient to support a First Amendment claim." *Skates v. Shusda*, No. 9:14-CV-1092 (TJM/DEP), 2016 WL 3882530, at \*4 (N.D.N.Y. May 31, 2016) (citation omitted); *see also Williams v. Weaver*, No. 9:03-CV-0912 (LEK/GHL), 2006 WL 2794417, at \*5, n. 29 (N.D.N.Y. Sept. 26, 2006) (granting the defendant's motion for judgment on the pleadings with respect to prisoner's First Amendment free-exercise claim that defendant caused prisoner to miss two weekly religious services); *Cancel v. Mazzuca*, 205 F.Supp.2d 128, 142 (S.D.N.Y. 2002) (granting defendant's Rule 12(b)(6) motion to dismiss prisoner's First Amendment free-exercise claim that defendant "prevented him, on one occasion, from attending a religious service"); *Gill v. DeFrank*, 8 Fed. App'x 35, 37 (2d Cir. 2001) (affirming lower court dismissal of First Amendment claim holding "missing one religious service does not constitute a substantial burden on an inmate's right to the free exercise of his religion."); *see Butler v. Hogue*, No. 9:08-CV-0264 (GLS/DRH), 2010 WL 4025893, at \*4 (N.D.N.Y. Feb. 4, 2010) (dismissing First Amendment claim based upon allegations that the plaintiff missed two of six meals in a two day period, with no other complaints of prior problems "before, or after, during his tenure at Upstate.").[14]

Dkt. No. 4 at 14-15.

[14]  The Court also dismissed the First Amendment religious claims against Graham for failure to plead personal involvement for purposes of § 1983. *See* Dkt. No. 4 at 13.

**\*11** In the Amended Complaint, Plaintiff, a Rastafari "since birth," clearly identifies and explains his religious beliefs. *See generally,* Am. Compl. Accordingly, at this juncture, Plaintiff has sufficiently alleged that he held a sincere religious belief.

Case 1:20-cv-01428-LEK-TWD Document 34 Filed 12/17/21 Page 27 of 70

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

### a. Graham, Tomandl, Venditti, Delfavero, WC Doe #1, and Porten

"[P]risoners have a constitutional right to participate in congregate religious services." *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993) (citations omitted). While the Second Circuit has accorded prison officials great deference in the administration and "responsibility of maintaining order in prisons, ... prisoners should be afforded every reasonable opportunity to attend religious services, whenever possible." *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir. 1989) (citations omitted).

In the Amended Complaint, Plaintiff asserts the following Free Exercise claims related to incidents that occurred in November 2015 and December 2015:

- Graham's failure to release Plaintiff from the SHU on October 30, 2015 resulted in Plaintiff being falsely identified as a "Jew" and a violation of Plaintiff's constitutional right to practice his religion;

- Tomandl, Venditti, and Delfavero refused to allow Plaintiff to attend the Transfiguration Day service and denied him the opportunity to partake in the Transfiguration Day meal, as an alternative means of observing the holiday;

- Plaintiff claims that Graham and WC John Doe #1 violated his right to the free exercise on December 27, 2015 because he was afforded only five minutes to worship in the chapel; and

- Graham and Porten threatened Plaintiff with SHU confinement if he participated in Rastafari services or answered questions from the "Brethren."

*See* Am. Compl. at 16, 18-20, 22-23, 27, 31; Compl. at 17-18.

At this juncture, Plaintiff has sufficiently plead facts suggesting that a pattern and policy of discrimination and interference with his religious rights was prevalent at Auburn C.F. in November and December 2015. *See Bass v. Grottoli*, No. 94 CIV. 3220, 1995 WL 565979, at *4 (S.D.N.Y. Sept. 25, 1995) (allowing the plaintiff to proceed with First Amendment claim that alleged a pattern of anti-Semitic harassment and deliberate interference with religious services or instruction). Accordingly, Graham, Venditti, Delfavero, WC John Doe #1, and Porten are directed to respond to

Plaintiff's First Amendment Free Exercise claims. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

A different conclusion is reached however, with regard to Plaintiff's First Amendment Free Exercise claims against Tomandl. Plaintiff summarily states that he wrote to Tomandl and that he did not receive a response. *See* Am. Compl. at 16-17. The Second Circuit has cautioned against dismissing claims for failure to allege personal involvement without granting leave to amend where the plaintiff may allege that an official failed to respond to a letter of complaint. *Grullon v. City of New Haven,* 720 F.3d 133, 141 (2d Cir. 2013) (holding that a prisoner's letter of complaint sent to a prison warden "at an appropriate address and by appropriate means" would suffice to state facts plausibly suggesting personal involvement). While cognizant of *Grullon*, the Court finds that, as presently plead, Plaintiff has failed to establish that Tomandl was personally involved in any constitutional deprivation. The Amended Complaint lacks facts suggesting where the letter to Tomandl was sent or by what means the letters were forwarded. Without more, the allegations are not enough to allege that the Tomandl was personally involved in violations of Plaintiff's First Amendment rights. *See Bridgewater v. Taylor,* 698 F.Supp.2d 351, 359 (S.D.N.Y. 2010); *Guillory v. Cuomo*, 616 Fed. App'x 12, 14 (2d Cir. 2015) (summary order).

### b. PG James Doe, Sgt. Doe, and WC Doe #3

**\*12** Plaintiff claims PG James Doe, Sgt. Doe and WC Doe #3 violated his First Amendment rights when they refused to allow him to attend Rastafari services on December 25, 2016. *See* Am. Compl. at 43. Generally, the inability to attend religious services, for one day, does not result in a constitutional violation. *See Scott v. Uhler*, No. 9:16-CV-403 (TJM/CFH), 2017 WL 9511167, at *3–4 (N.D.N.Y. Feb. 8, 2017) (citing *Boomer v. Irvin*, 963 F.Supp. 227, 230-31 (W.D.N.Y. 1997)) (holding that the inability to attend Jumm'ah service on one day did not violate the plaintiff's constitutional rights). While Plaintiff sufficiently plead that other Defendants engaged in a pattern of First Amendment violations in November and December of 2015, as presently plead, the Amended Complaint lacks facts connecting PG James Doe, Sgt. Doe and/or WC Doe #3 to the aforementioned "pattern and practice" of interference with Plaintiff's religious rights. Moreover, the gap between the Christmas Day incident and the prior pattern is too tenuous to

Case 1:20-cv-01428-LEK-TWD Document 34 Filed 12/17/21 Page 28 of 70

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

suggest that the conduct is associated. Indeed, the Amended Complaint lacks facts related to violations of Plaintiff's free exercise rights between December 2015 and December 2016. Because Plaintiff has not plead facts suggesting that Defendants prevented him, in other ways, from practicing his religion on December 25, 2016, the isolated incident does not give rise to a constitutional violation.

Accordingly, Plaintiff's First Amendment free exercise claims against PG James Doe, Sgt. Doe, and WC Doe #3 are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

#### c. Bertonica

Plaintiff claims that he wrote to Bertonica, on two occasions, explaining that he could not eat any food known to be prepared or served by homosexuals and that Bertonica "failed to act" on his complaints. *See* Am. Compl. at 48, 55. "Prison authorities must accommodate the right of prisoners to receive diets consistent with their religious scruples." *Ford*, 352 F.3d at 597. "Courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights." *McEachin v. McGuinnis*, 357 F.3d 204-05 (2d Cir. 2004).

At this juncture, Plaintiff has sufficiently plead a First Amendment Free Exercise claim against Bertonica to warrant a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion. *See Lewis v. Zon*, 920 F. Supp. 2d 379, 385 (W.D.N.Y. 2013) (holding that "it is the sincerity of plaintiff's beliefs and not their objective reasonableness that is relevant") (citing *Ford*, 352 F.3d at 588 (holding that " 'an individual claiming violation of free exercise rights need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious,' regardless of whether the belief is unorthodox, irrational or even demonstrably false")).

#### d. Kelsey and McCarthy

Plaintiff makes conclusory allegations against Kelsey and McCarthy related to his First Amendment right to the free exercise of his religious beliefs. *See* Am. Compl. at 56-57,

59. Because the Amended Complaint lacks facts suggesting how Plaintiff's sincerely held religious beliefs were burdened by Kelsey or McCarthy, Plaintiff's First Amendment free exercise claims against Kelsey and McCarthy are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

#### e. Annucci, McKoy, Morris, and Guenette

Plaintiff claims that Annucci, McKoy, Morris, and Guenette violated his First Amendment religious rights because they "rewrote the Rastafari ecclesiastical doctrine" related to food preparation, handling, and distribution to "accommodate DOCCS' pro-homosexual doctrine." *See* Am. Compl. at 52, 57.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

**\*13** If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the alleged constitutional violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.

2019 WL 2352981

1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)). [15]

[15] The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that Iqbal may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*"); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]") (citing *Grullon*, 720 F.3d at 139).

The third *Colon* category provides for personal involvement where "the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom." *Colon*, 58 F.3d at 873. With respect to the third *Colon* factor, "[a] policy or custom can be explicitly established in an adopted rule or regulation, or may exist if the 'violative practice is persistent and widespread,' and if the acts of subordinate employees 'imply the constructive acquiescence of senior policy-making officials.' " *Lipton v. Cty. of Orange*, 315 F. Supp. 2d 434, 453 (S.D.N.Y. 2004).

Liberally construing the pleading, particularly at this early juncture, Plaintiff's allegations clearly fall into the third *Colon* category. Plaintiff alleges that Defendants promulgated policies that rewrote "Rastafari Ecclesiastical doctrine and Divine Laws to exclude the sanctity of our food preparation, handling, and distribution" and, thus, violated his right to practice his chosen religion. *See Selah v. Fischer*, No. 9:09-CV-1363 (GLS/DEP), 2013 WL 5603866, at *2 (N.D.N.Y. Oct. 11, 2013) (allowing First Amendment claim against Morris with allegations that she promulgated the policies that allegedly infringed upon the plaintiff's right to practice his chosen religion); *see also Jones v. Annucci*, No. 16-CV-3516, 2018 WL 910594, at *9 (S.D.N.Y. Feb. 14, 2018) (allowing the plaintiff to proceed with First Amendment claim against the Deputy Superintendent of Program Services under third *Colon* factor because the plaintiff alleged that the Deputy

instituted the policy requiring Shia inmates to change their religion from "Islam" to "Shia") (citations omitted). At this juncture, Plaintiff has sufficiently plead a First Amendment Free Exercise claim against Defendants to warrant a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### 5. Establishment Clause

**\*14** In addition to the free exercise claim, Plaintiff also claims that Defendants violated the Establishment Clause. The First Amendment's Establishment Clause provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The Establishment Clause guarantees that the government may not "coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a [state] religion." *Muhammad v. City of New York Dep't of Corrs.*, 904 F.Supp. 161, 197 (S.D.N.Y. 1995). "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Skoros v. City of New York*, 437 F.3d at 1, 39 (2d Cir. 2006) (citation omitted). A government practice satisfies the Establishment Clause, if it (1) has a secular purpose; (2) neither advances nor inhibits religion; and (3) avoids excessive entanglement between the state and religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612-13, *reh'g denied*, 404 U.S. 876 (1971). However, in the prison setting, this test is tempered by an inmate's free exercise rights and legitimate penological interests. *See Pugh v. Goord*, 571 F. Supp. 2d 477, 494 (S.D.N.Y. 2008) (citing *Turner v. Safley*, 482 U.S. 78 (1987)).

Plaintiff claims that Annucci, Graham, McKoy, Morris, and Guenette imposed "pro-homosexual policies" on the Rastafari community and that PG John Doe was an advocate for those policies. *See* Am. Compl. at 25, 32-33, 37, 52. To wit, under Defendants' policies, homosexuals were permitted to handle, prepare, and distribute meals to Rastafarians during religious commemorations in violation of Rastafari tenets and the Establishment Clause. *See id.* at 32, 52.

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that Plaintiff's Establishment Clause claims against Annucci, McKoy, Morris, Guenette, Graham, and PG John Doe survive sua sponte review and require a response. In so ruling, the Court

Case 1:20-cv-01428-LEK-TWD  Document 34  Filed 12/17/21  Page 30 of 70

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### D. Fourth Amendment

Plaintiff claims that Schenk, Vanni, Porter, Silcox, Annucci, and McCarthy illegally seized his property in violation of the Fourth Amendment. *See* Am. Compl. at 77, 79, 80, 81.

While inmates do not retain the full range of constitutional rights that unincarcerated individuals enjoy, they do retain "some Fourth Amendment rights upon commitment to a correctional facility." *Bell v. Wolfish*, 441 U.S. 520, 558–60 (1979). "Since the exigencies of prison life authorize officials indefinitely to dispossess inmates of their possessions without specific reason, any losses that occur while the property is in official custody are simply not redressable by Fourth Amendment litigation." *Hudson v. Palmer*, 468 U.S. 517, 539 (1984). Personal effects of inmates are routinely searched, seized, and placed in official custody. *Id.* at 540 (holding that claims related to missing property "have long been redressable in tort" and whether those remedies are "adequate" is a question for the "Takings and Due Process Clauses.")

Plaintiff's claim that his "membership dues" were unreasonably seized by Defendants does not give rise to a Fourth Amendment claim. *See Jackson v. SCI-Camp Hill*, No. 1:11-CV-1135, 2012 WL 3990888, at *6 (M.D. Pa. Sept. 11, 2012), *aff'd sub nom. Jackson v. SCI Camp Hill*, 530 F. App'x 150 (3d Cir. 2013) ("[C]ourts have [ ] refused to recognize an inmate's claim that the seizure of money from his inmate account violated the Fourth Amendment[.]") (collecting cases); *see also Gardner v. Rogers State Prison*, No. CIV. A. CV608-016, 2009 WL 29572, at *5 (S.D. Ga. Jan. 5, 2009) ("Even accepting as true Plaintiff's allegation that $ 1 was taken from his inmate reserve account, he does not state a valid Fourth Amendment cause of action.").

Accordingly, Plaintiff's Fourth Amendment claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### E. Eighth Amendment

*15 The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d

118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981). "To demonstrate that the conditions of his confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted). To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.' " *Id.* (citation omitted). "[The inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted).

With respect to the subjective element, plaintiff must "demonstrate that the defendants imposed those conditions with 'deliberate indifference.' " *Jolly*, 76 F.3d at 480 (citation omitted). "To constitute deliberate indifference, '[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety.' " *Walker*, 717 F.3d at 125 (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)).

#### a. Venditti and Delfavero

Plaintiff claims that Venditti and Delfavero placed him at "unreasonable risk of substantial harm" when they intentionally mislabeled Plaintiff as "Jewish." *See* Am. Compl. at 30. While Plaintiff alleges that being "branded" Jewish endangered his life, health and well being "in a way no less significant than if they had called me an informer," *see* Am. Compl. at 21, he fails to allege that he suffered any actual physical injury, i.e., that he was actually attacked or assaulted. Fear of danger, without more, is insufficient to establish a "sufficiently serious" injury. *See Best v. City of N.Y.*, No. 11 CIV. 4475, 2012 WL 5458054, at *7 (S.D.N.Y. Nov. 8, 2012) (dismissing the complaint where the plaintiff alleged that he feared his life was in danger because he was not held in protective custody, but did not allege that he was attacked or injured as a result of being denied protective custody status); *see also Newman v. Duncan*, No. 04-CV-395 (TJM/DRH), 2007 WL 2847304, at *5 (N.D.N.Y. Sept. 26, 2007) ("The law is clear that an inmate must demonstrate an 'actual injury' when alleging a constitutional violation."); *Cruz v. Hillman*, No. 01 CIV. 4169, 2002 WL 31045864, at *8 (S.D.N.Y. May 16, 2002) (citations omitted) ("Under the relevant case law, fear of assault does not constitute a 'sufficiently serious' injury sufficient to state a claim under

the Eighth Amendment."). "A general, conclusory statement that an inmate fears for his safety, without more, is insufficient information from which an inference can be drawn that such inmate's safety is actually at risk." *Wilson v. Campbell*, No. 06-CV-0175 (GLS/RFT), 2008 WL 902187, at *5 (N.D.N.Y. Mar. 31, 2008) (citation omitted). For the reasons set forth herein, Plaintiff's Eighth Amendment claims against Venditti and Delfavero are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**b. Graham, Yard Supervisor Jay Doe, WC Doe #2**

The Second Circuit has found that prisoners claiming detention under very cold temperatures may establish an Eighth Amendment claim of cruel and unusual punishment. *See, e.g., Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001) (reinstating Eighth Amendment claims of frigid temperatures dismissed by district court); *Channer v. Mitchell*, 43 F.3d 786, 788 (2d Cir. 1994) (denying motion to dismiss where prisoner alleged that officer had required him to spend two nights in a holding cell without bedding). Exposure to the "bitter cold of winter in northern-New York State" for "a substantial period of time" may constitute an Eighth Amendment claim. *See Corseli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988); *Ifill v. Goord*, No. 03-CV-355, 2012 WL 176492, at *3 (W.D.N.Y. Jan. 20, 2012) (holding that "freezing temperatures can constitute the basis of an inhumane conditions of confinement claim."). "It is true that some district courts in this circuit have found that allegations of exposure to cold temperatures for short periods of time, in conjunction with a deprivation of clothing and/or bedding, are insufficient to state a claim under the Eighth Amendment." *Nelson v. Plumley*, No. 9:12-CV-0422 (TJM/DEP), 2013 WL 1121362, at *10 (N.D.N.Y. Jan. 24, 2013) (collecting cases).

**\*16** Here, Plaintiff claims that Defendants forced him to remain outside for one hour in "minus twenty degrees below zero." *See* Am. Compl. at 23. The Amended Complaint however, lacks any facts suggesting that Plaintiff suffered any physical injury or that he sought or required medical treatment. Further, while he states that he was exposed to "bone chilling cold," Plaintiff does not contend that he was forced outside without proper clothing or that he was deprived of a jacket or coat.

For the reasons set forth herein, Plaintiff's Eighth Amendment claims against Graham, Yard Supervisor Jay Doe, and WC

Doe #2 are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**c. Bertonica**

Plaintiff claims that Bertonica "forced" him to miss twenty medical meals causing "unknown damages." *See* Am. Compl. at 55. The Eighth Amendment requires that prisoners be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (citation omitted); *Brown v. Eagen*, No. 08–CV-0009 (TJM/DRH), 2009 WL 815724, at *10 (N.D.N.Y. Mar. 26, 2009) (citations omitted); *Midalgo v. Bass*, No. 03–CV–1128 (NAM/RFT), 2006 WL 2795332, at *11 (N.D.N.Y. Sept. 26, 2006) (citations omitted). "Depriving an inmate of food or serving him contaminated food may constitute a violation of the Eighth Amendment." *Moncrieffe v. Witbeck*, No. 86-CV-253 (NAM), 2000 WL 949457, at *6 (N.D.N.Y. June 29, 2000) (citing *Robles*, 725 F.2d at 15). Where a particular diet is medically required, denial of a smaller number of meals may be sufficient in some circumstances. *See Abdush-Shahid v. Coughlin*, 933 F. Supp. 168, 180 (N.D.N.Y. 1996) (citing *Robles*, 725 F.2d at 15-16).

Here, Plaintiff does not allege that his decision to refuse medical meals caused any adverse impact upon his health. Rather, Plaintiff asserts, in conclusory terms, that the condition caused "unknown damage." Moreover, Plaintiff has not plead that he was denied any food or meals. Accordingly, Plaintiff's Eighth Amendment claims against Bertonica are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**F. Ninth Amendment**

Plaintiff claims that Annucci, Stewart, Rose, Bertonica, and Pitoniak violated the Ninth Amendment. *See* Am. Compl. at 76. The Ninth Amendment to the United States Constitution provides, "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const., amend. IX. Courts from within the Second Circuit have recognized the inapplicability of the Ninth Amendment to prisoner Section 1983 claims. *Muniz v. Goord*, No. 9:04-CV-0479 (TJM/GHL), 2007 WL

Case 1:20-cv-01428-LEK-TWD Document 34 Filed 12/17/21 Page 32 of 70

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

2027912, at *9 (N.D.N.Y. July 11, 2007) (citations omitted); *Newman v. Annucci*, No. 3:17-CV-0918 (LEK/DEP), 2018 WL 4554494, at *8 (N.D.N.Y. Sept. 21, 2018) (holding that the Ninth Amendment "is not an independent source of constitutional rights that may be asserted in a civil rights action ... [and] cannot serve as the basis for a § 1983 claim because such a claim must be based on the violation of a right guaranteed by the U.S. Constitution or federal law.").

According, Plaintiff's Ninth Amendment claims are dismissed.

### G. Violations of DOCCS' Directives

Construing the Amended Complaint liberally, Plaintiff alleges that Annucci violated DOCCS' Directive #4202 because he "sought to establish tenets and practices of Rastafari." *See* Am. Compl. at 26. Plaintiff also claims that Venditti and Delfavero failed to adhere to DOCCS' procedures and that Pitoniak, Schenk, Vanni, Porter, Silcox, Annucci, and McCarthy violated DOCCS' Directive #4760. *See id.* at 19, 66-75.

**\*17** A Section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations. *See Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, *6 (S.D.N.Y. Mar. 15, 2001) (holding that the failure to follow a New York State DOCCS Directive or prison regulation does not give rise to a federal constitutional claim) (citing *Fluent v. Salamanca Indian Lease Auth.*, 847 F.Supp. 1046, 1056 (W.D.N.Y. 1994)) (holding that section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles); *see also McAllister v. Call*, No. 9:10-CV-610 (FJS/CFH), 2014 WL 5475293, at *11 (N.D.N.Y. Oct. 29, 2014) ("A section 1983 claim is not the appropriate forum in which to seek review of a violation of unspecified DOCCS rules, regulations and procedures.") (citation omitted).

Accordingly, Plaintiff's constitutional claims based upon the failure to adhere to DOCCS' directives are dismissed.

### H. Fourteenth Amendment

### 1. Equal Protection

The law related to the Equal Protection Clause was discussed in the December Order and will not be restated herein. *See* Dkt. No. 4 at 15-16. In the December Order, the Court held:

> Here, Plaintiff claims that Rastafarians represent a "minority religious group" and are "viewed as primitive" and subjected to discrimination. Compl. at 6-7. Plaintiff failed to identify any similarly situated inmates who were treated differently based upon their religious beliefs. Indeed, the Complaint lacks any facts supporting this conclusion and thus, fails to state an equal protection claim. *See Lloyd v. City of New York*, 43 F. Supp. 3d 254, 265 (S.D.N.Y. 2014) (finding that the plaintiffs failed to plead an equal protection claim based upon religion because nothing in the complaint suggested that similarly-situated inmates of other faiths were treated more favorably than the plaintiffs, or that the plaintiffs were singled out for discriminatory treatment on account of their religion).

Dkt. No. 4 at 15-16.

### a. Tomandl, Venditti, Delfavero, Graham, WC Doe #1, WC Doe #2, Yard Supervisor Jay Doe, PG James Doe, Sgt. Doe, and WC Doe #3

In the Amended Complaint, Plaintiff asserts the following equal protection claims:

- Tomandl allowed Christian and Muslim SHU inmates who wrote, pre-SHU release letters, to attend their religious services upon release;

- Venditti and Delfavero "added" similarly situated "new arrivals" of Protestant, Catholic, and Muslim faiths to the "Feed-up list of their faith" while Plaintiff's "Brethren" was prevented from delivering the Transfiguration Day sacramental meal;

Case 1:20-cv-01428-LEK-TWD  Document 34  Filed 12/17/21  Page 33 of 70

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

• On December 27, 2015, Graham, WC Doe #1, and Tomandl allowed Protestant and NOGE groups to worship for over one hour and forty five minutes while Plaintiff was "walked in and out of the chapel;"

• On February 14, 2016, Graham, WC Doe #2, and Yard Supervisor Jay Doe allowed only five Rastafari inmates into the chapel at a time while Protestant inmates were allowed in the chapel "en masse;" and

• Similarly situated Protestant and NOGE prisoners were allowed to attend worship and study on December 25, 2016 while PG James Doe, Sgt. Doe, and WC Doe #3 deprived Plaintiff of the same opportunity.

*See* Am. Compl. at 17, 29, 30, 31, 32, 43, 44.

Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court will require a response to the aforementioned equal protection claims from Venditti, Delfavero, Graham, WC Doe #1, WC Doe #2, Yard Supervisor Jay Doe, PG James Doe, Sgt. Doe, and WC Doe #3. *See Scott v. Uhler*, No. 9:16-CV-403 (TJM/CFH), 2018 WL 3130670, at *5 (N.D.N.Y. May 24, 2018) (holding that the plaintiff sufficiently alleged a claim of discrimination in violation of the Equal Protection clause with facts suggesting that similarly-situated inmates were permitted to attend religious services on December 25, 2015 while Muslim inmates intentionally were denied the right to hold and attend services) (citing *Guillory v. Fischer*, No. 9:12-CV-00280 (LEK), 2013 WL 1294626, at *16 (N.D.N.Y. Mar. 7, 2013)) (finding that the plaintiff sufficiently pleaded an equal protection claim based upon the denial of Jewish services on one day because Jewish, Muslim, Catholic and Protestant inmates are similarly situated in that they are all religious groups seeking to utilize prison facilities to hold religious services, and Plaintiff alleges that the Defendants facilitated the use of prison facilities for all of the other religious groups except the Jewish inmates for purely discriminatory reasons). This is not a ruling on the merits and the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment. For the reasons set forth in Part IV(C)(1)(4)(a) *supra*, the equal protection claim against Tomandl is dismissed.

### b. Pitoniak, Vanni, Porter, Annucci, and McCarthy

**\*18** Plaintiff claims that Pitoniak, Vanni, and Porter discriminated and treated the CAU differently than "similarly situated organizations." *See* Am. Compl. at 76-80. Plaintiff also asserts that Annucci and McCarthy failed to protect the CAU "on par with all other similarly situated organizations and individuals" from discrimination and unequal treatment. *See* Am. Compl. at 80-81. As discussed in the December Order, the failure to identify similarly situated individuals who were treated differently is fatal to an equal protection claim. Accordingly for the reasons set forth in the December Order, the equal protection claims against Pitoniak, Vanni, Porter, Annucci, and McCarthy are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Due Process

To successfully state a claim under § 1983 for denial of due process, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields*, 280 F.3d 69, 79–80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351–52 (2d Cir. 1996). "A prisoner's liberty interest is implicated by prison discipline," "only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' ...." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (citations omitted).

### a. Mallozzi

Plaintiff claims that Mallozzi made false statements during the investigation into his grievances in violation of his due process rights. *See* Am. Compl. at 44, 60-61. It is well-established that prison grievance procedures do not create a due-process-protected liberty interest. *See, e.g., Mateo v. Fischer*, 682 F.Supp.2d 423, 431 n. 3 (S.D.N.Y. 2010); *Mastroianni v. Reilly*, 602 F.Supp.2d 425, 437 (E.D.N.Y. 2009); *Torres v. Mazzuca*, 246 F.Supp.2d 334, 342 (S.D.N.Y. 2003). Thus, Mallozzi's failure to properly respond to his grievances did not violate Plaintiff's constitutional rights. *See Mimms v. Carr*, No. 09-CV-5740, 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011) ("It is well-established that prison

Case 1:20-cv-01428-LEK-TWD   Document 34   Filed 12/17/21   Page 34 of 70

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

grievance procedures do not create a due-process-protected liberty interest.") (citing cases).

Accordingly, Plaintiff's due process claims against Mallozzi are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. Pitoniak, Schenk, Vanni, Porter, Silcox, Annucci, and McCarthy

Plaintiff claims that Pitoniak, Schenk, Vanni, Porter, Silcox, Annucci, and McCarthy failed to adhere to Directive #4760, in violation of his due process rights. *See* Am. Compl. at 82. As discussed *supra*, section 1983 claims based on violations of prison rules are subject to dismissal. Thus, to the extent that Plaintiff claims that his due process rights were violated because of a liberty interest created by DOCCS' directives, that claim is dismissed. *See Turner v. Sidorowicz*, No. 12-CV-7048, 2014 WL 641454, at *10 (S.D.N.Y. Feb. 18, 2014) (citing *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) ("[R]egardless of state procedural guarantees, the only process due an inmate is that minimal process guaranteed by the Constitution[.]")).

### c. Kelsey and McCarthy

After the disciplinary hearing, Kelsey found Plaintiff guilty of missing meals and ordered him to pay a $ 5.00 surcharge and $ 10.35 charge for the cost of the meals. *See* Am. Compl. at 49, 51. A "surcharge", without more, is not an atypical hardship. *See Edwards v. Horn*, No. 10 CIV. 6194, 2012 WL 473481, at *9 (S.D.N.Y. Feb. 14, 2012) (holding that a $ 25 fine implicates the requisite liberty interest to state a due process claim). Because Plaintiff has failed to plead that he was subjected to any disciplinary confinement or otherwise deprived a valid liberty interest, his Fourteenth Amendment Due Process claims related to the disciplinary hearing are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure state a claim upon which relief may be granted. *See id.* ("Because of the absence of any protected liberty interest [...] any failures by the hearing officer to conduct a thorough investigation [...] do not support a cause of action for the denial of due process.") (citation omitted).

### I. New York State Law and Constitutional Claims

#### 1. Corrections Law

*19 Plaintiff asserts state law claims, parallel to his free exercise claims, under New York Correction Law §§ 112 and 610. Section 610 guarantees inmates "the free exercise and enjoyment of religious profession and worship" while incarcerated. *See May v. Donneli*, No. 9:06-CV-437 (GLS/RFT), 2009 WL 3049613, at *4 (N.D.N.Y. Sept. 18, 2009). Similarly, under Correction Law § 112, the Commissioner is empowered to promulgate regulations pertaining to religious service and ministrations. *See U. S. ex rel. Washington v. Fay*, 217 F. Supp. 931, 933, n. 1 (S.D.N.Y. 1963). Because the First Amendment free exercise and establishment law claims survive review, the Court shall exercise supplemental jurisdiction over the corresponding state law claims.

Plaintiff also claims that McCarthy and Annucci violated Correction Law § 116, which vests the Commissioner with the broad power to manage the fiscal affairs of correctional facilities, including inmate accounts. *See Nardi v. Le Fevre*, 235 A.D.2d 602, 603 (1997). Having dismissed all constitutional claims for monetary damages against Annucci and McCarthy, in their individual capacity, related to the CAU, the Court declines in its discretion to retain supplemental jurisdiction over Plaintiff's state law claims against McCarthy and Annucci related to the CAU. *See 28 U.S.C. § 1367(c)(3); Doyle v. Suffolk Cty.*, 786 F.2d 523, 525 (2d Cir. 1986) ("With the federal claim failing at the outset of the litigation, the District Judge properly declined to exercise pendent jurisdiction over the state law claims.").

#### 2. Constitutional Claims

Plaintiff contends that Defendants violated Article I, §§ 1,3, 5, 6, 8, 9, 11 of the New York State Constitution. In light of the dismissal of Plaintiff's federal claims for deliberate indifference, due process, freedom of speech, and freedom to petition, the Court declines to exercise supplemental jurisdiction over the claims related to violations of Article I, Sections 5, 6, 8, and 9 of the New York State Constitution. *See 28 U.S.C. § 1367(c)(3); Valencia v. Sung M. Lee*, 316 F.3d 299, 306 (2d Cir. 2003).

With respect to Plaintiff's claims pursuant to Article I, §§ 1, 3, and 11, while New York recognizes a private cause

Case 1:20-cv-01428-LEK-TWD   Document 34   Filed 12/17/21   Page 35 of 70

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

of action for violations of the New York State Constitution, *Brown v. State*, 89 N.Y.2d 172, 192, 652 N.Y.S.2d 223, 235 (1996), that cause of action is only available, however, "where the plaintiffs have no alternative remedies that would protect their interests." *Vilkhu v. City of New York*, No. 06-CV-2095, 2008 WL 1991099, at *8 (E.D.N.Y. May 5, 2008) (citations omitted). Thus, because Plaintiff has viable First and Fourteenth Amendment Equal Protection claims under section 1983, Plaintiff's state law claims are dismissed because there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983. *Flores v. City of Mount Vernon*, 41 F.Supp.2d 439, 446-47 (S.D.N.Y. 1999).

**J. Prospective Injunctive Relief**

In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution. Under this doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. New York State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities); *see also Inside Connect, Inc. v. Fischer*, No. 13-CV-1138, 2014 WL 2933221, at *7 (S.D.N.Y. June 30, 2014) (dismissing the plaintiff's requests for declaratory judgment related to the defendants' policy of refusing delivery of Inmate News because the defendants were no longer refusing to deliver Inmate News) (citing *Green v. Mansour*, 474 U.S. 64, 68 (1985)). "[I]n order to warrant the court's consideration, the plaintiff must be seeking prospective relief from an 'ongoing violation of federal law' which affects him directly, as opposed to others." *Ruggiero v. Brian Fischer, Comm'r, No.* 15-CV-00962, 2017 WL 6999859, at *2 (W.D.N.Y. Aug. 25, 2017), *report and recommendation adopted sub nom.*, 2018 WL 488949 (W.D.N.Y. Jan. 20, 2018) (citations omitted).

**\*20** In the Amended Complaint, Plaintiff seeks an order directing Annucci and McKoy to provide at least one hour of worship and study. *See* Am. Compl. at 37. Because the Court has directed a response to Plaintiff's claim that his First Amendment right to the free exercise of his religion was violated on December 27, 2015 because he was afforded only five minutes to worship in the chapel, the corresponding claim for prospective injunctive relief survives as well.

A different conclusion is reached however, with respect to the remaining requests for prospective injunctive relief. Plaintiff also seeks an order preventing Auburn's administration from allowing "general callouts" of all registered Rastafaris. *See* Am. Compl. at 37-38. However, Plaintiff fails to explain how this injunction is necessary to prevent irreparable injury to his constitutional rights as alleged in the Amended Complaint. Because this claim for injunctive relief is unrelated to the constitutional claims set forth in the Amended Complaint, it is dismissed. *See Betlewicz v. Div. of New York State Police*, No. 1:12-CV-1158 (GLS/RFT), 2013 WL 2181248, at *3 (N.D.N.Y. May 20, 2013).

Finally, with respect to Plaintiff's request for an order preventing Auburn's administration from utilizing the "penalty box" for callouts in periods of inclement weather, as discussed *supra*, Plaintiff's Eighth Amendment claim related to the "penalty box," was dismissed. Accordingly, the corresponding claim for injunctive relief is also dismissed. *See Spiteri v. Russo*, No. 12-CV-2780, 2013 WL 4806960, at *44 (E.D.N.Y. Sept. 7, 2013), *aff'd sub nom. Spiteri v. Camacho*, 622 Fed. App'x 9 (2d Cir. 2015); *see also Rossi v. Fischer*, No. 13-CV-3167, 2015 WL 769551, at *15 (S.D.N.Y. Feb. 24, 2015).

**K. Preliminary Injunctive Relief**

In the Amended Complaint, Plaintiff also seeks preliminary injunctive relief. Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). "The district court has wide discretion in determining whether to grant a preliminary injunction." *Id.* at 511. To obtain preliminary injunctive relief, a plaintiff must demonstrate irreparable harm and either a substantial likelihood of success on the merits of the claim, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *Citigroup Global Markets, Inc. V. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). However, when the moving party seeks a "mandatory preliminary injunction that alters the status quo by commanding a positive act," the burden is even higher. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011). "A mandatory preliminary injunction

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

Case 1:20-cv-01428-LEK-TWD   Document 34   Filed 12/17/21   Page 36 of 70

2019 WL 2352981

'should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.' " *Id.* (quoting *Citigroup*, 598 F.3d at 35 n.4).

Generally an alleged violation of a constitutional right creates a presumption of irreparable harm. *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996). However, speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983). Rather, a plaintiff seeking to satisfy the irreparable harm requirement must demonstrate that "absent a preliminary injunction [he or she] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Bisnews AFE (Thailand) Ltd. v. Aspen Research Group Ltd.*, 437 Fed. App'x 57, 58 (2d Cir. 2011) (quoting *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)); *Garcia v. Arevalo*, No. 93-CV-8147, 1994 WL 383238, at *2 (S.D.N.Y. June 27, 1994) ("It is well settled that an allegation of the mere possibility of irreparable harm is insufficient to justify the drastic remedy of preliminary injunction.... A party who seeks the extraordinary remedy of a preliminary injunction must show the alleged irreparable harm to be imminent, not remote or speculative, and the alleged injury to constitute one that is incapable of being fully remedied by monetary damages." (citations omitted)). A finding of irreparable harm cannot be based solely on past conduct. *Haden v. Hellinger*, No. 9:14-CV-0318 (GLS), 2016 WL 589703 at *1 (N.D.N.Y. Feb. 11, 2016).

**\*21** Furthermore, the party seeking preliminary injunctive relief must establish a relationship between the alleged irreparable harm claimed and the conduct giving rise to the complaint. *See Candelaria v. Baker*, No. 00-CV-0912, 2006 WL 618576, at *3 (W.D.N.Y. Mar. 10, 2006) (citations omitted*); see also Allen v. Brown*, No. 96-CV-1599 (RSP/GJD), 1998 WL 214418, at *4 (N.D.N.Y. Apr. 28, 1998) (denying request for injunctive relief where allegations in application for such relief were unrelated to claims asserted in the complaint and thus plaintiff "failed to establish either a likelihood of succeeding on the merits of his underlying claim, or sufficiently serious questions going to the merits of such claim and a balance of hardships tipping decidedly toward" the plaintiff). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825,

846-47 (1994)) (other citations omitted). Here, the injunction sought is mandatory, and thus the Court will use the "clear and substantial" showing of a likelihood of success standard.

Plaintiff requests the following preliminary injunctive relief: (1) an order directing Annucci to immediately reinstate DOCCS' policy mandating that food be prepared by a faith group member; (2) an order precluding Annucci from using disciplinary measures to "force" Plaintiff to consume food prepared or served by homosexuals; (3) an order directing Annucci to reinstate the policy requiring Rastafari "brethren" to serve as clerks to prepare callouts, etc.; (4) an order enjoining Annucci, McKoy, McCarthy, and Schenk from posting the Rastafari "Family Day Event" on the commissary buy sheet; (5) an order suspending all aspects of Annucci's and Mallozzi's IGP; (6) an order directing Annucci to reinstate the CAU; (7) an order preventing Annucci from collecting funds from the CAU pending a full and complete forensic audit; (8) an order preventing Annucci from dispersing the CAU funds; and (9) if Plaintiff should be transferred during the pendency of this lawsuit, an Order directing Annucci to transfer eight property bags containing Plaintiff's research, exhibits, books, and legal material with Plaintiff. *See* Am. Compl. at 61-64, 87-88.

The Court has thoroughly reviewed the Amended Complaint and requests for preliminary injunctive relief and finds that the requests are unrelated to the underlying claims that have survived this Court's review. Further, "the past allegations of misconduct stated in Plaintiff's Amended complaint, standing alone, are insufficient to support a finding of irreparable harm." *Ross v. Smith*, No. 9:18-CV-0039 (GLS/TWD), 2018 WL 5816301, at *2 (N.D.N.Y. Nov. 7, 2018). Thus, Plaintiff has not made any showing that he will suffer an injury that is neither remote nor speculative should the relief not be granted. Upon review, the Court finds that Plaintiff has failed to meet the heavy burden for a mandatory preliminary injunction. As a result, Plaintiff's requests for preliminary injunctive relief are dismissed.

**L. Doe Defendants**
Because Plaintiff asserts First and Fourteenth Amendment claims against corrections officers and officials whose names are not known to Plaintiff, service of process cannot be effected on them unless and until these individuals have been identified by name. If Plaintiff wishes to pursue his claims against WC John Doe #1, WC John Doe #2, Yard Supervisor Jay Doe, PG John Doe, PG James Doe, Sgt. Doe and/or WC John Doe #3, he must take reasonable steps to

Case 1:20-cv-01428-LEK-TWD Document 34 Filed 12/17/21 Page 37 of 70

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

ascertain through discovery the identity of those individuals. Upon learning the identities of the unnamed defendants, Plaintiff must amend the operative complaint to properly name those individuals as parties. If Plaintiff fails to ascertain the identity of the John Doe defendants so as to permit timely service of process, all claims against those individuals will be dismissed. [16]

[16] Rule 4 of the Federal Rules of Civil Procedure require that a party be served within 90 days of issuance of the summons, absent a court order extending that period. Fed. R. Civ. P. 4(m). The Court's local rules shorten the time for service from 90 days under Rule 4(m) to 60 days. N.D.N.Y. L.R. 4.1(b).

## V. CONCLUSION

**\*22 WHEREFORE**, it is hereby

**ORDERED**, that the Amended Complaint (Dkt. No. 15), and all exhibits annexed (Dkt. No. 1 at 15-28) thereto is accepted for filing and is deemed the operative pleading; and it is further

**ORDERED** that the Clerk of the Court shall amend the docket to add McKoy, Morris, Guenette, Stewart, Rose, Bellamy, Mallozzi, McCarthy, Schenk, Vanni, Bertonica, Kelsey, WC John Doe #1, WC John Doe #2, WC John Doe #3, Tomandl, Pino, PG John Doe, Porten, Sgt. Doe, Yard Supervisor Jay Doe, PG James Doe, Porter, Pitoniak, and Silcox as defendants herein; and it is further

**ORDERED** that the following claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) section 1983 claims for monetary damages against defendants in their official capacity; (2) claims against Rose, Stewart, and Pino (3) First Amendment retaliation claims against Graham and Annucci; (4) First Amendment claims related to freedom of speech and to petition; (5) First Amendment claims related to the free exercise of religious freedom against Tomandl, PG James Doe, Sgt. Doe, WC Doe #3, Kelsey, and McCarthy; (6) Fourth Amendment claims; (7) Eighth Amendment claims; (8) Ninth Amendment claims; (9) constitutional claims related to violations of DOCCS' directives; (10) Fourteenth Amendment equal protection claims against Tomandl, Pitoniak, Vanni, Porter, Annucci, and McCarthy; (11) Fourteenth Amendment due process claims;

(12) state law claims based upon Corrections Law § 116; and (13) New York State constitutional claims; it is further

**ORDERED** that the following claims survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response: (1) First Amendment retaliation claims against Bertonica, Pitoniak, Vanni, Porter, Schenk, and Silcox; (2) First Amendment claims related to the free exercise of religious freedom against Graham, Venditti, Delfavero, WC John Doe #1, Porten, Bertonica, Annucci, McKoy, Morris, and Guenette; (3) First Amendment Establishment Clause claims against Annucci, McKoy, Morris, Guenette, Graham, and PG John Doe; (4) Fourteenth Amendment equal protection claims against Venditti, Delfavero, Graham, WC Doe #1, WC Doe #2, Yard Supervisor Jay Doe, PG James Doe, Sgt. Doe, WC John Doe #3; and (5) corresponding state law claims; and it is further

**ORDERED** that DOCCS, Stewart, Rose, Bellamy, Mallozzi, McCarthy, Kelsey, Tomandl, and Pino are **DISMISSED** as defendants herein; and it is further

**ORDERED**, that upon receipt from Plaintiff of the documents required for service of process, the Clerk shall issue a summonses and forward them, along with copies of the Amended Complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the summonses and Amended Complaint to the Office of the Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED**, that a response to the Amended Complaint be filed by the remaining defendants, or his counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**\*23 ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this

2019 WL 2352981

action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED** that Plaintiff shall take reasonable steps through discovery to ascertain the identity of Defendants WC John Doe #1, WC Doe #2, Yard Supervisor Jay Doe, PG John Doe, PG James Doe, Sgt. Doe and WC John Doe #3. **Plaintiff's failure to timely serve those Defendants will result in**

**dismissal** of the claims asserted against them and termination of those defendants from the action; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2352981

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:20-cv-01428-LEK-TWD Document 34 Filed 12/17/21 Page 39 of 70

**Sonnick v. Budlong, Not Reported in Fed. Supp. (2020)**

2020 WL 2999109

2020 WL 2999109
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Vincent SONNICK, Plaintiff,

v.

Christopher G. BUDLONG, NYS Trooper, in his
official capacity; Officer Macormick, OPD, in his
official capacity; Nelson T. Dodge, Judge Verona,
in his individual and official capacities; New York
State Police, Troop D; Trooper Horton; City of
Oneida; and Onondaga County, Defendants.

5:20-CV-0410 (TJM/ML)
|
Signed 06/04/2020

**Attorneys and Law Firms**

VINCENT SONNICK, Plaintiff, Pro Se, 205 North Street,
#B, Oneida, New York 13421.

## ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* complaint together with
an application to proceed *in forma pauperis* filed by Vincent
Sonnick ("Plaintiff") to the Court for review. (Dkt. Nos. 1
and 2.) For the reasons discussed below, I grant Plaintiff's *in
forma pauperis* application (Dkt. No. 2) and recommend that
Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety,
in part with leave to amend, and in part without leave to
amend.

## I. BACKGROUND

Construed as liberally [1] as possible, Plaintiff's Complaint
alleges that his civil rights were violated by Defendants
Christopher G. Budlong, Officer Macormick, Nelson T.
Dodge, the New York State Police Troop D, Trooper
Horton, [2] Onondaga County, [3] and the City of Oneida [4]
(collectively "Defendants"). (*See generally* Dkt. No. 1.).
More specifically, Plaintiff alleges that at some point in time,
Defendant Budlong "held" him at New York State Police
Troop D headquarters for two-and-one-half hours, during
which time Plaintiff was not read his rights or permitted to

make a phone call. (*Id.*) Plaintiff alleges that he was charged
with disorderly conduct for events that took place on his own
property. (*Id.*)

[1]   The court must interpret *pro se* complaints to
      raise the strongest arguments they suggest. *Soto v.
      Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting
      *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.
      1994)).

[2]   The Clerk of the Court is directed to amend
      the docket sheet to add "Trooper Horton" as a
      defendant in this matter, as alleged in Plaintiff's
      Complaint. (Dkt. No. 1 at 1.)

[3]   The Clerk of the Court is directed to amend the
      docket sheet to add "Onondaga County" as a
      defendant in this matter, as alleged in Plaintiff's
      Complaint. (Dkt. No. 1 at 1.) Although the
      Complaint states it is against the "Onondaga
      Sher[ ]iff," (*id.*) "[u]nder New York law, a
      department of a municipal entity is merely a
      subdivision of the municipality and has no separate
      legal existence. Therefore, municipal departments
      like the Department of Social Services are not
      amenable to suit and no claims lie directly
      against the Department." *Hoisington v. Co. of
      Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y.
      1999) (citations omitted). As a result, the Court
      exercises its authority to *sua sponte* substitute
      Onondaga County in place of the Onondaga
      County Sheriff. *See, e.g., Gonzalvo v. State of N.Y.*,
      11-CV-0909, 2013 WL 4008881, at \*2 (N.D.N.Y.
      Aug. 2, 2013) (Mordue, J., *adopting report and
      recommendation by* Peebles, M.J.) (approving the
      *sua sponte* substitution of the State of New York
      as a defendant); *Zuk v. Gonzalez*, 07-CV-0732,
      2007 WL 2163186, at \*2 (N.D.N.Y. July 26, 2007)
      (Scullin, J.) ("[T]o the extent that Plaintiff has
      named the individual Defendants in their official
      capacities, he has in essence named Onondaga
      County ... as a Defendant. Construing Plaintiff's
      complaint liberally in light of his *pro se* status,
      and in the interest of judicial economy, the Court
      will *sua sponte* substitute Onondaga County as
      the sole Defendant in place of the individually
      named defendants." (citations omitted)); *Dockery
      v. Tucker*, 97-CV-3584, 2006 WL 5893295, at
      \*7 (E.D.N.Y. Sept. 6, 2006) (adding the United

Sonnick v. Budlong, Not Reported in Fed. Supp. (2020)

2020 WL 2999109

States as a defendant, *sua sponte*, in a Federal Tort Claims Act claim brought by a *pro se* plaintiff); *Ciancio v. Gorski*, 98-CV-0714, [1999 WL 222603, at *1 (W.D.N.Y. Apr. 14, 1999)](substituting, *sua sponte* and "in the interest of eliminating undue complication without affecting the substantial rights of the parties," the County of Erie as a defendant where it was unclear that the plaintiff could sue an individual in his official capacity under Title VII but well established that the county was a proper defendant).

4    The Clerk of the Court is directed to amend the docket sheet to add the "City of Oneida" as a defendant in this matter, as alleged in Plaintiff's Complaint. (Dkt. No. 1 at 1.)

**\*2** In addition, Plaintiff alleges that from December 18, 2013, until the present time, he has been "gang stalked" by the Onondaga County Sheriff's Department. (*Id.*)

Plaintiff alleges that at some point in time, he was brought to jail for a two-week period, during which he was not read his charges for three days, then he was moved to another unit of the Oneida County Justice Center, where he was held for another three days before being brought before a judge. (*Id.*) Plaintiff alleges that he was "extorted and harassed and stalked by NYS Troopers, ordered to pay after they basically kidnapped [him]." (*Id.*)

Plaintiff alleges that at some point in time, he sought, and was denied services at Madison County Social Services. (*Id.*) Plaintiff alleges that he has severe anxiety "due to this event" and "[t]he named above have conspired to ... use ... technology against [his] body." (*Id.*)

Plaintiff appears to assert the following eight causes of action: (1) violation of his freedom of speech pursuant to the First Amendment and [42 U.S.C. § 1983](); (2) false arrest pursuant to the Fourth Amendment and [42 U.S.C. § 1983](); (3) violations pursuant to the Racketeering Influenced and Corrupt Organizations ("RICO") Act, [18 U.S.C. §§ 1961]()-[1968](); (4) stalking pursuant to New York common law; (5) harassment pursuant to New York common law; (6) trespassing pursuant to New York common law; (7) defamation pursuant to New York common law; and (8) negligence pursuant to New York common law. (*Id.*)

For a more complete statement of Plaintiff's claims, refer to the Complaint. (Dkt. No. 1.)

Plaintiff also filed an application for leave to proceed *in forma pauperis*. (Dkt. No. 2.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. [28 U.S.C. § 1914(a)](). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. [28 U.S.C. § 1915(a)(1)]().[5] After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[6]

5    The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* [28 U.S.C. § 1915(a)(1)]() (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *[Hayes v. United States, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006)]()*; *[Fridman v. City of N.Y., 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002)]()*.

6    Plaintiff is reminded that, although the application to proceed *in forma pauperis* has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

## III. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." [28 U.S.C. § 1915(e)(2)]().

**\*3** In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." [Fed. R. Civ. P. 8(a)(2)](). The requirement that a

Sonnick v. Budlong, Not Reported in Fed. Supp. (2020)

2020 WL 2999109

Case 1:20-cv-01428-LEK-TWD   Document 34   Filed 12/17/21   Page 41 of 70

plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is

proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A. Eleventh Amendment Immunity

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). This absolute immunity which states enjoy under the Eleventh Amendment also extends to state agencies. *Richards v. State of New York Appellate Division, Second Dep't*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) (citing *Pugh*, 438 U.S. at 782; *Cory v. White*, 457 U.S. 85, 89-91 (1982)). As a result, I recommend dismissal of all claims brought by Plaintiff against the New York State Police based on the doctrine of absolute immunity pursuant to the Eleventh Amendment.

**\*4** Moreover, " 'claims against a government employee in his official capacity are treated as a claim against the municipality,' and, thus, cannot stand under the Eleventh Amendment." *Jackson v. Gunsalus*, 16-CV-0647, 2016 WL 4004612, at *2 (N.D.N.Y. June 24, 2016) (Dancks, M.J.) (quoting *Hines v. City of Albany*, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008) (McCurn, J.)), *report and recommendation adopted*, 2016 WL 3983635 (July 25, 2016) (Sharpe, J.); *see Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985)) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

Here, Plaintiff's claims against Defendants Budlong and Macormick, are solely in their official capacities (Dkt. No. 1 at 2-3), and thus, should be dismissed because these claims are, in reality, damage claims against the governmental entities, which are immune from suit. *See Jackson*, 2016 WL 4004612, at *2 (dismissing claims against officers of the Syracuse Police Department in their official capacity based

Case 1:20-cv-01428-LEK-TWD   Document 34   Filed 12/17/21   Page 42 of 70

Sonnick v. Budlong, Not Reported in Fed. Supp. (2020)
2020 WL 2999109

on Eleventh Amendment immunity). In addition, Plaintiff's claims against Defendant Dodge in his official capacity must also be dismissed for the same reason.

## B. Absolute Judicial Immunity

Plaintiff's Complaint appears to assert claims against Nelson T. Dodge in his individual and official capacities, for actions he allegedly took in his position as judge of the Town of Verona. It is well settled that "officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." *Montero v. Travis,* 171 F.3d 757, 760 (2d Cir. 1999); *see also Mireles v. Waco,* 502 U.S. 9, 9-10 (1991) (citations omitted) ("A long line of this Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages. Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.' "); *Mahapatra v. Comstock,* 97-CV-7129, 1998 WL 88054, at *1 (2d Cir. Feb. 26, 1998) ("[T]he district court properly dismissed the claims for damages based on absolute immunity. Judges are shielded from liability for civil damages for judicial acts performed in their judicial capacities."); *McKnight v. Middleton,* 699 F. Supp. 2d 507, 523 (E.D.N.Y. 2010) ("It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions."). This immunity applies to state court judges who are sued in federal court. *Pizzolato v. Baer,* 551 F. Supp. 355, 356 (S.D.N.Y. 1982), *aff'd sub nom. Pizzolato v. City of New York,* 742 F.2d 1430 (2d Cir. 1983). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 357 (1978).

Plaintiff's allegations regarding Defendant Nelson T. Dodge appear to relate to actions Defendant Dodge took as Judge of Verona, perhaps while presiding over Plaintiff's criminal proceedings. (*See generally* Dkt. No. 1.) The Complaint is devoid of facts plausibly suggesting that Defendant Dodge took any action as an individual, and therefore also fails to allege that he acted in the clear absence of all jurisdiction. As a result, I recommend that the claims against Defendant Dodge be dismissed in their entirety based on the doctrine of absolute judicial immunity.

## C. Claims Pursuant to 42 U.S.C. § 1983

### 1. Municipal Liability

**\*5** In order to set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven,* 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell,* 436 U.S. at 690-91); *see also Vippolis v. Vill. of Haverstraw,* 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer. Second, the plaintiff must establish a causal connection–an 'affirmative link'–between the policy and the deprivation of his constitutional rights.") (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 824 n.8 (1985)). Indeed, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it "may not be held liable on a theory of respondeat superior." *Jeffes v. Barnes,* 208 F.3d 49, 56 (2d Cir. 2000).

An "official policy or custom" can be shown in several ways: "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees." *Dorsett-Felicelli, Inc. v. Cnty. of Clinton,* 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (Kahn, J.) (internal citations omitted).

Upon review, Plaintiff fails to identify or allege any facts showing the existence of an official policy or custom of the City of Oneida or Onondaga County that resulted in the deprivation of his constitutional rights. The Complaint fails to mention the City of Oneida or any of its employees except to list the City of Oneida (and Defendant Macormick) in the caption of the Complaint. (*See generally* Dkt. No. 1.) The listing of the City of Oneida in the caption falls far short of alleging municipal liability, "without supporting factual allegations of, among other things, a policy or

Sonnick v. Budlong, Not Reported in Fed. Supp. (2020)

2020 WL 2999109

custom pursuant to which the alleged action was undertaken, [Plaintiff] fails to state a claim against those municipalities that is plausible on its face." *Gray-Davis v. New York*, 14-CV-1490, 2015 WL 2120518, at *6 (N.D.N.Y. May 5, 2015) (Suddaby, J.); *see Hawthorne v. City of Albany*, 17-CV-0716, 2017 WL 6520774, at *5 (Suddaby, C.J.) (N.D.N.Y. Nov. 14, 2017) (same); *see also Hall v. Smith*, 170 F. App'x 105, 108 (11th Cir. 2006) (affirming dismissal of § 1983 claim against a municipality where plaintiff alleged no factual support for his conclusory statement that the municipality had a policy or custom of grossly inadequate supervision and training of its employees).

With respect to the Onondaga County, the Complaint alleges, "Dec. 18[,] 2013-2020 Gang stalked by Onondaga Co. Sher[ ]iff Dept to present date." (Dkt. No. 1 at 4.) [7] This conclusory allegation, without more, is insufficient to plausibly allege a policy or custom pursuant to which the alleged action was undertaken. The Court also notes that "[g]ang stalking, ... is not a recognized cause of action, and thus [Plaintiff's] claim to that effect [should be] dismissed." *Toro v. City of New York*, 12-CV-4093, 2015 WL 1014044, at *4 (E.D.N.Y. Mar. 6, 2015). [8]

[7]  The statute of limitations for a § 1983 action accruing in New York is three years. *See Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason to know the injury which is the basis of his action." *Covington v. New York*, 171 F.3d 117, 121 (2d Cir. 1999) (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)); *see Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (per curiam) (citing *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)) (a claim for equal protection accrues "when the plaintiff knew or should have known of the disparate treatment."). Although the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on 28 U.S.C. § 1915(e)(2)(B) review. *See Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (holding that a complaint can be dismissed on initial review based on a defense that appears on the face of the complaint); *Syfert v. City of Rome*, 17-CV-0578,

2018 WL 3121611, at *3-5 (N.D.N.Y. Feb. 12, 2018) (Dancks, M.J.) (dismissing all claims barred by the statute of limitations on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B)); *Syfert v. City of Rome*, 17-CV-0578, 2017 WL 3405521, at *8-10 (Dancks, M.J.) (N.D.N.Y. Aug. 7, 2017) (same); *Syfert v. City of Rome*, 15-CV-1149, 2015 WL 6819168, at *7-8 (N.D.N.Y. 2015) (Baxter, M.J.) (same).

Plaintiff commenced this action on April 3, 2020. (Dkt. No. 1.) Three years prior to the filing date is April 3, 2017. Any causes of action in Plaintiff's Complaint that accrued before April 3, 2017, are likely barred by the statute of limitations.

[8]  Moreover, federal stalking is a crime pursuant to 18 U.S.C. § 2261A, and does not provide for a private cause of action. *Robinson v. Bloomberg*, 12-CV-1858, 2012 WL 2991912, at *2 (E.D.N.Y. July 20, 2012); *see Cain v. Christine Valmy Int'l Sch. of Esthetics, Skin Care, and Makeup*, 216 F. Supp. 3d 328, 334 (S.D.N.Y. Oct. 20, 2016) (holding that claims pursuant to 18 U.S.C. § 2261A, a federal stalking statute, fails inasmuch as it is a criminal statute, which supplies no private right of action). New York also does not recognize a claim of "stalking." *See Di Pompo v. Ruggiero*, 17-CV-8077, 2018 WL 5045339, at *4 (S.D.N.Y. Oct. 17, 2018) ("Plaintiffs were put on notice that New York does not recognize a claim of 'criminal stalking.' "); *see also Masudi v. Maximo Couture Inc.*, 39 Misc. 3d 1202(A), at *2 (N.Y. Sup. Ct. Queens Cnty. Mar. 27, 2013) (holding that a claim for stalking pursuant to N.Y. Penal Law § 120.40, is not adequately supported by the facts, "even assuming that a civil claim can be based on this penal statute.").

**\*6** Even if Plaintiff's claims could be construed as plausibly alleging a custom or policy, Plaintiff's claims are so vague and incomprehensible that he falls far short of plausibly alleging an injury to a constitutionally-protected right. *Hillary v. St. Lawrence Cnty.*, 17-CV-0659, 2019 WL 977876, at *7 (N.D.N.Y. Feb. 28, 2019) (Sharpe, J.) ("Generally, in addition to demonstrating an injury to a constitutionally-protected right, a plaintiff bringing a § 1983 action against a municipality is required to identify a custom or policy of the municipal defendant and establish a causal connection between the alleged injury and that custom or policy."); *see also Meehan v. Kenville*, 555 F. App'x 116, 117 (2d Cir.

Case 1:20-cv-01428-LEK-TWD Document 34 Filed 12/17/21 Page 44 of 70

Sonnick v. Budlong, Not Reported in Fed. Supp. (2020)

2020 WL 2999109

2014) (summary order) (claim against municipal entity was properly dismissed under 28 U.S.C. § 1915 for "failure to plausibly allege that any constitutional violation resulted from a custom, policy or practice of the municipality"); *Irvine v. City of Syracuse*, 14-CV-1565, 2015 WL 2401722, at *6-7 (N.D.N.Y. May 19, 2015) (McAvoy, J.) (dismissing *Monell* claim pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim); *Santagata v. City of New York*, 17-CV-3053, 2017 WL 2963453, at *2 (E.D.N.Y. July 11, 2017) (same).

As a result, I recommend that Plaintiff's claims against the City of Oneida and Onondaga County be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B).

### 2. Personal Involvement

The Complaint is not clear whether it is against Defendant Horton in his individual capacity, official capacity, or both. (*See generally* Dkt. No. 1.) To the extent that it asserts claims against Defendant Horton in his official capacity, those claims should be dismissed based on the doctrine of absolute immunity pursuant to the Eleventh Amendment for the reasons set forth above in Part IV.A. of this Order and Report-Recommendation. To the extent that Plaintiff asserts claims against Defendant Horton in his individual capacity, those claims should also be dismissed for failure to state a claim.

"To state a valid claim under § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). Thus, § 1983 does not create any independent substantive right, but rather "provides a civil claim for damages" to "redress ... the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). As the Supreme Court has noted, a defendant may only be held accountable for his actions under section 1983. *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable

unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.*, 91-CV-8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994).

The Complaint is devoid of allegations that Defendant Horton took any action and instead includes a series of conclusory, vague allegations regarding actions taken by unknown individuals during unknown time periods. [9] (*See generally* Dkt. No. 1.) Plaintiff's Complaint fails to plausibly allege facts suggesting a claim pursuant to 42 U.S.C. § 1983 against Defendant Horton. [10]

[9]     Any causes of action in Plaintiff's Complaint that accrued before April 3, 2017, are likely barred by the statute of limitations. *See, supra*, note 7.

[10]    The Court notes that, in the alternative, Plaintiff also fails to allege facts plausibly suggesting the personal involvement of Defendants Dodge and Macormick.

**\*7** As a result, I recommend that Plaintiff's claims against Defendant Horton be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B).

### D. Claims Pursuant to RICO

Plaintiff cites the "R.i.C.O act" as a basis for liability. (Dkt. No. 1 at 3.)

"To sustain a private cause of action under RICO, a plaintiff must allege: '(1) the defendant's violation of 18 U.S.C. § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation." *EIG Energy Fund XIV, L.P. v. Keppel Offshore & Marine Ltd.*, 18-CV-1047, 2020 WL 2319127, at *6 (S.D.N.Y. May 11, 2020) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283 (2d Cir. 2006) (internal quotation marks omitted); *see also* 18 U.S.C. § 1964(c) (providing a cause of action for "[a]ny person injured in his business or property by reason of a violation" of Section 1962)).

A substantive violation of the RICO statute occurs when "any person employed by or associated with any enterprise

Case 1:20-cv-01428-LEK-TWD   Document 34   Filed 12/17/21   Page 45 of 70

Sonnick v. Budlong, Not Reported in Fed. Supp. (2020)
2020 WL 2999109

engaged in, or the activities of which affect, interstate or
foreign commerce, ... conduct[s] or participate[s], directly or
indirectly, in the conduct of such enterprise's affairs through
a pattern of racketeering activity...." 18 U.S.C. § 1962(c).
Accordingly, to establish a substantive RICO violation, a
plaintiff must allege: "(1) that the defendant (2) through the
commission of two or more acts (3) constituting a 'pattern' (4)
of 'racketeering activity' (5) directly or indirectly invests
in, or maintains an interest in, or participates in (6) an
'enterprise' (7) the activities of which affect interstate or
foreign commerce," in addition to injury and causation. *Moss
v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983).

"Racketeering activity" is defined as certain acts indictable
under Federal Law, including mail fraud, 18 U.S.C. § 1341,
and violations of the Hobbs Act, 18 U.S.C. § 1951. *Mathon v.
Feldstein*, 303 F. Supp. 2d 317, 322 (E.D.N.Y. 2004) (citing
18 U.S.C. § 1961(1)(B)). These predicate acts must be crimes
under state or federal law. *Mathon v. Feldstein*, 303 F. Supp.
2d at 322 (citing *United States v. Angelilli*, 660 F.2d 23 (2d
Cir. 1981), *cert. denied*, 455 U.S. 910, *rehearing denied*, 456
U.S. 939 (1982); *Mathon v. Marine Midland Bank, N.A.*, 875
F. Supp. 986, 995 (E.D.N.Y. 1995)).

To establish a pattern of racketeering activity, "a plaintiff
must plead at least two predicate acts, show that the acts
are related and that they amount to, or pose a threat
of, continuing criminal activity." *H.J. Inc. v. Northwestern
Bell and Telephone Co.*, 492 U.S. 229, 239 (1989); 18
U.S.C. § 1961(5) (A "pattern" requires at least two acts of
"racketeering activity" occurring within ten years of each
other.); *United States v. Alkins*, 925 F.2d 541, 551 (2d Cir.
1991) (predicate acts must be related and amount to or pose a
threat of continued criminal activity).

**1. Municipal Liability**

Some district courts in this circuit "have held that
municipalities 'cannot be liable under *respondeat superior*
for a violation of RICO that is predicated upon [the] acts' of
individual 'municipal agents' acting with 'criminal intent,' at
least in part because those courts determined that a municipal
entity is incapable of forming the criminal intent necessary to
support the alleged predicate offenses." *Cornetta v. Town of
Highlands*, 18-CV-12070, 2020 WL 363042, at *6 (S.D.N.Y.
Jan. 22, 2020) (quoting *Nu-Life Constr. Corp. v. Bd. of Educ.
of City of New York*, 779 F. Supp. 248, 251 (E.D.N.Y. 1991)).
However, a Second Circuit decision recently called that line

of cases into question, at least with respect to situations where
the plaintiff seeks prospective injunctive relief. *Gingras v.
Think Finance, Inc.*, 922 F.3d 112, 125 (2d Cir. 2019)
(vacating rule that government entities, and their officers
sued in their official capacities for prospective injunctive
relief, cannot ordinarily be sued under RICO but holding that
"concern for the inappropriateness of saddling the taxpayers
with the financial burden of punitive damages imposed
on a government entity" especially "in light of RICO's
treble damages provisions" would offend "public policy.").
"Thus, the Second Circuit has not necessarily disavowed the
line of cases dismissing RICO claims for *damages* against
municipalities." *Cornetta*, 2020 WL 363042, at *6 (citing
*Gingras*, 922 F.3d at 125) (emphasis in original).

**\*8** Here, Plaintiff is seeking solely monetary damages.
(Dkt. No. 1 at 5.) I find that Plaintiff's RICO claim against
Defendants City of Oneida and Onondaga County offends
public policy and should be dismissed. In addition, for the
reasons set forth below, Plaintiff failed to plausibly allege that
any Defendant engaged in racketeering activity or that two or
more acts occurred establishing a pattern.

As a result, I recommend dismissal of Plaintiff's RICO claims
against Defendants City of Oneida and County of Onondaga.

**2. Racketeering Activity**

While the Complaint lists "extortion" and "mail fraud,"
Plaintiff fails to allege facts plausibly suggesting these
predicate acts.

Claims of mail fraud must comply with Fed. R. Civ. P.
9(b). This rule provides that "[i]n all averments of fraud ...
the circumstances constituting fraud ... shall be stated with
particularity. Malice, intent, knowledge, and other conditions
of mind of a person may be averred generally." When the
predicate acts of a civil RICO claim are grounded in fraud,
the concerns associated with pleading fraud with particularity
take on even greater importance. *Mathon v. Feldstein*, 303
F. Supp. 2d at 322-23 (citing *Plount v. Amer. Home Assur.
Co.*, 668 F. Supp. 204, 206 (S.D.N.Y. 1987)). Accordingly, a
claim of mail fraud must specify the content, date and place of
any alleged misrepresentation and the identity of the persons
making them. *Wexner v. First Manhattan Co.*, 902 F.2d 169,
172-73 (2d Cir. 1990).

Case 1:20-cv-01428-LEK-TWD    Document 34    Filed 12/17/21    Page 46 of 70

Sonnick v. Budlong, Not Reported in Fed. Supp. (2020)
2020 WL 2999109

The Complaint is devoid of allegations that mail was used, or that anyone acted with intent to defraud him. (*See generally* Dkt. No. 1.) As a result, the Complaint falls far short of satisfying the heightened pleading requirement set forth in Fed. R. Civ. P. 9(b), which requires that the Complaint set forth "the contents of the items mailed and specify how each of these items was false and misleading." *Official Publications, Inc. v. Kable News Co.*, 692 F. Supp. 239, 245 (S.D.N.Y. 1998) (citing *Gross v. Diversified Mortg. Indus.*, 438 F. Supp. 190 (S.D.N.Y. 1977)).

A plaintiff claiming a Hobbs Act violation, 18 U.S.C. § 1951, as a predicate act in a civil RICO claim must establish that the defendant "obstruct[ed], delay[ed], or affect[ed] commerce or the movement of any article or commodity in commerce, by ... extortion or attempt[ed] or conspire[d] so to do, or commit[ted] or threaten[ed] physical violence to any person or property in furtherance of a plan or purpose to do [so]." 18 U.S.C. § 1951; *see also McLaughlin v. Anderson,* 962 F.2d 187 (2d Cir. 1992). To prove extortion under the Hobbs Act or New York law, Plaintiff must to show "wrongful means and wrongful objective." *Andrea Doreen, Ltd. v. Building Material Local Union 282,* 299 F. Supp. 2d 129, 154-56 (E.D.N.Y. 2004); *see United States v. Enmons,* 410 U.S. 396, 419 n.16 (1973) ("[E]xtortion requires an intent 'to obtain that which in justice and equity the party is not entitled to receive.' ") (internal quotation omitted); *Viacom Int'l Inc. v. Icahn,* 747 F. Supp. 205, 210 (S.D.N.Y. 1990) ("Stated another way, both elements of extortion occur whenever one exploits fear to obtain property to which one has no lawful claim."); *see also* N.Y. Penal Law § 155.05(2)(e).

Plaintiff fails to present any allegations that any Defendant engaged in the predicate act of extortion. (*See generally* Dkt. No. 1.) The Complaint does not allege any date on which the alleged "extortion" occurred, the alleged threats and coercion, and effect on interstate commerce, or the purpose of such Defendant's alleged actions. *Zito v. Leasecomm Corp.*, 02-CV-8074, 2003 WL 22251352, at *11 (S.D.N.Y. Sept. 30, 2003).

**\*9** Plaintiff fails to set forth any factual allegations plausibly suggesting that *inter alia*, any Defendant engaged in (1) "racketeering activity" as defined by 18 U.S.C. § 1961(1); or (2) two or more acts constituting a pattern. (*See generally* Dkt. No. 1.) As a result, I recommend dismissal of Plaintiff's claim against Defendants pursuant to the RICO Act.

### E. New York State Common Law Claims

In addition to alleging that Defendants violated his civil rights pursuant to 42 U.S.C. § 1983 and committed RICO violations, Plaintiff also asserted pendent state law claims. In the event that Plaintiff's federal claims are dismissed, I recommend that the Court decline to exercise supplemental jurisdiction over his state law claims. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction."). [11]

[11]    The Court also notes that the Complaint is devoid of factual allegations which could reasonably support Plaintiff's state law claims. In addition, New York does not recognize private causes of action for stalking, harassment, or trespass. *See Di Pompo v. Ruggiero*, 17-CV-8077, 2018 WL 5045339, at *4 (S.D.N.Y. Oct. 17, 2018) ("Plaintiffs were put on notice that New York does not recognize a claim of 'criminal stalking.' "); *Williams v. Norris*, 18-CV-0349, 2018 WL 5848851, at *5 (N.D.N.Y. Oct. 1, 2018) (Hummel, M.J.) (holding that a plaintiff cannot attempt to bring criminal trespass charges against defendants through means of a civil action); *Harris v. Summers*, 14-CV-0013, 2014 WL 1340032, *5 (Apr. 3, 2014) (citing *Rivers v. Towers, Perrin, Forster & Crosby, Inc.*, 07-CV-5441, 2009 WL 817852, at *11 (E.D.N.Y. Mar. 27, 2009) ("Plaintiff's claim for harassment is dismissed because New York does not recognize a common law cause of action for harassment.")).

### V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of

Sonnick v. Budlong, Not Reported in Fed. Supp. (2020)

2020 WL 2999109

discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [12]

[12]     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

**\*10** Here, I recommend that the Court dismiss without leave to amend Plaintiff's claims against Defendants Budlong, Dodge, Macormick, New York State Police, and Horton to the extent that the claims against him are in his official capacity. *See Wrobleski v. Miller*, 19-CV-0876, 2019 WL 6496723, at *9 (N.D.N.Y. Dec. 2, 2019) (Lovric, M.J.) (recommending dismissal with prejudice and without leave to amend, claims against officers in their official capacities pursuant to the doctrine of immunity pursuant to the Eleventh Amendment), *report and recommendation adopted in part and rejected in part on other grounds*, 2020 WL 219221 (N.D.N.Y. Jan. 15, 2020) (Sharpe, J.); *Wellington v. Foland*, 19-CV-0615, 2019 WL 3315181, at *11 (N.D.N.Y. July 24, 2019) (Lovric, M.J.) (recommending dismissal with prejudice and without leave to amend, claims against a village court judge based on the doctrine of absolute immunity), *report and recommendation adopted*, 2019 WL 6485157 (N.D.N.Y. Dec. 3, 2019) (Suddaby, C.J.); *Jackson v. Gunsalus*, 16-CV-0647, 2016 WL 4004612, at *2 (N.D.N.Y. June 24, 2016) (Dancks, M.J.) (dismissing with prejudice and without leave to amend, claims against police officers in their official capacities based on the doctrine of immunity pursuant to the Eleventh Amendment), *report and recommendation adopted*, 2016 WL 3983635 (July 25, 2016) (Sharpe, J.); *Brooks v. Ukieley,* 14-CV-6662, 2015 WL 235406, at *4 (E.D.N.Y. Jan. 16, 2015) (dismissing the plaintiff's claims in their entirety with prejudice against Judges Ukieley and Toomey based on the doctrine of judicial immunity); *Gonzalez v. Sharpe,* 06-CV-1023, 2006 WL 2591065, at *3 (N.D.N.Y. Sept. 8, 2006) (Scullin, J.) (dismissing without leave to amend, the plaintiff's

claims against U.S. District Court Judge Gary L. Sharpe based on the doctrine of judicial immunity).

However, I am unable to conclude with complete certainty that if permitted leave to amend his complaint, Plaintiff could not assert a plausible claims pursuant to 42 U.S.C. § 1983, RICO, and New York common law against Defendant Horton to the extent that any claims are asserted against him in his individual capacity, the City of Oneida, and Onondaga County. Accordingly, I recommend that leave to amend be granted.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

# VI. SUMMARY, RECOMMENDATION, AND ORDER

Having reviewed Plaintiff's IFP application, I find that he meets the requirements for IFP status, and therefore grant his motion for leave to proceed without prepayment of fees.

Turning to the merits of Plaintiff's Complaint, I recommend that (1) Plaintiff's claims against Defendants Budlong, Dodge, Macormick, New York State Police, and Horton (to the extent that the claims are against him in his official capacity) be

Sonnick v. Budlong, Not Reported in Fed. Supp. (2020)

2020 WL 2999109

dismissed with prejudice and without leave to amend; and (2) that the claims pursuant to 42 U.S.C. § 1983, RICO, and New York common law against Defendant Horton (to the extent that they are alleged in his individual capacity), the City of Oneida, and Onondaga County be dismissed without prejudice and with leave to amend.

**\*11  ACCORDINGLY**, it is

**ORDERED** that the application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court amend the docket to add "Trooper Horton" as a defendant in this matter; and it is further

**ORDERED** that the Clerk of the Court amend the docket to add "Onondaga County" as a defendant in this matter; and it is further

**ORDERED** that the Clerk of the Court amend the docket to add the "City of Oneida" as a defendant in this matter; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's claims pursuant to 42 U.S.C. § 1983, RICO, and New York common law against Defendant Horton in his individual capacity, the City of Oneida, and Onondaga County, for failure to state a claim pursuant to 28 U.S.C. 1915(e)(2)(B); and it is further

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's claims against Defendants Budlong, Dodge, Macormick, New York State Police, and Horton in his official capacity, pursuant to 28 U.S.C. § 1915(e)(2)(B).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [13] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[13]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

It is hereby respectfully **ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [14]

[14]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**All Citations**

Not Reported in Fed. Supp., 2020 WL 2999109

---

**End of Document**                     © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 4345004
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Vincent SONNICK, Plaintiff,

v.

Christopher G. BUDLONG, NYS Trooper, in his
official capacity; Officer Macormick, OPD, in his
official capacity; Nelson T. Dodge, Judge Verona,
in his individual and official capacities; New York
State Police, Troop D; Trooper Horton; City of
Oneida; and Onondaga County, Defendants.

5:20-CV-410 (TJM/ML)
|
Signed 07/29/2020

**Attorneys and Law Firms**

Vincent Sonnick, Oneida, NY, pro se.

**DECISION & ORDER**

Thomas J. McAvoy, Sr. U.S. District Judge

 **\*1** The Court referred this *pro se* civil action to the
Hon. Miroslav Lovric, United States Magistrate Judge, for
a report and recommendation pursuant to 28 U.S.C. §
636(b) and Local Rule 72.3(c). In his Order and Report-
Recommendation dated June 4, 2020 (Dkt. No. 5), Magistrate
Judge Lovric grants Plaintiff's application to proceed in forma
pauperis, and examines the sufficiency of the allegations set
forth in the Complaint in light of 28 U.S.C. § 1915.

As Magistrate Judge Lovric explained:

 Construed as liberally as possible, Plaintiff's Complaint
 alleges that his civil rights were violated by Defendants
 Christopher G. Budlong, Officer Macormick, Nelson T.
 Dodge, the New York State Police Troop D, Trooper
 Horton, Onondaga County, and the City of Oneida
 collectively "Defendants"). (*See generally* Dkt. No. 1).
 More specifically, Plaintiff alleges that at some point in
 time, Defendant Budlong "held" him at New York State
 Police Troop D headquarters for two-and-one-half hours,
 during which time Plaintiff was not read his rights or
 permitted to make a phone call. (*Id.*) Plaintiff alleges that

he was charged with disorderly conduct for events that took
place on his own property. (*Id.*)

In addition, Plaintiff alleges that from December 18, 2013,
until the present time, he has been "gang stalked" by the
Onondaga County Sheriff's Department. (*Id.*)

Plaintiff alleges that at some point in time, he was brought
to jail for a two-week period, during which he was not read
his charges for three days, then he was moved to another
unit of the Oneida County Justice Center, where he was
held for another three days before being brought before
a judge. (*Id.*) Plaintiff alleges that he was "extorted and
harassed and stalked by NYS Troopers, ordered to pay after
they basically kidnapped [him]." (*Id.*)

Plaintiff alleges that at some point in time, he sought, and
was denied services at Madison County Social Services.
(*Id.*) Plaintiff alleges that he has severe anxiety "due to this
event" and "[t]he named above have conspired to ... use ...
technology against [his] body." (*Id.*)

Ord. & Rep. Rec. at 2-3 (footnotes omitted). For relief,
Plaintiff seeks $26.5 million in actual and punitive damages.
*See* Compl., Dkt. No. 1, at p. 5.

Magistrate Judge Lovric interpreted Plaintiff's Complaint
as asserting the following eight causes of action: (1)
violation of [Plaintiff's] freedom of speech pursuant to
the First Amendment and 42 U.S.C. § 1983; (2) false
arrest pursuant to the Fourth Amendment and 42 U.S.C. §
1983; (3) violations pursuant to the Racketeering Influenced
and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§
1961-1968; (4) stalking pursuant to New York common
law; (5) harassment pursuant to New York common law;
(6) trespassing pursuant to New York common law; (7)
defamation pursuant to New York common law; and (8)
negligence pursuant to New York common law. Ord. & Rep.
Rec. at 3. After analyzing these claims, Magistrate Judge
Lovric recommends: (a) dismissal without leave to replead
all claims brought against the New York State Police as
barred by Eleventh Amendment immunity, *id.* at 6, 19-20,
21-22; (b) dismissal without leave to replead all claims
brought against NYS Trooper Budlong, who is sued in his
official capacity only, as barred by Eleventh Amendment
immunity, *id.* at 7, 19-20, 21-22; (c) dismissal without leave to
replead all claims brought against Officer Macormick, who
is sued in his official capacity only, as barred by Eleventh
Amendment immunity, *id.*; (d) dismissal without leave to
replead claims brought against NYS Trooper Horton to the

extent he is sued in his official capacity as barred by Eleventh Amendment immunity, *id.*; (e) dismissal without leave to replead all claims brought against Town of Verona Court Judge Dodge based on Eleventh Amendment immunity for claims against Judge Dodge in is official capacity and the doctrine of absolute judicial immunity for claims against Judge Dodge in is official and individual capacities, *id.* at 7-8, 19-20, 21-22; (f) dismissal with leave to replead all 42 U.S.C. § 1983 claims brought against the City of Oneida and Onondaga County on the grounds that Plaintiff has failed to allege a plausible custom or policy by either municipal entity that caused an injury to Plaintiff, *id.* at 9-12, 20, 21-22; (g) dismissal with leave to replead all claims brought against Defendant Horton in his individual capacity on the ground that the Complaint fails to plausibly allege Defendant Horton's personal involvement in a deprivation of Plaintiff's rights, *id.* at 12-14, 21-22; (h) dismissal with leave to replead Plaintiff's RICO claims on the grounds that Plaintiff has failed to allege a plausible RICO claim against any defendant, *id.* at 14-18, 20, 21-22; and (i) dismissal with leave to replead Plaintiff's New York common law claims against Defendant Horton in his individual capacity, the City of Oneida, and Onondaga County on the grounds that the Court should decline to exercise supplemental jurisdiction over state law claims once all federal claims have been dismissed, *id.* at 18, and because the Complaint does not allege plausible facts supporting the state law claims that Plaintiff asserts, *id.* at fn. 11; *see also id.* at 20, 21-22.

**\*2** Plaintiff did not object to the Order and Report-Recommendation, and the time for doing so has passed. After examining the record, the Court has determined to adopt the dismissal recommendations in the Order and Report-Recommendation although, in one instance, it does so for a reason different than recommended by Magistrate Judge Lovric. This one instance concerns the claims against Officer Macormick, who is sued in his official capacity only.

Based on the allegations in the Complaint it appears that Officer Macormick works for the Oneida Police Department, [1] which is an administrative arm of the City of Oneida that cannot be sued separate from the City of Oneida. *See Krug v. Cty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008)("A city police department is not an independent, suable entity separate from the municipality in which the police department is organized."); *Carthew v. Cty. of Suffolk*, 709 F. Supp. 2d 188, 195 (E.D.N.Y. 2010) ("It is well settled that an entity such as the Suffolk County Police Department is an 'administrative arm' of the same municipal

entity as Suffolk County and thus lacks the capacity to be sued."). The suit against Officer Macormick in his official capacity is essentially a suit against the City of Oneida. *See Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007)("An official capacity suit against a public servant is treated as one against the governmental entity itself."); *Aikman v. Cnty. of Westchester*, 491 F. Supp. 2d 374, 380 (S.D.N.Y. 2007)("Suits against [municipal] officials sued in their official capacity ... should be treated as suits against the [municipality].")(quoting *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)(alterations in *Aikman*); *see also Zuk v. Gonzalez*, 07-CV-0732, 2007 WL 2163186, at \*2 (N.D.N.Y. July 26, 2007) ("[T]o the extent that Plaintiff has named the individual Defendants in their official capacities, he has in essence named Onondaga County ... as a Defendant.")). Courts within the Second Circuit regularly dismiss with prejudice official-capacity claims against a public official when the claims are duplicative of the claims against the governmental entity for which the official works. *See Kanderskaya v. City of N.Y.*, 11 F. Supp. 3d 431, 435 (S.D.N.Y. 2014)(dismissing with prejudice claims against a police officer sued in an official capacity "because they are duplicative of [the plaintiff's] other claims against [the municipality]") *aff'd*, 590 Fed. Appx. 112 (2d Cir. 2015); *Quinn v. Gould*, No. 3:19-cv-820 (VAB), 2020 WL 1234553, at \*4, 2020 U.S. Dist. LEXIS 43811, at \*10 (D. Conn. Mar. 13, 2020)("[D]istrict courts within the Second Circuit consistently dismiss claims asserted against officials in their official capacities as duplicative where the plaintiff has named the municipal entity as a defendant.")(citations omitted). While it is unclear from the sparse allegations in the Complaint the precise substance of the claims against Officer Macormick and the City of Oneida, the Court will dismiss the claims against Officer Macormick in his official capacity with prejudice, dismiss the claims against the City of Oneida without prejudice to repleading, and will grant Plaintiff leave to file an amended complaint. If Plaintiff has claims against Officer Macormick that differ from claims against the City of Oneida, he can bring individual-capacity claims against Officer Macormick in an amended complaint.

[1] The Complaint lists two defendants denominated as "Defendant No.2." Compl. at 2. This includes "Nelson T. Dodge" with the "Job or Title" as "judge verona," and an address of "Verona," and "Officer

Macormick" with the "Job or Title" as "OPD," and an address as "Oneida NY." *Id.* In this context, the Court presumes that OPD stands for Oneida Police Department. Plaintiff checked only the boxes for "Official Capacity" relative to both Judge Dodge and Officer Macormick, leaving blank the boxes for "Individual Capacity." *Id.* The Complaint also lists Judge Dodge as "Defendant No. 3" and checks the boxes for "Official Capacity" and "Individual Capacity" for him. *Id.* at 3.

**\*3**  Accordingly,

The dismissal recommendations in Magistrate Judge Lovric's Order and Report-Recommendation, Dkt. No. 5, are **ACCEPTED** and **ADOPTED**. Thus it is hereby

**ORDERED** that Plaintiff's claims against Defendants Budlong, Dodge, New York State Police, Macormick in his official capacity, and Horton in his official capacity are **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO REPLEAD**. And it is further

**ORDERED** that Plaintiff's claims pursuant to 42 U.S.C. § 1983, RICO, and New York common law against Defendant

Horton in his individual capacity, the City of Oneida, and Onondaga County are **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD**. And if is further

**ORDERED** that Plaintiff is granted leave of thirty (30) days from the date of this Decision and Order in which to file an amended complaint. **If Plaintiff elects to file an amended complaint, he may replead any of the claims dismissed _without_ prejudice and/or any other claims _that have not been dismissed with prejudice_**.

This Decision and Order addresses all claims and all defendants in Plaintiff's Complaint. If Plaintiff does not file an amended complaint within thirty (30) days of the date of this Decision and Order, the Clerk of the Court is directed to close the file in this case.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2020 WL 4345004

---

**End of Document**                                      © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Brewer v. Brewer, Not Reported in Fed. Supp. (2018)

2018 WL 4938694

2018 WL 4938694
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert BREWER, Plaintiff,

v.

Margaret Immel BREWER, et al., Defendants.

Civil Action No. 3:18-CV-0399 (GLS/DEP)
|
Signed 09/20/2018

**Attorneys and Law Firms**

FOR PLAINTIFF: ROBERT BREWER, Pro Se, P.O. Box 1004, Johnson City, NY 13790.

REPORT AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

**\*1** This is an action commenced by *pro se* plaintiff Robert Brewer against his former spouse, his two sons, and two individuals employed by the New York City Department of Environmental Protection ("NYCDEP") alleging civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Following the *sua sponte* dismissal of his original complaint upon initial review, plaintiff submitted an amended complaint containing many of the same allegations as in its predecessor. Plaintiff's amended complaint has been forwarded to me for review, pursuant to 28 U.S.C. § 1915(e), in light of the fact that he is proceeding in the matter *in forma pauperis* ("IFP"). For the reasons set forth below, I recommend that the amended complaint be dismissed without leave to replead.

I. BACKGROUND

Plaintiff's original complaint in this action was filed on April 1, 2018, and was accompanied by a request for leave to proceed without prepayment of the required filing fees. Dkt. Nos. 1, 2. In his complaint, plaintiff named as defendants his former wife, Margaret Immel Brewer ("Margaret"), and his two sons, Robert Martin Brewer ("Robert Martin") and Eric Channing Brewer ("Eric Channing"). Dkt. No. 1.

On April 27, 2018, I issued an order, report, and recommendation, following my review of plaintiff's IFP request and original complaint, granting plaintiff IFP status but recommending dismissal of his complaint, with leave to replead for the failure to state a cognizable RICO claim. Dkt. No. 6. Over plaintiff's objections, Senior District Judge Gary L. Sharpe accepted my recommendation and dismissed plaintiff's original complaint. Dkt. Nos. 7, 8, 9. Plaintiff availed himself of the opportunity to replead by submitting an amended complaint on August 10, 2018. Dkt. No. 10. The precise nature of the basis for the RICO claims is difficult to discern from plaintiff's amended complaint, which is bizarre, rambling, and disjointed. *See generally* Dkt. No. 10. Plaintiff's claims generally arise out of a series of distinct domestic disputes that involve the original defendants. *See generally id.* However, as amended, plaintiff also asserts claims against Vincent Sapizena ("Sapizena"), the Commissioner of the NYCDEP, and Frederick Hamel ("Hamel"), whom plaintiff identifies as being part of the NYCDEP's "Signature Unit," arising out of NYCDEP's attempt to collect a debt for water services rendered to the real property located at 2065 East 73rd Street in Brooklyn, New York, which appears to have been the marital home shared by plaintiff and Margaret during their marriage. *See generally id.* at 1, 7-8, 11, 15.

This first discrete event giving rise to plaintiff's claims occurred sometime between 2000 and 2005, when Margaret is alleged to have falsely reported to credit reporting agencies that a retail debt belonged to plaintiff. Dkt. No. 10 at 4-5. Plaintiff similarly alleges that Robert Martin and Eric Channing—emboldened by Margaret's action—also falsely reported that their respective debts belonged to plaintiff. *Id.* As a result of this conduct, plaintiff was forced to accept a car loan with a nine percent interest rate. *Id.* at 5.

**\*2** Plaintiff further alleges that he is the author of a book that he self-published through his business, "Lion of Tepelena Press Inc." Dkt. No. 10 at 5, 11. At some point, he acquired an inventory of four hundred unsold copies of the book, and stored them in the basement of the marital home. *Id.* In 2005, and again in 2014, plaintiff contacted Robert Martin to inquire concerning the whereabouts of the books. *Id.* at 6. Although Robert Martin did not acknowledge the inquiry, Robert Martin stated to plaintiff, "if you come to the house, I will call the authorities." *Id.* Plaintiff speculates that the books were burned by Robert Martin and Eric Channing, at the behest of Margaret. *Id.* at 14.

**Brewer v. Brewer**, Not Reported in Fed. Supp. (2018)

2018 WL 4938694

Plaintiff's amended complaint also alleges that between 2010 and 2011, plaintiff learned that the water bill that was connected to the marital home had not been paid when the NYCDEP began attempts to collect the past-due obligation from him. Dkt. No. 10 at 7-8. Plaintiff requested an itemized water bill, but never received it. *Id.* at 8. Ultimately, plaintiff's name was removed from the deed of the marital home. *Id.* In addition to filing a notice of claim against the NYCDEP, in which he alleged that Margaret, Robert Martin, and Eric Channing collaborated to falsely assign the water arrearage to him, plaintiff also attempted to have the debt cleared from his name through NYCDEP. *Id.* at 8, 10, 15. Plaintiff claims that his attempts to clear the debt were frustrated by defendant Hamel, who failed to provide him with NYCDEP's administrative findings or any grounds upon which he could file an appeal of those findings. *Id.* at 8, 10, 15.

Plaintiff's final claim appears to stem from a bribery scandal involving former New York State Supreme Court Justice Gerald P. Garson and attorney Paul Siminovsky. *See generally People v. Garson*, 69 A.D.3d 650 (2d Dept 2010) (affirming conviction of one count of bribe receiving in the third degree and two counts of receiving reward for official misconduct in the second degree). According to plaintiff, during the pendency of their divorce proceedings, which were finalized in 2000, Margaret—through attorney Sharyn Witlin, who was allegedly acquainted with Attorney Siminovsky—purchased a restraining order against plaintiff from Justice Garson. Dkt. No. 10 at 8-9.

## II. DISCUSSION

### A. Legal Standard Governing Review of Plaintiff's Amended Complaint

Because plaintiff is proceeding in this matter without prepayment of filing fees, I must consider the sufficiency of the claims set forth in his amended complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and caution should be exercised in

ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

**\*3** When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the

Brewer v. Brewer, Not Reported in Fed. Supp. (2018)

2018 WL 4938694

Case 1:20-cv-01428-LEK-TWD Document 34 Filed 12/17/21 Page 54 of 70

allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2) ).

B. Analysis

In order to state a claim for a civil RICO violation pursuant to 18 U.S.C. § 1961 *et seq.,* a plaintiff is required to plausibly allege that (1) defendants violated 18 U.S.C. § 1962, (2) the plaintiff suffered an injury to his business or property, and (3) the injury was caused by the violation of section 1962. *Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 183 (2d Cir. 2008); *see DeFalco v. Bernas,* 244 F.3d 286, 305 (2d Cir. 2001).

With respect to the first element, "[u]nder any prong of [section] 1962, a plaintiff in a civil RICO suit must establish a 'pattern of racketeering activity.' " *GICC Capital Corp. v. Tech. Fin. Grp.,* 67 F.3d 463, 465 (2d Cir. 1995) (quoting 18 U.S.C. § 1962); *accord, Spool,* 520 F.3d at 183. "A pattern of racketeering" is defined as "at least two acts of racketeering activity, ... the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5); *accord, Spool,* 520 F.3d at 183. The definition of "racketeering activity" includes, *inter alia,* robbery, bribery, extortion, wire fraud, and mail fraud, *see* 18 U.S.C. § 1961(1), each of which plaintiff identifies as having been committed by some or all of the defendants in his amended complaint. Dkt. No. 10 at 4-8.

However, plaintiff fails to plausibly allege that any of defendants committed any racketeering predicate acts. Therefore, because the amended complaint does not satisfy the first element required for a civil RICO violation, I recommend its dismissal.

1. Robbery

The relevant RICO provision explains that robbery constitutes racketeering activity to the extent it "is chargeable under State law and punishable by imprisonment for more than a year." 18 U.S.C. § 1961(1). In New York, the least

severe degree of robbery is robbery in the third degree, N.Y. Penal L. § 160.05, and is a class D felony, meaning it is punishable by at least one year imprisonment. N.Y. Penal L. § 70.00. "A person is guilty of robbery in the third degree when he forcibly steals property." N.Y. Penal L. § 160.05. In New York, in relevant part, "[a] person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person[.]" N.Y. Penal L. § 160.00.

**\*4** In his amended complaint, plaintiff has added the additional factual allegation that when he asked Robert Martin about the location of his book inventory in 2014, Robert Martin responded in an e-mail that if plaintiff went to the marital home, he would "call the authorities." Dkt. No. 10 at 6, 14. Even construing the comment liberally as the court must, the statement is insufficient to show that plaintiff was "threaten[ed] [with] the immediate use of physical force." N.Y. Penal L. § 160.00; *see People v. Woods,* 41 N.Y.2d 279, 281 (1977) ("Thus, in order to sustain a charge of robbery, the People must show not only the taking of the property, but that the taking was accomplished by means of the use or threatened immediate use of physical force."). Accordingly, plaintiff's amended complaint fails to plausibly allege that defendants committed robbery as a predicate act under 18 U.S.C. 1961(1).

2. Mail and Wire Fraud

Plaintiff has alleged that defendants committed both mail and wire fraud. [1] Those allegations are subject to the heightened pleading requirements imposed by Rule 9(b) of the Federal Rules of Civil Procedure. *Spool,* 520 F.3d at 185 (citing *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 178 (2d Cir. 2004) ); *see also Jus Punjabi, LLC v. Get Punjabi US, Inc.,* 640 F. App'x 56, 58 (2d Cir. 2016). Under Rule 9(b), a party alleging "fraud or mistake ... must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Moreover, in a civil RICO action, "[a]llegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, and where and when they took place, and should explain why they were fraudulent." *Spool,* 520 F.3d at 185 (quotation marks and alterations omitted); *see also Cohen v. S.A.C. Trading Corp.,* 711 F.3d 353, 359 (2d Cir. 2013) ("[A] complaint must specify the time, place, speaker, and content of the alleged misrepresentations, explain how the misrepresentations were fraudulent and plead those events

Brewer v. Brewer, Not Reported in Fed. Supp. (2018)

2018 WL 4938694

Case 1:20-cv-01428-LEK-TWD   Document 34   Filed 12/17/21   Page 55 of 70

which give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." (internal quotation marks omitted) ). Although Rule 9(b) provides that intent "may be alleged generally," Fed. R. Civ. P. 9(b), a complaint must still include "some factual basis for conclusory allegations of intent." *Beck v. Mfrs. Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987), *abrogated on other grounds by United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989).

1           As provided in 18 U.S.C. § 1961(1), "racketeering activity" includes mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343.

The plaintiff's mail and wire fraud allegations are predicated upon the NYCDEP's attempts to collect water arrearages incurred by the marital home from plaintiff. Dkt. No. 10 at 7-8, 15. Although plaintiff suggests in the amended complaint that he "fully adhered" to the requirements of Rule 9(b), *see* Dkt. No. 10 at 15, I disagree. The amended complaint is notably bereft of any allegations that could plausibly tie Margaret, Robert Martin, or Eric Channing to the NYCDEP's attempts to contact plaintiff concerning the past-due water bills. Plaintiff's conclusory allegation that Margaret's phone call in the spring of 2009—several months before the NYCDEP commenced its attempts to collect the debt in the fall of 2009—"was a RICO predicate act of wire fraud" is speculative and insufficient to state a plausible claim. Dkt. No. 10 at 7, 15. Similarly, plaintiff's allegation that the NYCDEP was "a third party listening in" on that phone call in the spring of 2009 suffers from the same deficiencies. Dkt. No 15.

Similarly, plaintiff's allegation that defendant Hamel committed mail fraud "because [his letter] purported to enclose an administrative decision made by the NYCDEP," but did not actually do so, similarly fails to satisfy Rule 9(b)'s particularity requirements concerning intent or motive. Dkt. No. 10 at 15. There is no inference from the allegations in amended complaint—let alone a "strong inference"—that defendant Hamel intended to defraud, and had knowledge of the falsity, or a reckless disregard for the truth. *Jus Punjabi, LLC*, 640 F. App'x at 58; *Cohen*, 711 F.3d at 359. As a result, plaintiff's amended complaint fails to plausibly allege that defendants committed mail fraud or wire fraud as a predicate act under 18 U.S.C. 1961(1).

### 3. Extortion

**\*5** Turning next to the allegation that defendants committed extortion, under 18 U.S.C. § 1961(1) extortion constitutes racketeering activity if it is "chargeable under State law and punishable by imprisonment for more than one year[.]" 18 U.S.C. § 1961(1). In New York, the crime of coercion in the first degree, which is a class D felony punishable by at least one year in prison, N.Y. Penal L. § 70.00, is defined as follows:

A person is guilty of coercion in the first degree when he or she commits the crime of coercion in the second degree,[ 2 ] and when:

1. He or she commits such crime by instilling in the victim a fear that he or she will cause physical injury to a person or cause damage to property; or

2. He or she thereby compels or induces the victim to:

   (a) Commit or attempt to commit a felony; or

   (b) Cause or attempt to cause physical injury to a person; or

   (c) Violate his or her duty as a public servant.

N.Y. Penal L. § 135.65.

2           In relevant part,
            [a] person is guilty of coercion in the second degree when he or she compels or induces a person to engage in conduct which the latter has a legal right to abstain from engaging in ... by means of instilling in him or her a fear that, if the demand is not complied with, the actor or another will ... [p]erform [an] act which would not in itself materially benefit the actor but which is calculated to harm another person materially with respect to his or her health, safety, business, calling, career, financial condition, reputation or personal relationships.
            N.Y. Penal L. § 135.60(9).

Much like plaintiff's original pleading, his extortion claim is based upon the allegation that several debts were falsely reported as belonging to him. Dkt. No. 10 at 4-5. Rather than addressing the specific deficiencies previously identified by the court, plaintiff has instead expanded the allegations

**Brewer v. Brewer, Not Reported in Fed. Supp. (2018)**

Case 1:20-cv-01428-LEK-TWD   Document 34   Filed 12/17/21   Page 56 of 70

2018 WL 4938694

from Margaret and Robert Martin to also include allegations against Eric Channing. *Id.* As a result, the amended complaint fails to plausibly allege "that defendants took any action, directly or indirectly, against plaintiff by instilling fear in plaintiff or a third party" such that any of the defendants committed coercion in the first degree. *See* N.Y. Penal L. § 135.65. As a result, the amended complaint fails to plausibly allege that defendants committed extortion as a predicate act under 18 U.S.C. 1961(1).

### 4. Bribery

Finally, bribery constitutes racketeering activity to the extent it "is chargeable under State law and punishable by imprisonment for more than a year." 18 U.S.C. § 1961(1). In New York, the least severe degree of bribery of a public official is bribery in the third degree, N.Y. Penal L. § 200.00, a class D felony, which is punishable by at least one year imprisonment. N.Y. Penal L. § 70.00. "A person is guilty of bribery in the third degree "when he confers ... any benefit upon a public servant upon an agreement or understanding that such public servant's vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced." N.Y. Penal L. § 200.00.

Even assuming *arguendo* that plaintiff has sufficiently alleged that Margaret committed an act of bribery in the third degree in connection with the restraining order that her attorney obtained from former Justice Garson during divorce proceedings that ended nearly eighteen years ago, in order to state a civil RICO claim, the complaint must plausibly allege that defendants committed *two* predicate acts as defined in 18 U.S.C. § 1961(1). *Spool*, 520 F.3d at 183. Here, as was previously discussed, plaintiff has failed to plausibly allege that defendants committed any of the other alleged crimes. For these reasons, I recommend that plaintiff's amended complaint be dismissed.

### 5. NYCDEP Defendants

**\*6** The two newly added defendants in plaintiff's amended complaint are identified as employees of the NYCDEP. It is well-established that a municipality and its employees in their official capacities cannot be held liable in a civil RICO case. *See Frooks v. Town of Cortland*, 997 F. Supp. 438, 457 (S.D.N.Y. 1998) (collecting cases); *see also Roger v. City of New York*, 359 F. App'x 201, 204 (2d Cir. 2009) ("there is

no municipal liability under RICO."). Plaintiff suggests that his claims have been brought against defendants Sapizena and Hamel, employees of the NYCDEP, in their individual capacity but fails to allege that they were acting outside the scope of their employment. Dkt. No. 10 at 1, 3, 7-8. In addition, for the same reasons that were previously outlined, plaintiff has also failed to plausibly allege that defendants Sapizena and Hamel committed two predicate acts pursuant to 18 U.S.C. § 1961(1).

### C. Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could not "determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, plaintiff has already been given one opportunity to amend his complaint, after having been alerted to the precise deficiencies in his original complaint. Plaintiff ignored many of deficiencies identified by the court and, as a result, his amended complaint fares no better than the original in that it continues to lack sufficient factual allegations plausibly suggesting the existence of a civil RICO violation pursuant to 18 U.S.C. § 1961 *et seq.*, against defendants. Although plaintiff is proceeding in this matter *pro se*, given that he has already been afforded one opportunity to amend his complaint and cure the noted deficiencies, I recommend that further leave not be granted. *See Pirro v. Nat'l Grid*, No. 12-CV-1364, 2014 WL 1303414, at \*5 (N.D.N.Y. Mar. 31, 2014) (Suddaby, J.) ("[W]hile generally leave to amend

a pleading should be freely given, granting a plaintiff an opportunity to amend before dismissal of his action is not required where the plaintiff has already been afforded the opportunity to amend.").

## III. SUMMARY AND RECOMMENDATION

Although plaintiff availed himself of the opportunity to file an amended complaint following the dismissal of his original pleading, his amended pleading fails to cure the deficiencies that were identified by the court in its earlier order, report and recommendation. Accordingly, it is respectfully

RECOMMENDED that plaintiff's amended complaint (Dkt. No. 10) be DISMISSED, with prejudice.

**\*7** NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[3] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

[3]     If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation on plaintiff in accordance with the court's local rules.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4938694

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Brewer v. Brewer, Not Reported in Fed. Supp. (2018)

2018 WL 4935757

2018 WL 4935757
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert BREWER, Plaintiff,

v.

Margaret Immel BREWER et al., Defendants.

3:18-cv-399 (GLS/DEP)

|

Signed 10/11/2018

**Attorneys and Law Firms**

FOR PLAINTIFF:, Robert Brewer, Pro Se, P.O. Box 1004,
Johnson City, NY 13790.

**ORDER**

Gary L. Sharpe, Senior District Judge

**\*1** The above-captioned matter comes to this court
following an Report and Recommendation by Magistrate
Judge David E. Peebles duly filed on September 10, 2018.

(Dkt. No. 12.) Following fourteen days from the service
thereof, the Clerk has sent the file, including any and all
objections filed by the parties herein.

No objections having been filed, and the court having
reviewed the Report and Recommendation for clear error, it
is hereby

**ORDERED** that the Report and Recommendation (Dkt. No.
12) is **ADOPTED** in its entirety; and it is further

**ORDERED** that plaintiff's amended complaint (Dkt. No. 10)
is **DISMISSED** with prejudice; and it is further

**ORDERED** that the Clerk is directed to close this case; and
it is further

**ORDERED** that the Clerk provide a copy of this Order to the
parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4935757

**End of Document**                © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 4777256
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Bishop Abraham S. ISRAEL; and
Jesus Christ Ministries, Plaintiffs,
v.
CITY OF SYRACUSE; Sgt. Carleo, Syracuse
Police Officer; Sisley, Syracuse Police Officer;
Wolfe, Syracuse Police Officer; Kimpel, Syracuse
Police Officer; Marcus DeBottis, Jr., Syracuse
Police Officer; Lago, Syracuse Police Officer; and
Ranette Releford, CRB Administrator, Defendants.

5:21-CV-0915 (DNH/ML)
|
Signed 09/16/2021

**Attorneys and Law Firms**

ABRAHAM S. ISRAEL, Pro se Plaintiff, 1409 South
McBride Street, Syracuse, New York 13202.

**ORDER and REPORT-RECOMMENDATION**

Miroslav Lovric, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* Complaint (Dkt. No. 1)
together with an application to proceed *in forma pauperis*
(Dkt. No. 2) filed by Bishop Abraham S. Israel ("Plaintiff")
to the Court for review. For the reasons discussed below, I
grant Plaintiff's *in forma pauperis* application (Dkt. No. 2)
and recommend that Plaintiff's Complaint (Dkt. No. 1) be (1)
accepted in part for filing, and (2) dismissed (a) in part without
leave to amend, and (b) in part with leave to amend.

**I. BACKGROUND**

On August 13, 2021, Plaintiff [1] commenced this action by
filing a Complaint and a motion to proceed *in forma pauperis*.
(Dkt. Nos. 1, 2.)

[1]     Plaintiff, who is not an attorney, cannot represent
        other plaintiffs. Although parties have a statutory
        right to "plead and conduct their own cases," 28
        U.S.C. § 1654, unlicensed laypersons may not
        "represent anyone else other than themselves."

*Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir.
2007) (internal quotation marks omitted); *see also*
*Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) ("A
person who has not been admitted to the practice
of law may not represent anybody other than
himself."). The Complaint names two plaintiffs
—Abraham S. Israel and Jesus Christ Ministries.
(Dkt. No. 1 at 1.) However, the IFP application
is signed solely by Plaintiff. (Dkt. No. 2.)
Accordingly, I reviewed this action with Abraham
S. Israel as the sole plaintiff. *See Yerushalayim
v. Liecthung*, 19-CV-4101, 2019 WL 3817125,
at *2 (E.D.N.Y. Aug. 13, 2019) (reviewing the
action as brought by sole plaintiff, Ben-Siyon
Ish Yerushalayim, because he was the only
signatory on the complaint and IFP application
and, as an unlicensed layperson, was incapable of
representing the other named plaintiffs).

Construed as liberally as possible, the Complaint alleges
that Plaintiff's civil rights were violated by Defendants City
of Syracuse, Sgt. Carleo, Sisley, Wolfe, Kimpel, Marcus
DeBottis, Jr., Lago, and Ranette Releford ("Defendants")
during his interactions with them. (*See generally* Dkt. No. 1
[Compl.].)

More specifically, the Complaint alleges that on or about
July 17, 2020, Plaintiff was at a mall in Syracuse, New York
("Destiny USA") preaching the gospel, when Defendants
Sisley and Wolfe approached him, escorted him to a private
room, detained him for approximately twenty minutes, then
escorted him out of Destiny USA and served him with an
appearance ticket—which was ultimately dismissed. (*Id.* at
6-7.) Plaintiff alleges that during this incident, Defendants
Sisley and Wolfe took Plaintiff's passport, "papers," and
$10.00, all without a warrant. (*Id.*) Plaintiff alleges that he
reported this incident to the Citizen's Review Board ("CRB"),
was contacted by Defendant Carleo for an in-person interview
in August 2020, but that Defendant Carleo failed to "rectify[ ]
and safeguard[ ] Plaintiff's civil rights," and thus, "knowingly
and unlawfully participated in the 'racketeering activity.'
" (*Id.* at 6-8.)

Plaintiff alleges that on December 13, 2020, the Syracuse
Police Department was summoned to 1409 South McBride
Street, Syracuse, New York 13202, which is Plaintiff's church
("Jesus Christ Ministries"). (*Id.* at 8-9.) Plaintiff alleges
that Defendant Kimpel responded, entered Jesus Christ
Ministries without a warrant, searched and seized Plaintiff's
sword, and then made Plaintiff and his wife, Natalia Israel,

lock up and leave the premises. (*Id.*) Plaintiff alleges that approximately one hour later, at an unidentified location, by an unidentified individual, Plaintiff was assaulted and suffered minor contusions to his face, a swollen, black eye, and was hospitalized. (*Id.*) Plaintiff alleges that he called the Syracuse Police Department, Defendant Kimpel again responded, Plaintiff reported to Defendant Kimpel who assaulted him, and Defendant Kimpel informed Plaintiff that a warrant would be issued for that person's arrest. (*Id.*) Plaintiff alleges that on December 14, 2020, he called the Syracuse Police Department and discovered that Defendant Kimpel wrote a false report for a missing person, instead of the assault on Plaintiff. (*Id.* at 9-10.)

 **\*2** Plaintiff alleges that on April 23, 2021, he and his wife were engaged in an alleged domestic dispute and Defendant DeBottis was the responding officer. (*Id.* at 10.) Plaintiff alleges that when Defendant DeBottis arrived on scene, Plaintiff was approximately one block away near his vehicle. (*Id.*) Plaintiff alleges that, without a warrant, Defendant DeBottis approached Plaintiff, placed him under arrest, placed handcuffs on him, seized his personal possessions—including his passport, papers, and identification—and took him to jail based on unsubstantiated allegations. (*Id.*) Plaintiff alleges that he spent seventeen days in jail as a result of this incident. (*Id.*)

Plaintiff alleges that on August 12, 2021, he called the police because his wife threatened to shoot him at Jesus Christ Ministries. (*Id.* at 11.) Plaintiff alleges that Defendant Lago responded to the call and when he arrived, Plaintiff was alone. (*Id.*) Plaintiff alleges that he signed an accusatory instrument against his wife and indicated that he wanted to press charges against her. (*Id.*) Plaintiff alleges that Defendant Lago informed him that a warrant would be issued for Ms. Israel's arrest. (*Id.*) Plaintiff alleges that after praying, he changed his mind about pressing charges, so he called the Syracuse Police Department and was informed that there was "no trace of his accusatory instrument he had signed and there was no record of a complaint." (*Id.*)

Plaintiff alleges that on July 27, 2020, he submitted a complaint to the CRB about the unlawful conduct of Defendants Sisley and Wolfe at Destiny USA on July 17, 2020, and that on December 23, 2020, he submitted a complaint to the CRB about the unlawful conduct of Defendant Kimpel on December 13, 2020. (*Id.* at 12.) However, Plaintiff alleges that Defendant Releford, the CRB

administrator, has failed to provide him with any recourse or means to address the unlawful conduct. (*Id.* at 12.)

Based on these factual allegations, the Complaint appears to assert the following twenty causes of action: (1) a claim against Defendants pursuant to the Racketeer Influenced and Corrupt Organizations statute ("RICO"), 18 U.S.C. Chapter 96; (2) a claim against Defendant City of Syracuse for dereliction of duty pursuant to 10 U.S.C. § 892; (3) a claim against Defendant City of Syracuse for law enforcement misconduct pursuant to 42 U.S.C. § 14141(a); (4) a claim against Defendants for harassment in the second degree pursuant to N.Y. Penal Law § 240.26(3); (5) a claim against Defendants for unlawful imprisonment pursuant to N.Y. Penal Law § 135.05; (6) a claim against Defendants for menacing in the second degree pursuant to N.Y. Penal Law § 120.14(1); (7) a claim against Defendants for robbery in the second degree pursuant to N.Y. Penal Law § 160.10(1); (8) a claim against Defendants for criminal tampering in the third degree pursuant to N.Y. Penal Law § 145.14; (9) a claim against Defendants for kidnapping in the first degree pursuant to N.Y. Penal Law § 135.25(1); (10) a claim against Defendants for disruption or disturbance of religious service, funeral, burial, or memorial service, pursuant to N.Y. Penal Law § 240.21; (11) a claim that Plaintiff's right to equal protection of the laws was violated by Defendants pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983; (12) a claim that Defendants Carleo, Sisley, and Wolfe violated Plaintiff's rights of free speech and freedom of religion pursuant to the First Amendment and 42 U.S.C. § 1983, related to the incident on July 17, 2020; (13) a claim of false arrest against Defendants Sisley, Wolfe, and Carleo in violation of the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on July 17, 2020; (14) a claim of illegal search and seizure against Defendants Sisley, Wolfe, and Carleo in violation of the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on July 17, 2020; (15) a claim of negligence against Defendant Carleo for "failure to deny [P]laintiff the relief of rectifying and safeguarding [P]laintiff's civil right[s]" after Plaintiff filed a CRB complaint regarding the incident that occurred at Destiny USA on July 17, 2020; (16) a claim of illegal search and seizure against Defendant Kimpel pursuant to the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on December 13, 2020; (17) a claim that Defendant Kimpel failed to protect Plaintiff as a victim of a crime related to the incident on December 13, 2020; (18) a claim of false arrest against Defendant DeBottis pursuant to the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on April 23, 2021; (19) a claim of illegal

2021 WL 4777256

search and seizure against Defendant DeBottis pursuant to the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on April 23, 2021; and (20) a claim of negligence against Defendant Releford for failing to provide Plaintiff "recourse" regarding his CRB complaints. (*See generally* Dkt. No. 1.) As relief, Plaintiff seeks an injunction against the City of Syracuse prohibiting any "future Dereliction of Duty" and $3,120,000.00 in damages. (*Id.*)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

**\*3** "When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [2] After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted. [3]

[2]   The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[3]   Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

## III. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"[E]xtreme caution should be exercised in ordering sua sponte dismissal of a ... complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

**\*4** The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack*

*Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that it be accepted in part for filing and dismissed in part.

### A. RICO Claims [4]

[4] Under General Order #14 and N.D.N.Y. L.R. 9.2, a party who files a RICO claim must also file a Civil RICO statement within thirty days after the filing date of the Complaint. Despite thirty days having elapsed since the filing of his Complaint, Plaintiff has failed to file a Civil RICO statement.

Plaintiff appears to assert a claim against Defendants pursuant to RICO. It is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Section 1964 establishes a private right of action for individuals who are harmed by racketeering activity. 18 U.S.C. § 1964. This private right of action permits a plaintiff to bring a RICO claim for sustaining injuries "in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Generally, a plaintiff bringing a civil RICO claim under "Section 1962(c) must allege that (1) the defendant has violated the substantive RICO statute, and (2) the plaintiff was injured in his business or property "by reason of a violation of section 1962." *Malvar Egerique v. Chowaiki*, 19-CV-3110, 2020 WL 1974228, at *7 (S.D.N.Y. Apr. 24, 2020) (citing *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (citing 18 U.S.C. § 1962(c))). More specifically, to assert a civil RICO claim under Section 1962(c), a plaintiff must allege the following elements: "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).

Additionally, a plaintiff asserting a civil RICO claim must plead facts plausibly suggesting a resulting "domestic injury" to their business or property. *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2111 (2016).

Regarding the second element, an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To allege an enterprise, a plaintiff must allege an "ongoing organization, formal or informal" and that "the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). In particular, a RICO enterprise must be "an entity separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583. The Second Circuit has "long recognized [that] the plain language and purpose of the statute contemplate that a person violates the statute by conducting an enterprise through a pattern of criminality. It thus follows that a corporate person cannot violate the statute by corrupting itself." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (citing *Bennet v. U.S. Tr. Co. of N.Y.*, 770 F.2d 308, 315 (2d Cir. 1985)). Accordingly, a plaintiff alleging a civil RICO claim must allege the existence of two distinct entities, a person, and an enterprise. *Chowaiki*, 2020 WL 1974228, at *8; *Cruz*, 720 F.3d at 120.

**\*5** Regarding the third and fourth elements, to sufficiently allege a "pattern of racketeering activity," a plaintiff must allege at least two acts of "racketeering activity" that occur within ten years of each other. 18 U.S.C. § 1961(5). "Racketeering activity" refers to the predicate acts necessary to establish a RICO claim and includes extortion. *See* 18 U.S.C. § 1961(1) (listing predicate acts that constitute a racketeering activity). To qualify as a "pattern" of racketeering activity, the predicate acts "must be from the crimes listed in [Section] 1961(1) and they must be 'related, *and* ... amount to or pose a threat of continued criminal activity.' " *Westester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 608 (S.D.N.Y. 2015) (emphasis in original) (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)). " 'It is this factor of *continuity plus relationship* which combines to produce a pattern.' " *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis in original) (quoting *Sedima*, 473 U.S. at 496 n.4).

Regarding the relationship factor, for predicate crimes to be considered related to each other under RICO, they must be

related to both each other (termed "horizontal relatedness") and the enterprise as a whole ("vertical relatedness"). *Reich v. Lopez*, 858 F.3d 55, 60-61 (2d Cir. 2017) (citing *United States v. Cain*, 671 F.3d 271, 284 (2d Cir. 2012)). "Vertical relatedness, which entails the simpler analysis, requires only 'that the defendant was enabled to commit the offense solely because of his position in the enterprise or his involvement in or control over the enterprises' affairs, or because the offense related to the activities of the enterprise.' " *Reich*, 858 F.3d at 61 (quoting *United States v. Burden*, 600 F.3d 204, 216 (2d Cir. 2010)). "[P]redicate acts are *horizontally* related when they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 61 (emphasis in original) (quoting *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989)). Therefore, "when dealing with an enterprise that is primarily a legitimate business ... courts must determine whether there is a relationship between the predicate crimes themselves' and that requires a look at, *inter alia*, whether the crimes share 'purposes, results, participants, victims, or methods of commission.' " *Id.* (quoting *H.J.*, 492 U.S. at 240).

Regarding the continuity factor, "[t]o satisfy continuity, the plaintiff must establish either 'a series of related predicate acts extending over a substantial period of time' ('closed-ended continuity') or 'a threat of continuing criminal activity' ('open-ended continuity). *Malvar Egerique*, 2020 WL 1974228, at *9 (quoting *Cofacredit, S.A.*, 187 F.3d at 242). "RICO targets conduct that 'amounts to or poses a threat of continued criminal activity.' " *Reich*, 858 F.3d at 60 (alterations omitted) (quoting *H.J.*, 492 U.S. at 239). Closed-ended continuity is "primarily a temporal concept" *id.* (quoting *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008)), "and it requires that the predicate crimes 'extend over a substantial period of time' " *id.* (quoting *H.J.*, 492 U.S. at 242). Generally, the Second Circuit "requires that the crimes extend over at least two years." *Id.* (citing *Spool*, 520 F.3d at 184). However, criminal activity that by its nature projects into the future with a threat of repetition is considered open-ended continuity and can be established in several ways, including where the predicate acts were the regular way of operating that business, even if the business itself is primarily lawful. *Id.*

**\*6** "Civil RICO [is] an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991). "Consequently, courts have an obligation to scrutinize civil

RICO claims early in the litigation [to] separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." *Am. Fed'n of State, Cnty., and Mun. Emps. Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.*, 948 F. Supp. 2d 338, 345 (S.D.N.Y. 2013) (citation omitted).

As an initial matter, claims to enforce RICO cannot be pursued against Defendant City of Syracuse and the individual Defendants to the extent that they are sued in their official capacities, because the municipality cannot form the requisite criminal intent to establish a predicate act. *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 389 (E.D.N.Y. 2013); *see Liang v. City of New York*, 10-CV-3089, 2013 WL 5366394, at *12 (E.D.N.Y. Sept. 24, 2013) (collecting cases) ("[A]s many previous courts in this Circuit have held, 'a municipal corporation is incapable of having the criminal intent to support RICO's predicate offense requirement.' ").

With respect to Plaintiff's claims against Defendants in their individual capacities, he fails to allege facts plausibly suggesting the existence of an "enterprise" within the meaning of RICO. Although Plaintiff's claims are against individuals employed by the City of Syracuse, he fails to plead any facts plausibly suggesting that Defendants constitute, control, or participate in any enterprise with a distinguishable existence or purpose. *See Mackin v. Auberger*, 59 F. Supp. 3d 528, 543 (W.D.N.Y. 2014) ("Plaintiff fails to allege that [the defendants] had a common or shared purpose or that they functioned as a continuing unit."). "Without such an enterprise, a RICO claim like [Plaintiff]'s must fail." *Liang*, 2013 WL 5366394, at *13; *see also Peterson v. City of New York*, 2012 WL 75029, at *3-4 (S.D.N.Y. January 9, 2012) (dismissing the plaintiff's RICO claim because "[t]he existence of a RICO enterprise is a necessary element for liability" and the plaintiff failed to allege facts plausibly suggesting the existence of a RICO enterprise).

As a result, I recommend that Plaintiff's RICO claim be dismissed.

### B. Dereliction of Duty

Plaintiff appears to assert a claim against Defendant City of Syracuse for dereliction of duty pursuant to 10 U.S.C. § 892, which is a violation of the Uniform Code of Military Justice. This statute pertains to military justice law, which is wholly inapplicable to this case. As set forth below in Part IV.D. of this Order and Report-Recommendation, where a private citizen seeks to enforce or prosecute a criminal statute, courts

we have routinely found that the citizen does not have standing to do so. *See Rush v. Hillside Buffalo, LLC*, 314 F. Supp. 3d 477, 482 n.3 (W.D.N.Y. 2018) (holding that the plaintiff did not have standing to bring a private cause of action pursuant to the punitive articles of the Uniform Code of Military Justice); *see, e.g., Salvador v. State of New York*, 12-CV-7299, 2013 WL 11280930, at *1 (S.D.N.Y. Feb. 19, 2013) (quoting *Leeke v. Timmerman*, 454 U.S. 83, 86 (1981)) ("[A] private party does not have standing to file or prosecute a criminal case because 'a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.' "), *aff'd sub nom. Salvador v. New York*, 550 F. App'x 56 (2d Cir. 2014). As a result, I recommend that Plaintiff's claim against Defendant City of Syracuse for dereliction of duty be dismissed.

### C. Law Enforcement Misconduct

**\*7** Plaintiff appears to assert a claim against Defendant City of Syracuse pursuant to 42 U.S.C. § 14141,[5] which prohibits governmental employees from depriving persons of rights, privileges, or immunities secured or protected under the constitution. (*See generally* Dkt. No. 1.) However, that statute contains no private right of action. *See Maretta-Brooks v. Hanuszczak*, 18-CV-0426, 2018 WL 2021480, at *7 (N.D.N.Y. Apr. 26, 2018) (Peebles, M.J.) (citing 34 U.S.C. § 12601(b)) ("Under 34 U.S.C. § 12601, only the United States Attorney General has the authority to bring a civil action."); *see also Steinhardt v. Bernardsville Police Dep't*, 20-2825, 2021 WL 3929321, at *2 n.2 (3d Cir. Sept. 2, 2021) ("[The plaintiff] also referenced ... 34 U.S.C. § 12601, but [that] provision[ ] contain[s] no private right of action."); *Gumber v. Fagundes*, 21-CV-3155, 2021 WL 3563065, at *2 (N.D. Cal. Aug. 11, 2021) ("[C]laims under ... 34 U.S.C. § 12601 ... must be dismissed because there is no private right of action."). As a result, I recommend that this claim be dismissed.

[5]    Effective September 1, 2017, that section was recodified as 34 U.S.C. § 12601.

### D. Plaintiff's Claims Pursuant to N.Y. Penal Law

Plaintiff attempts to assert the following seven causes of action pursuant to the N.Y. Penal Law: (1) harassment in the second degree (N.Y. Penal Law § 240.26(3)), (2) unlawful imprisonment (N.Y. Penal Law § 135.05), (3) menacing in the second degree (N.Y. Penal Law § 120.14(1)), (4) robbery in the second degree (N.Y. Penal Law § 160.10(1)), (5) criminal tampering in the third degree (N.Y. Penal Law § 145.14), (6) kidnapping in the first degree (N.Y. Penal Law § 135.25(1)), and (7) disruption or disturbance of religious service, funeral, burial, or memorial service (N.Y. Penal Law § 240.21). (Dkt. No. 1.) However, a plaintiff "has no private right of action to enforce either state or federal criminal statutes." *Netti v. New York*, 17-CV-0976, 2018 WL 6258559, at *3 (N.D.N.Y. Nov. 20, 2018) (Baxter, M.J.) (citing *Carvel v. Ross*, 09-CV-0722, 2011 WL 856283, at *11-12 (S.D.N.Y. Feb. 6, 2011)). As a result, I recommend dismissal of these causes of action for failure to state a claim.

### E. Equal Protection Claim

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons are treated equally. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "In order to establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination." *Chaney v. Koupash*, 04-CV-0126, 2008 WL 5423419, at *20 (N.D.N.Y. Dec. 30, 2008) (Homer, M.J.) (citing *Myers v. Barrett*, 95-CV-1534, 1997 WL 151770, at *3 (N.D.N.Y. Mar. 28, 1997) (Pooler, J.)). In addition, a valid equal protection claim may be brought by a "class of one" "where the plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005).

Plaintiff fails to allege any facts plausibly suggesting that he was treated differently from similarly situated individuals or any other individuals. Vague and conclusory allegations, are insufficient to plausibly suggest an equal protection violation. *See De Jesus v. Sears Roebuck & Co.*, Inc., 87 F.3d 65, 70 (2d Cir. 1996); *see Byng v. Delta Recovery Servs., LLC*, 13-CV-0733, 2013 WL 3897485, at *15, n. 5 (N.D.N.Y. July 29, 2013) (D'Agostino, J.) (finding that Attica inmate alleged no facts in the complaint to indicate he was similarly situated to anyone or that someone else was treated differently than he was). Accordingly, I recommend that Plaintiff's Fourteenth Amendment Equal Protection claims be dismissed for failure to state a claim upon which relief may be granted.

### F. First Amendment Claims

**\*8** "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496,

501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.*, 91-CV-8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994).

The Second Circuit recently held that "there is no special rule for supervisory liability," and "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

To the extent that Plaintiff attempts to assert a First Amendment claim against Defendant Carleo, I recommend that that claim be dismissed because Plaintiff fails to assert any facts plausibly suggesting that Defendant Carleo was personally involved in his removal from Destiny USA on July 17, 2020, while "evangelizing and preaching the Gospel of Jesus Christ." (Dkt. No. 1 at 7.)

However, out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's First Amendment claims against Defendants Sisley and Wolfe.

### G. Fourth Amendment

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV. "By virtue of its incorporation through the Fourteenth Amendment's Due Process Clause, the Fourth Amendment is binding on states and, relevant here, municipalities such as" the City of Syracuse. *Tsinberg v. City of New York*, 20-CV-0749, 2021 WL 1146942, at *10 (S.D.N.Y. Mar. 25, 2021) (citing *City of Ontario v. Quon*, 560 U.S. 746, 750 (2010)). It "applies in the civil context as well" as the criminal. *Sodal v. Cook Cnty.*, 506 U.S. 56, 57 (1992) (collecting cases).

### 1. False Arrest

"A § 1983 claim for false arrest, which derives from an individual's right under the Fourth Amendment to be free from unreasonable seizures, including arrest without probable cause, *see, e.g., Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995), is substantially the same as a claim for false arrest under New York law." *Kates v. Greece Police Dep't*, 16-CV-6554, 2017 WL 11548970, at *3 (W.D.N.Y. Feb. 21, 2017) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991)). "Under New York law, the elements of a false arrest and false imprisonment claim are: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.' " *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016) (per curium)).

**\*9** For the reasons set forth above in Part IV.F. of this Order and Report-Recommendation, I recommend that to the extent that Plaintiff attempts to assert a false arrest claim against Defendant Carleo, that claim be dismissed because the Complaint fails to allege facts plausibly suggesting Defendant Carleo's personal involvement in Plaintiff's arrest and confinement at Destiny USA on July 17, 2020. (*See generally* Dkt. No. 1.)

However, out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's false arrest claims against Defendants (1) Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020, and (2) DeBottis regarding the incident on April 23, 2021.

### 2. Search and Seizure Claims

A seizure of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Iverson*, 897 F.3d 450, 458 (2d Cir. 2018) (quoting *United States v. Jacobson*, 466 U.S. 109, 113 (1984)). The reasonableness of a seizure is the

"ultimate standard under the Fourth Amendment." *Sodal, 506 U.S. at 61* (citation omitted). The permissibility of any governmental seizure is thus "judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse, 440 U.S. 648, 654 (1979).*

For the reasons set forth above in Part IV.F. of this Order and Report-Recommendation, I recommend that to the extent that Plaintiff attempts to assert an unreasonable search and seizure claim against Defendant Carleo, that claim be dismissed because the Complaint fails to allege facts plausibly suggesting Defendant Carleo's personal involvement in the search and seizure at Destiny USA on July 17, 2020. (*See generally* Dkt. No. 1.)

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff, 537 F.3d at 191,* and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's Fourth Amendment deprivation of property claim against Defendants (1) Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020, (2) Kimpel regarding the incident on December 13, 2020, and (3) DeBottis regarding the incident on April 23, 2021.

### H. Failure to Protect

Plaintiff appears to allege that Defendant Kimpel failed to protect him because Defendant Kimpel did not secure an arrest warrant for the person who assaulted Plaintiff on December 13, 2020. (Dkt. No. 1 at 8-10.) However, a police officer's alleged failure to protect one citizen from another does not violate due process, absent the existence of a special relationship between the police officer and the victim such as a custodial relationship (which is not present here). *DeShaney v. Winnebago County Dept. of Social Servs., 489 U.S. 189, 195-96 (1989); Ying Jing Gan v. City of New York, 996 F.2d 522, 533 (2d Cir. 1993).*

As a result, I recommend that Plaintiff's failure to protect claim be dismissed for failure to state a claim.

### I. State Law Negligence Claims

**\*10** "In order to prevail on a negligence claim, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately

resulting therefrom.' " *Pasternack v. Lab. Corp. of Am. Holdings, 27 N.Y.3d 817, 825 (N.Y. 2016)* (quoting *Solomon v. City of New York, 66 N.Y.2d 1026, 1027 (N.Y. 1985)*).

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff, 537 F.3d at 191,* and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's negligence claims against Defendants Carleo and Releford.

### J. Municipal Claims

As set forth above in Parts IV.A., B., C., D., and E., of this Order and Report-Recommendation, I recommend that all claims against Defendant City of Syracuse be dismissed. However, in the alternative, I also recommend that the claims against Defendant City of Syracuse—a municipality—be dismissed for failure to state a claim against a municipal entity.

A municipality may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978),* the Supreme Court outlined the limited circumstances under which a municipality may be liable under *Section 1983.* A municipality may not be held liable solely because it employs a tortfeasor. *Los Angeles Cnty., Cal. v. Humphries, 562 U.S. 29, 36 (2010).* Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell, 436 U.S. at 694.*

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.; Dominguez v. Beame, 603 F.2d 337, 341 (2d Cir. 1979).* Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." *Connick v. Thompson, 563 U.S. 51, 61 (2011).* Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly.

Finally, municipal liability can, under limited circumstances, be based upon a failure to properly train the municipality's employees. *Connick, 563 U.S. at 51.* However, municipal liability is most tenuous when a claim turns on the failure to

train. *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell")). To satisfy the statute, a municipality's failure to train its employees must amount to " 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

There is no basis for municipal liability alleged in the Complaint. Plaintiff essentially complains of four discrete incidents, during which officers employed by the City of Syracuse allegedly did not act properly. There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts. In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with Defendants.

**\*11** As a result, I recommend that Plaintiff's claims against Defendant City of Syracuse be dismissed at this time. *See Flagg v. NYS Division of Parole*, 19-CV-0886, 2019 WL 5002215, at \*5 (N.D.N.Y. Aug. 15, 2019) (Baxter, M.J.) (citing *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("A single incident, particularly if it involved individuals below the policy-making level is insufficient to state a *Monell* claim."), *report and recommendation adopted by*, 2019 WL 4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy, J.).

### K. Claims Against Defendants in Their Official Capacities

"An official capacity suit against a municipal employee is a suit against the municipality itself." *Pittman v. Billings*, 20-CV-0422, 2020 WL 2079440, at \*9 (N.D.N.Y. Apr. 30, 2020) (Baxter, M.J.), *report and recommendation adopted by*, 2020 WL 2574631 (N.D.N.Y. May 21, 2020) (Sharpe, J.). However, for the reasons set forth in Part IV.J. of this Order and Report-Recommendation, I find that Plaintiff in this case has alleged no facts that would state a claim against the City of Syracuse.

As a result, I recommend that to the extent Plaintiff attempts to assert claims against Defendants in their official capacities, those claims are dismissed.

### V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [6]

---

[6]

> *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), *rev'd on other grounds*, 682 F. App'x 30.

I recommend that Plaintiff's claims for dereliction of duty, law enforcement misconduct, and claims pursuant to the New York Penal law—all of which do not permit private causes of action by Plaintiff—be dismissed without leave to amend.

This Court has serious doubts about whether Plaintiff can amend to assert actionable claims: (1) pursuant to RICO against Defendants; (2) for violation of the right to equal protection pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983, against Defendants; (3) for violation of his freedom of speech and religion pursuant to the First Amendment and 42 U.S.C. § 1983, against Defendant Carleo; (4) for false arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant Carleo; (5) for an unreasonable search and seizure pursuant to the Fourth

Israel v. City of Syracuse, Slip Copy (2021)
Case 1:20-cv-01428-LEK-TWD    Document 34    Filed 12/17/21    Page 68 of 70
2021 WL 4777256

Amendment and 42 U.S.C. § 1983, against Defendant Carleo; and (6) for failure to protect against Defendant Kimpel. However, in this case, I am unable to conclude with complete certainty that if permitted leave to amend his Complaint, Plaintiff could not assert plausible claims on these grounds. Accordingly, I recommend that leave to amend be granted for these claims.

**\*12** If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at \*7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **ACCEPTED FOR FILING** with respect to Plaintiff's claims of

(1) That his right to free speech/religion was violated pursuant to the First Amendment and 42 U.S.C. § 1983, against Defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020;

(2) False arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020;

(3) Unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020;

(4) Unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant Kimpel regarding the incident on December 13, 2020;

(5) False arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant DeBottis regarding the incident on April 23, 2021;

(6) Unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant DeBottis regarding the incident on April 23, 2021; and

(7) Negligence pursuant to New York common law against Defendants Carleo and Releford;

and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO REPLEAD** with respect to Plaintiff's claims

(1) Pursuant to RICO, against Defendants;

(2) That his right to equal protection was violated pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983, against Defendants;

(3) That his right to free of speech/religion was violated by Defendant Carleo, pursuant to the First Amendment and 42 U.S.C. § 1983, at Destiny USA on July 17, 2020;

(4) Of false arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant Carleo regarding the incident at Destiny USA on July 17, 2020;

(5) Of unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant Carleo regarding the incident at Destiny USA on July 17, 2020; and

(6) Of failure to protect against Defendant Kimpel;

and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED WITHOUT LEAVE TO REPLEAD** with respect to Plaintiff's claims of

> (1) Dereliction of duty pursuant to 10 U.S.C. § 892, against Defendants;
>
> (2) Law enforcement misconduct pursuant to 42 U.S.C. § 14141(a) or 34 U.S.C. § 12601, against Defendant City of Syracuse;
>
> (3) Harassment in the second degree pursuant to N.Y. Penal Law § 240.26(3), against Defendants;
>
> (4) Unlawful imprisonment pursuant to N.Y. Penal Law § 135.05, against Defendants;
>
> **\*13** (5) Menacing in the second degree pursuant to N.Y. Penal Law § 120.14(1), against Defendants;
>
> (6) Robbery in the second degree pursuant to N.Y. Penal Law § 160.10(1), against Defendants;
>
> (7) Criminal tampering in the third degree pursuant to N.Y. Penal Law § 145.14, against Defendants;
>
> (8) Kidnapping in the first degree pursuant to N.Y. Penal Law § 135.25(1), against Defendants; and
>
> (9) Disruption or disturbance of religious service, burial, or memorial service pursuant to N.Y. Penal Law § 240.21, against Defendants;

and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [7]

> [7]
> The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders,* 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [8] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

> [8]
> If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2021 WL 4777256

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 4773232
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Bishop Abraham S. ISRAEL and
Jesus Christ Ministries, Plaintiffs,
v.
CITY OF SYRACUSE et al., Defendants.

5:21-CV-915
|
Signed 10/13/2021

**Attorneys and Law Firms**

ABRAHAM S. ISRAEL, Plaintiff, Pro Se, 1409 S. McBride
Street, Syracuse, NY 13202.

**ORDER ON REPORT & RECOMMENDATION**

DAVID N. HURD, United States District Judge

**\*1** On August 13, 2021, *pro se* plaintiff Abraham S. Israel
("plaintiff") filed this action alleging that defendants violated
his civil rights while he was preaching the gospel at a mall in
Syracuse, New York. Dkt. No. 1. Plaintiff also sought leave
to proceed *in forma pauperis* ("IFP"). Dkt. No. 2.

On September 16, 2021, U.S. Magistrate Judge Miroslav
Lovric granted plaintiff's IFP application and advised
by Report & Recommendation ("R&R") that plaintiff's
complaint be accepted for filing in part. Dkt. No. 4. Plaintiff
has not filed objections, and the time period in which to do
so has expired. Upon review for clear error, the R&R will
be accepted and adopted in all respects. *See* FED R. CIV. P.
72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2021 WL 4773232

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 1